1  DAVID CHIU, SBN 189542
   City Attorney
2  YVONNE R. MERÉ, SBN 173594
   Chief Deputy City Attorney
3  SARA J. EISENBERG, SBN 269303
   Chief of Complex & Affirmative Litigation
4  ADAM M. SHAPIRO, SBN 267429
   MOLLY J. ALARCON, SBN 315244
5  Deputy City Attorneys
   Fox Plaza
6  1390 Market Street, 6th Floor
   San Francisco, California 94102-5408
7  Telephone:    (415) 554-3894
   Facsimile:    (415) 437-4644
8  E-Mail:       Molly.Alarcon@sfcityatty.org

9  Attorneys for DEFENDANTS

10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| WALTER SPURLOCK and ANDRE GUIBERT, | Case No. 3:23-cv-4429 |
| Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT** |
| vs. | |
| CITY AND COUNTY OF SAN FRANCISCO, AIRPORT COMMISSION OF THE CITY AND COUNTY OF SAN FRANCISCO, DOE 1 in his individual capacity and official capacity as Aviation Security and Regulatory Compliance Officer at the San Francisco International Airport, and JEFF LITTLEFIELD in his individual capacity and official capacity as Chief Operating Officer at San Francisco International Airport, | Hearing Date:    January 11, 2024<br>Time:            2:00 p.m.<br>Before:          Hon. Araceli Martínez-Olguín<br>Place:           450 Golden Gate Avenue<br>                 Courtroom 10<br>                 San Francisco, CA 94102<br><br>Date Action Filed:    August 28, 2023<br><br>Attached Documents:<br><br>DEFENDANTS' REQUEST FOR JUDICIAL NOTICE; DECLARATION OF MOLLY J. ALARCON IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER GRANTING DISMISSAL OF THE COMPLAINT |
| Defendants. | |

1

## **TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES .................................................................................................4

3

NOTICE OF MOTION AND MOTION ............................................................................8

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................10

4

Introduction.........................................................................................................................10

5

Background ...........................................................................................................................11

6

     I.      Airport Security Regulations ......................................................................11

7

     II.     The Airport Revokes Plaintiffs' SIDA Badges for Security Violations ...............13

     III.    Plaintiffs Appeal the Revocation of their SIDA Badges ........................................13

8

     IV.    The Airport Submits Plaintiffs' Names to the Centralized Revocation Database .14

9

     V.     Procedural History ......................................................................................15

10

Legal Standard ....................................................................................................................15

11

Argument ..............................................................................................................................16

12

     I.      Counts I and II Fail Because Individuals Do Not Have a Liberty or Property
             Interest in SIDA Badges or Employment Conditioned on Those Badges, and
13
             Thus, the Due Process Clause Does Not Apply...................................................16

14

         A.     Where, as Here, the Government Has Discretion to Revoke a SIDA
                Badge, Individuals Do Not Have a Right to Those Badges......................16

15

         B.     Plaintiffs' Unilateral Expectations Regarding Their Security Badges and
                Employment Do Not Create a Protected Entitlement Where, as Here, the
16
                Airport Had Sole Discretion to Revoke Their Badges..............................19

17

         C.     Plaintiffs Do Not Allege Cognizable Reputational Harm, Either..............21

18

         D.     Plaintiffs Cannot Cure These Defects Through Amendment, so
                Dismissal Without Leave to Amend Is Appropriate.................................21

19

     II.     Count III Fails to State a Claim Because the Eighth Amendment's Protection
20
             Against Cruel and Unusual Punishment Does Not Apply in This Non-Criminal
             Context...............................................................................................................22

21

     III.    In the Alternative, Littlefield and Doe 1 Have Qualified Immunity from
22
             Plaintiffs' Individual Capacity Claims.................................................................23

23

         A.     Government Officials Are Entitled to Qualified Immunity from § 1983
                Suits Where the Right at Issue Is Not Clearly Established........................23

24

         B.     Littlefield and Doe 1 Did Not Violate a Clearly Established Right. .........24

25

             1.     Counts I and II – There is no clearly established right to Due
                     Process in connection with revocation of a security clearance,
26
                     employment that requires such a clearance, or in being listed on
                     the CRD. .........................................................................................24

27

             2.     Count III – There is no clearly established Eighth Amendment
28
                     right in connection with revocation of a security clearance. .........25

IV.    In the Alternative, Plaintiffs' Official Capacity Claims Against Littlefield and Doe 1 Should Be Dismissed as Redundant............................................................26

V.    In the Alternative, the Airport Commission is an Improper Defendant ...............26

CONCLUSION...............................................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)..................................................................................15

*Ass'n of Orange Cnty. Deputy Sheriffs v. Gates*
    716 F.2d 733 (9th Cir. 1983) ....................................................................19

*Austin v. United States*
    509 U.S. 602 (1993)..................................................................................22

*Bd. of Regents of State Colls. v. Roth*
    408 U.S. 564 (1972)......................................................................16, 17, 19

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)..................................................................................15

*Ching v. Mayorkas*
    725 F.3d 1149 (9th Cir. 2013) ..................................................................21

*Cmty. House, Inc. v. City of Boise, Idaho*
    623 F.3d 945 (9th Cir. 2010) ....................................................................23

*Coto Settlement v. Eisenberg*
    593 F.3d 1031 (9th Cir. 2010) ..................................................................20

*Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*
    533 F.3d 780 (9th Cir. 2008) ....................................................................26

*Daniels-Hall v. Nat'l Educ. Ass'n*
    629 F.3d 992 (9th Cir. 2010) ..............................................................15, 20

*Department of the Navy v. Egan*
    484 U.S. 518 (1988)......................................................................17, 18, 21, 25

*District of Columbia v. Wesby*
    583 U.S. 48 (2018)....................................................................................24

*Dorfmont v. Brown*
    913 F. 2d 1399 (9th Cir. 1990) ..........................................................17, 18, 21

*Doyle v. City of Medford*
    606 F.3d 667 (9th Cir. 2010) ....................................................................21

*Dunn v. Castro*
    621 F.3d 1196 (9th Cir. 2010) ..................................................................24

*Frudden v. Pilling*
877 F.3d 821 (9th Cir. 2017) ...................................................................23, 24

*Goldberg v. Kelly*
397 U.S. 254 (1970) .........................................................................................19

*Hamby v. Hammond*
821 F.3d 1085 (9th Cir. 2016) .......................................................................25

*Hodge v. Jones*
31 F.3d 157 (4th Cir. 1994) ............................................................................21

*Hornseth v. Dep't of the Navy*
916 F.3d 1369 (Fed. Cir. 2019) ....................................................................18

*Houghton v. South*
965 F.2d 1532 (9th Cir. 1992) .......................................................................24

*Hudson v. United States*
522 U.S. 93 (1997) ...........................................................................................22

*Hunter v. Bryant*
502 U.S. 224 (1991) .........................................................................................23

*Ingraham v. Wright*
430 U.S. 651 (1977) ..................................................................................22, 26

*Jamil v. Sec'y, Dep't of Def.*
910 F.2d 1203 (4th Cir. 1990) .......................................................................18

*Kashem v. Barr*
941 F.3d 358 (9th Cir. 2019) .........................................................................16

*Kentucky v. Graham*
473 U.S. 159 (1985) .........................................................................................26

*Luke v. Abbott*
954 F. Supp. 202 (C.D. Cal. 1997) ...............................................................26

*Lund v. Cowan*
5 F.4th 964 (9th Cir. 2021) ......................................................................22, 23

*Magassa v. Mayorkas*
52 F.4th 1156 (9th Cir. 2022) .............................................17, 18, 19, 21, 25

*Magassa v. Wolf*
545 F. Supp. 3d 898 (W.D. Wash. 2021) .....................................................25

*Malley v. Briggs*
475 U.S. 335 (1986) .........................................................................................24

*Martin v. City of Boise*
   920 F.3d 584 (9th Cir. 2019) ..............................................................22, 26

*Mathews v. Eldridge*
   424 U.S. 319 (1976) ...................................................................................16

*Monell v. Dep't of Soc. Servs. of City of New York*
   436 U.S. 658 (1978) ...................................................................................26

*Paul v. Davis*
   424 U.S. 693 (1976) ...................................................................................21

*Pearson v. Callahan*
   555 U.S. 223 (2009) ...................................................................................23

*Perry v. Sindermann,*
   408 U.S. 593 (1972) ...................................................................................19

*Sanchez v. United States Dep't of Energy*
   870 F.3d 1185 (10th Cir. 2017) ................................................................18

*Sanders v. San Francisco Pub. Libr.*
   Case No. 23-CV-00211-JSW, 2023 WL 5723695 (N.D. Cal., Sept. 5, 2023) .........................27

*Serrano Medina v. United States*
   709 F.2d 104 (1st Cir. 1983) .....................................................................18

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC,*
   733 F.3d 1251 (9th Cir. 2013) ..................................................................20

*Shanks v. Dressel*
   540 F.3d 1082 (9th Cir. 2008) ..................................................................21

*Stump v. Gates*
   777 F. Supp. 808 (D.Colo. 1991) ..............................................................27

*Town of Castle Rock, Colo. v. Gonzales*
   545 U.S. 748 (2005) ...................................................................................21

*Usher v. City of Los Angeles*
   828 F.2d 556 (1987) ............................................................................11, 15

*Vance v. Cnty. of Santa Clara*
   928 F. Supp. 993 (N.D. Cal. 1996) ...........................................................26

*Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*
   24 F.3d 56 (9th Cir. 1994) ...................................................................19, 20

**Statutes**
42 U.S.C.
   § 1983 ...............................................................................................15, 26

**Code of Federal Regulations**

14 C.F.R.
§ 139 ...................................................................................................12
§ 139.101 ............................................................................................12
§ 139.303 ............................................................................................12

49 C.F.R.
§ 1542 *et seq* ....................................................................................11
§ 1542.201-205 ...................................................................................11
§ 1542.209-213 ...................................................................................11
§ 1542.215 ..........................................................................................12

**San Francisco Charter**

Article I
§ 1.101 ................................................................................................27

Article IV
§ 4.100 ................................................................................................27
§ 4.102 ................................................................................................27
§ 4.115 ................................................................................................27
§ 4.126 ................................................................................................27

# NOTICE OF MOTION AND MOTION

To Plaintiffs Walter Spurlock and Andre Guibert:

PLEASE TAKE NOTICE that on January 11, 2024 at 2:00 p.m., Defendants the City and County of San Francisco, the Airport Commission of the City and County of San Francisco, Doe 1 in his individual capacity and official capacity as Aviation Security and Regulatory Compliance Officer at San Francisco International Airport, and Jeff Littlefield in his individual capacity and official capacity as Chief Operating Officer at San Francisco International Airport (collectively, "Defendants") will and hereby do move this Court, located in Courtroom 10, 450 Golden Gate Avenue, San Francisco, California, for an order dismissing Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that:

- Counts I and II of Plaintiffs' Complaint, involving alleged violations of procedural Due Process, fail because Plaintiffs do not have, and cannot plead, a protected liberty or property interest in airport security badges or employment that requires such badges.

- Count III of Plaintiffs' Complaint, involving alleged violations of the Eighth Amendment's protection against cruel and unusual punishment, fails because that protection applies to criminal matters, and Plaintiffs have not (and cannot) allege the existence of criminal proceedings here.

- Counts I, II, and III (and therefore, the entire Complaint) should be dismissed without leave to amend because these defects cannot be cured through amendment.

- In the alternative, if any cause of action survives, only the City and County of San Francisco is a proper Defendant.  The Airport Commission and individual Defendants Jeff Littlefield and Doe 1, sued in their official capacities, are redundant Defendants and should be dismissed, and the Airport Commission is not subject to suit under the City's Charter.  Jeff Littlefield and Doe 1 are also not subject to suit in their personal capacities, as qualified immunity bars Plaintiffs' claims against them.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice and papers attached thereto, the papers and pleadings on file in this action,

1  and upon such other and further matters as may be considered by the Court at the hearing on this

2  Motion.

3

4  Dated:  November 27, 2023                    DAVID CHIU
                                               City Attorney
5                                              YVONNE R. MERÉ
                                               Chief Deputy City Attorney
6                                              SARA J. EISENBERG
                                               Chief of Complex & Affirmative Litigation
7                                              ADAM M. SHAPIRO
                                               MOLLY J. ALARCON (she/her)
8                                              Deputy City Attorneys

9

10                                      By: _/S/ Molly J. Alarcon_____
                                               MOLLY J. ALARCON
11
                                               Attorneys for Defendants
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES
### Introduction

San Francisco International Airport ("SFO"), owned and operated by the City and County of San Francisco (the "City") acting through its Airport Commission (the "Commission" or "Airport"), is the largest airport in the Bay Area engaged in domestic and international passenger and cargo transportation.  Safety and security are primary concerns for the Airport, which promulgates Rules and Regulations to further those priorities.  In addition, the Airport must comply with various federal requirements to protect the public and national security.  As a result, the Airport regulates access to secured areas at SFO, including where Plaintiffs formerly worked as airplane mechanics for Alaska Airlines, Inc.

On September 9, 2021, Plaintiffs attempted to enter a secured part of SFO through a regulated turnstile, which allegedly malfunctioned after Plaintiff Guibert passed through it but before Plaintiff Spurlock could enter.  Rather than report the malfunction to the Airport as required by their training and posted signs, Spurlock handed his security badge to Guibert on the secured side of the turnstile.  Guibert then used Spurlock's badge to impersonate Spurlock, making the system think Spurlock left the secured area.  This "reset" the badge reader system to allow Spurlock to impermissibly enter the secured area.  The Airport determined that Plaintiffs' actions violated the Airport's Rules and Regulations, which prohibit badge holders from interfering with, compromising, modifying, or attempting to circumvent any security system.  Consistent with its federal obligations, the Airport exercised its discretion to revoke Plaintiffs' badges permanently.  Plaintiffs allege that the revocation resulted in Plaintiffs' names being added to a database maintained by the Transportation Security Administration ("TSA"), an automatic consequence of their badge revocations, per federal requirements.  Plaintiffs further allege that they subsequently lost their employment with Alaska Airlines, Inc., and that they have been unable to obtain employment requiring a security badge at other airports.

Plaintiffs assert that the Airport's actions violated Plaintiffs' constitutional rights.  However, access to airport security badges is not a matter of constitutional concern.  Although Plaintiffs assert violations of their Fourteenth Amendment Due Process rights, no such rights attach to airport security badges, security clearances, or other similar discretionary security authorizations issued by the

government.  Courts have been clear that where, as here, the government retains sole discretion to revoke such authorizations, individuals lack any entitlement to jobs that require them.  Hence, although the Airport provided Plaintiffs with process before permanently revoking their security badges, the Constitution did not require this or any other procedures.

Plaintiffs also assert violations of the Eighth Amendment.  While the Eighth Amendment protects against cruel and unusual punishment in criminal proceedings, it does not apply here.  Plaintiffs therefore fail to state a claim for any Eighth Amendment violations.

Moreover, Plaintiffs have improperly sued the Commission and individual defendants acting in their official capacities; the law and San Francisco's Charter recognize only the City as the proper Defendant for Plaintiffs' claims, if any claims are properly alleged (they are not).  Further, there is no basis to sue any defendants in their individual capacities, as qualified immunity protects them from any of Plaintiffs' viable claims (of which there are none).

Because Plaintiffs fail to state any viable claims against any Defendant, the Complaint should be dismissed in its entirety.

<b>Background[1]</b>

## I.    Airport Security Regulations

The Airport is obligated under federal law to help ensure secure and safe operations.  All commercial service airports within the United States are required to develop an Airport Security Plan ("ASP") and submit the plan to TSA for approval.  49 C.F.R. pt. 1542 *et seq.*  The ASP must include, among other things, a description of Security Identification Display Areas ("SIDAs") and procedures to prevent unauthorized presence and movement in the SIDAs.  *Id.* at § 1542.201-205; *see also* Dkt. No. 1 [Compl.] at ¶¶ 2, 19.  Airports must carefully vet the employment and criminal history of airport workers who will have access to the SIDAs and conduct training before providing unescorted access to any secured area.  49 C.F.R. §§ 1542.201-205, 209-213; *see also* Dkt. No. 1 [Compl.] at ¶ 19.

---

[1] For the purposes of a motion to dismiss, the Court must accept well pleaded factual allegations as true.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  Accordingly, the facts in this section are taken from the Complaint and the documents attached thereto.  At this time, Defendants do not admit any of Plaintiffs' alleged facts.

1  Airports are also required to hire sufficient law enforcement support to carry out their obligations

2  under the ASP.  49 C.F.R. § 1542.215.

3       In addition to these security requirements, airports with commercial air service, like SFO, must

4  comply with extensive safety regulations under 14 C.F.R. pt. 139, governing, for example, runway

5  maintenance, marking and signage, snow and ice control, air rescue and firefighting, obstructions and

6  wildlife hazards.  *See* 14 C.F.R. pt. 139, Subpart D.  Airports are required to ensure that all personnel

7  with access to aircraft movement areas and safety areas are trained to perform their duties in

8  compliance with Part 139 requirements.  *Id.* at § 139.303.  This training includes familiarization with

9  airport systems, procedures for access to and operation within movement and safety areas, airport

10  radio and air traffic communications, and other duties specific to job requirements.  *Id.*  The City

11  cannot operate SFO unless it complies with all of the requirements of Part 139.  *Id.* at § 139.101.  Its

12  status as a key transportation center relies on compliance with these requirements.

13       The Airport maintains a set of Rules and Regulations, in part to comply with federal law, that

14  pertain to Airport security and security badges, among other things.  Dkt. No. 1-1 [Compl., Exh. A].

15  Those rules make clear that "[a]ny person holding an Airport-issued security badge does so as a

16  privilege and not a right."  *Id.* at p. 62 of 106 (Rule 7.2)[2].  Further, Rule 7.2(D) provides: "Any person

17  who violates this Rule 7, compromises Airport security, or creates or engages or participates in any

18  unsafe, unsecure, or hazardous condition or activity at the Airport may have access privileges

19  immediately revoked on a temporary or permanent basis at the sole discretion of the Airport[.]"  *Id.*

20       The Rules and Regulations elsewhere reiterate that "[i]ndividual infractions . . . relating to the

21  safety or security of the Airport may result in the immediate suspension or permanent revocation of an

22  Airport ID badge . . . at the sole discretion of the Airport."  Dkt. No. 1 [Compl.] at ¶ 47; Dkt. No. 1-1

23  [Exh. A] at p. 103 of 106 (Rule 14.4).  The Rules and Regulation also set forth an administrative

24  review and appeal procedure for those seeking to challenge a citation issued by the Airport.  *Id.* at p.

25  105 of 106 (Rule 14.5.)  And while Rule 14.4 sets forth a penalty schedule for violations of Rule 7

26

27       [2] For ease of reference, pages cited in the exhibits to Plaintiffs' Complaint refer to the page numbers in the ECF header affixed by the Court.

28

(Airport Security), it also specifically provides that any infraction may result in the "immediate suspension or permanent revocation of an Airport ID badge . . . at the sole discretion of the Airport, notwithstanding the Admonishment or Citation procedures [above]." Dkt. No. 1 [Compl.] at ¶¶ 46, 47 (quoting Rule 14.4).

## II.     The Airport Revokes Plaintiffs' SIDA Badges for Security Violations

Plaintiffs were Aviation Maintenance Technicians ("AMTs") at SFO employed by Alaska Airlines, Inc.  Dkt. No. 1 [Compl.] at ¶ 1.  On the morning of September 9, 2021, Plaintiffs reported to an external security checkpoint at SFO.  *Id.* at ¶ 21.  To proceed through this checkpoint, Plaintiffs needed to swipe their SIDA badges at a reader, use a biometric scanner, and proceed through a turnstile.  *Id.* at ¶ 22.

Guibert allegedly proceeded through the turnstile without incident.  Dkt. No. 1 [Compl.] at ¶ 23.  However, Spurlock was unable to gain entry, allegedly because the turnstile malfunctioned halfway through its rotation.  *Id.*  Rather than report the issue to Airport Security, as they were trained and as a sign at the checkpoint advised them to do in this situation, Dkt. 1-2 [Compl., Exh. B] at pp. 2, 4-5 of 18, Plaintiffs instead attempted to circumvent the security system.  *See* Dkt. No. 1 [Compl.] at ¶ 24.  Specifically, Plaintiffs allege: "Spurlock passed his SIDA badge, from the non-SIDA side, to Guibert, on the SIDA side, and Guibert placed Spurlock's badge on the outgoing badge reader, to reset the badge reader system."  *Id.*  Later that day, Airport security officers issued citations to Plaintiffs and suspended their SIDA badges.  *Id.* at ¶ 27.

## III.    Plaintiffs Appeal the Revocation of their SIDA Badges

Pursuant to Airport Rule 14.5, Plaintiffs were entitled to "seek review of a Citation and, following the review, may appeal from a decision affirming or amending the Citation."  Dkt. No. 1-1 [Compl., Exh. A] at p. 105 of 106 (Rule 14.5).  Plaintiffs availed themselves of this appeal procedure. Dkt. No. 1 [Compl.] at ¶ 28.

On September 14, 2021, following a review of the incident, Doe 1, an Aviation Security and Regulatory Compliance Officer, provided notice that the Airport decided to permanently revoke Plaintiffs' SIDA badges.  Dkt No. 1 [Compl.] at ¶¶ 14, 33.  In Guibert's notice, the Airport stated that he had "committed multiple aviation security violations and actively compromised the security of the

Airport." Dkt No. 1-2 [Compl., Exh. B] at p. 2 of 18.  The letter informed Guibert that he violated Rule 7.7 by circumventing the security turnstile, and also violated Rule 7.3 by "receiving and using another person's Airport ID badge."  *Id.*  The letter noted that the Airport had sent multiple security reminders to Airport ID badge holders, including a July 27, 2021 communication stating that, "[i]f you are unable to gain access at a Direct Access Point reader . . . for any reasons – you MUST either try a different access point or contact the Airport's Security Operations Center . . . . Any other actions taken to gain access will result in enforcement action, up to and including the possibility of Airport ID badge revocation."  *Id.* at pp. 2, 4 of 18.

Plaintiffs were advised that they had a right to appeal that decision, Dkt. No. 1-2 [Compl., Exh. B] at p. 3 of 18, and they sought such an appeal.  Dkt. No. 1 [Compl.] at ¶ 34.  The appeal was denied on October 23, 2021.  *Id.* at ¶ 39.  In an October 26, 2021 letter to Guibert signed by Defendant Littlefield, the Airport again found that Plaintiffs' actions "facilitated circumvention of a secured access point" in violation of the Airport Rules and Regulations.  Dkt. No. 1-3 [Compl., Exh. C] at p. 2 of 2.  The letter concluded: "[w]e understand that, in retrospect, you acknowledge the seriousness of your actions. We cannot put Airport security at risk. . . . This decision is final."  *Id.*

## IV.   The Airport Submits Plaintiffs' Names to the Centralized Revocation Database

Plaintiffs allege that, pursuant to statute, the TSA maintains a database, known as the Centralized Revocation Database ("CRD"), "containing the names of individuals who have had airport-issued SIDA badges revoked for failure to comply with aviation security requirements."  Dkt. No. 1 [Compl.] at ¶ 51.  According to Plaintiffs, "[w]here an airport operator revokes an individual's operator-issued badge, the operator **must** submit the name of the individual to the CRD."  *Id.* at ¶ 52 (emphasis added).  Plaintiffs allege that Defendants placed Plaintiffs' names on the CRD without notice.  *Id.* at ¶ 62. They also allege that their names will remain on the CRD for five years, and that other airport operators must check the name of any job applicant against the CRD before issuing them a security badge.  *Id*. at ¶ 52.

//

//

//

1    **V.    Procedural History**

2         Plaintiffs filed the instant action on August 28, 2023, asserting claims against the City, the

3    Airport, Doe 1, and Jeff Littlefield.  Dkt. No. 1 [Compl.].  Plaintiffs sue both Doe 1 and Littlefield in

4    their individual and official capacities.  *Id.*  Plaintiffs assert three causes of action under 42 U.S.C. §

5    1983.  In the first cause of action (Count I), Plaintiffs allege Defendants violated Plaintiffs' right to

6    procedural Due Process during their badge revocation proceedings.  *Id.* at ¶¶ 54-61.  In the second

7    cause of action (Count II), Plaintiffs allege Defendants failed to provide Plaintiffs with notice and a

8    means of challenging their placement on the CRD, also in violation of the Fourteenth Amendment's

9    procedural Due Process protections.  *Id.* at ¶¶ 62-63.  In their third cause of action (Count III),

10   Plaintiffs allege that the revocation of Plaintiffs' SIDA badges and placement of Plaintiffs' names on

11   the CRD violated the Eighth Amendment's prohibition on cruel and unusual punishment.  *Id.* at ¶¶ 64-

12   67.

13                                    **Legal Standard**

14        Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it

15   fails to state a claim upon which relief can be granted.  To overcome a Rule 12(b)(6) motion to

16   dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."

17   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  A claim is facially plausible when the plaintiff

18   pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the

19   misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be

20   "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

21        In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court

22   accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the

23   plaintiff.  *See Usher*, 828 F.2d at 561.  However, the court is not required to accept as true "allegations

24   that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or

25   allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

26   *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

27   //

28   //

**Argument**

Each of Plaintiffs' three causes of action fail to state a claim upon which relief can be granted. Counts I and II fail because Plaintiffs do not (and cannot) allege that they had a protected liberty or property interest in their SIDA badges, any employment that requires a SIDA badge, or in their inclusion on the TSA's CRD list.  Thus, Defendants did not owe Plaintiffs any constitutionally required process.  Count III fails because the Eighth Amendment's protections against cruel and unusual punishment apply in criminal contexts, not here.  In the alternative, if any causes of action survive, the only properly named Defendant is the City.  The others should be dismissed as redundant, protected by qualified immunity, or as improper defendants.

I.   **Counts I and II Fail Because Individuals Do Not Have a Liberty or Property Interest in SIDA Badges or Employment Conditioned on Those Badges, and Thus, the Due Process Clause Does Not Apply**

Plaintiffs allege violations of their Fourteenth Amendment Due Process rights based on the Airport's revocation of their SIDA badges and related actions to add Plaintiffs' names to the CRD, which has prevented Plaintiffs from obtaining employment requiring a SIDA badge at other airports. But Due Process protections do not attach to all things, and here, binding case law holds that they do not attach to SIDA badges or employment requiring such badges.  Counts I and II should be dismissed because Plaintiffs cannot state viable Due Process claims as a matter of law.

A.   **Where, as Here, the Government Has Discretion to Revoke a SIDA Badge, Individuals Do Not Have a Right to Those Badges.**

Procedural due process claims are evaluated in two steps.  First, a person must show a deprivation of a liberty or property interest encompassed by the Fourteenth Amendment's protections. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972).  Only if such a protected interest is identified do courts weigh "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of . . . procedural safeguards" against the government's interests and the burden of adding additional procedural requirements.  *Kashem v. Barr*, 941 F.3d 358, 378 (9th Cir. 2019) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *Roth,* 408 U.S. at 571.  Because Plaintiffs have no liberty or property interest in their SIDA badges or related to their placement on the CRD, no constitutionally-mandated procedures were required.

In a case functionally indistinguishable from this one, the Ninth Circuit considered and rejected a plaintiff's procedural Due Process claims stemming from the revocation of his SIDA badge.  The Court held in *Magassa v. Mayorkas*, 52 F.4th 1156 (9th Cir. 2022), that an airline employee had no Fourteenth Amendment-protected interest in his SIDA badge or employment conditioned on that badge, and affirmed the dismissal of the plaintiff's Due Process claims at the pleading stage.  *Id.* at 1168.  That case controls here.

The plaintiff in *Magassa* alleged that his Due Process rights were violated when the TSA, without explanation, revoked his SIDA badge, which had allowed him to work as a cargo customer service agent for Delta Airlines in Seattle.  *Magassa*, 52 F.4th at 1159.  Like the Plaintiffs here, Magassa alleged that "the procedures employed to revoke his SIDA badge" were inadequate under the Fourteenth Amendment.  *Id*. at 1164.  He asserted a constitutionally protected liberty interest in his "freedom to work in his chosen profession." *Id*. at 1168.  The Ninth Circuit rejected his claim of a protected liberty or property interest related to his SIDA badge based on prior rulings involving similar security clearances issued by the government.

In concluding that Magassa had no protected interest, the Ninth Circuit relied on the United States Supreme Court's ruling in *Department of the Navy v. Egan* that individuals do not have a right to a security clearance where the government retains discretion to grant or deny clearances based on its determination of national security interests.  *Egan*, 484 U.S. 518, 528 (1988).  The *Magassa* Court also relied on the Ninth Circuit's ruling in *Dorfmont v. Brown*, where the Ninth Circuit applied the logic of *Egan* to a Due Process claim and determined that "[w]here there is no right [to a badge or clearance], no process is due under the Constitution."  913 F.2d 1399, 1403 (9th Cir. 1990).  In *Dorfmont*, the plaintiff challenged the revocation of her Defense Department security clearance, alleging, like Plaintiffs do here, that "that she ha[d] a protected liberty interest in her ability to practice her chosen profession, and a protected property interest in her employment at [a defense contractor]." *Id*.  The Ninth Circuit rejected these contentions, reasoning that, because protected interests must derive from "existing rules or understandings that stem from an independent source" and must give rise to a "legitimate claim of entitlement," *Id*. (quoting *Roth*, 408 U.S. at 577), a person could not have a legitimate claim of entitlement to a clearance where "[t]here is a presumption *against* obtaining or

1  maintaining" it, as with the security clearances at issue.  *Dorfmont*, 913 F.2d at 1403 (emphasis in

2  original).

3      Applying *Egan* and *Dorfmont*, the Ninth Circuit concluded that Magassa "is like other workers

4  who need security clearances to stay employed" and "had to undergo extensive background checks" to

5  obtain a badge in the first place.  *Magassa*, 52 F.4th at 1168.  Thus, it held, he could not possess a

6  Fourteenth Amendment-protected interest in his SIDA badge or in a job that requires one.  *Id*.  This

7  ruling joined a host of cases in other circuits rejecting assertions of a protected liberty or property

8  interest in a discretionary security clearance or in jobs that require them.  *Hornseth v. Dep't of the*

9  *Navy*, 916 F.3d 1369, 1373 (Fed. Cir. 2019); *Sanchez v. United States Dep't of Energy*, 870 F.3d 1185,

10 1198 (10th Cir. 2017); *Jamil v. Sec'y, Dep't of Def.*, 910 F.2d 1203, 1209 (4th Cir. 1990); *Serrano*

11 *Medina v. United States*, 709 F.2d 104, 109 (1st Cir. 1983) [no protected liberty or property interest in

12 permit to enter Naval base].

13     Spurlock and Guibert's claims that the Airport violated their Due Process rights all relate to

14 their purported entitlement to SIDA badges or to employment that requires a SIDA badge.  Thus, their

15 claims are indistinguishable from the claims considered and rejected by prior courts.  Count I directly

16 concerns the proceedings that resulted in the revocation of Plaintiffs' SIDA badges and thus, asserts a

17 protected interest in the badges themselves.  Dkt. No. 1 [Compl.] at ¶¶ 19, 20, 22, 57.  Regarding

18 Count II, Plaintiffs admit that "[w]here an airport operator revokes an individual's operator-issued

19 badge, the operator **must** submit the name of the individual to the CRD."  *Id*. at ¶ 52 (emphasis

20 added).  Thus, the interest asserted in Count II is the same as that asserted in Count I, since it flows

21 inexorably from Plaintiffs' badge revocations.  But to the extent Plaintiffs articulate a different

22 interest, that interest appears to involve the five-year difficulty Plaintiffs face in obtaining other

23 employment that requires a SIDA badge, due to their inclusion on the CRD.  *Id*.  at ¶¶ 1, 5, 52, 62.

24 This interest is, at base, an asserted liberty or property interest in employment requiring a SIDA badge.

25 See *Magassa*, 52 F.4th at 1168.  Under *Magassa*, *Egan*, and *Dorfmont*, Plaintiffs have no

26 //

27 //

28 //

constitutionally protected right to a SIDA badge or to employment requiring one.  Thus, under these binding cases, Plaintiffs fail to state a claim under the Fourteenth Amendment's Due Process Clause.[3]

**B.      Plaintiffs' Unilateral Expectations Regarding Their Security Badges and Employment Do Not Create a Protected Entitlement Where, as Here, the Airport Had Sole Discretion to Revoke Their Badges.**

In their Complaint, Plaintiffs discuss their various expectations regarding their SIDA badges and employment, including that they "are engaged in a licensed profession to which they expect to devote their entire lives," Dkt. No. 1 [Compl.] at ¶ 1; *see also id*. at ¶ 18, and that they had a "reasonable expectation that their badges will not be deprived arbitrarily or without due process." *Id*. at ¶ 57.  In some instances, courts have identified protected property interests in benefits where individuals articulate reasonable expectations about their continued provision, such as certain welfare payments or tenured employment.  *E.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) [welfare benefits were an entitlement to individuals already receiving them, based on language in statute]; *Perry v. Sindermann*, 408 U.S. 593, 602 (1972) [policies and practices of university indicated "de facto" tenure system, possibly substantiating claim to protected property interest].  But courts do not credit plaintiffs' "unilateral expectation[s]" in isolation.  *Roth*, 408 U.S. at 577.  Rather, "'[a] reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms.'"  *Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994) (quoting *Ass'n of Orange Cnty. Deputy Sheriffs v. Gates*, 716 F.2d 733, 734 (9th Cir. 1983)).

Here, Plaintiffs' expectations of an "entitlement" are entirely unilateral because, as the Complaint admits, the Airport retained total discretion to suspend or revoke SIDA badges.  Plaintiffs acknowledge that rules issued by the Airport govern the "entitlement" they claim: "SFO Rules and Regulations provide for the creation of SIDAs, access to which is limited to persons holding an Airport-issued identification badge (i.e., SIDA Badge)."  Dkt. No. 1 [Compl.] at ¶ 20.  Plaintiffs

---

[3] Plaintiffs do not appear to allege Fourteenth Amendment violations based on substantive Due Process, as Counts I and II solely revolve around the perceived procedural inadequacies of the Airport's actions.  Dkt. No. 1 [Compl.] at ¶¶ 54-63.  If any part of the Complaint can be read to allege substantive Due Process violations, *Magassa* would also foreclose such claims.  *Magassa*, 52 F.4th at 1169.

excerpt or summarize parts of Rule 7 (Airport Security) and Rule 14 (Enforcement and Administrative Appeal Procedure) in the body of their Complaint.  *Id*. at ¶¶ 43-50.  They also attach the complete set of rules as Exhibit A to the Complaint.  Dkt. No. 1-1.  Those rules make clear that provision of the entitlement that Plaintiffs claim is *not* "couched in mandatory terms," but rather, is committed to the sole discretion of the Airport.  *Wedges/Ledges*, 24 F.3d at 62 (citation omitted).  This is evident in at least four places:

First, Rule 7.2, which governs the use of security badges, begins with the statement: "any person holding an Airport-issued security badge does so as a privilege and not a right."  Dkt. No. 1-1 [Compl., Exh. A] at 62 of 106.  Second, Rule 7.1(D) provides: "Any person who violates this Rule 7, compromises Airport security, or creates or engages or participates in any unsafe [or] unsecure . . . activity at the Airport may have access privileges immediately revoked on a temporary or permanent basis at the sole discretion of the Airport."  *Id.*  Third, Rule 14.4, which Plaintiffs directly quote in the body of their Complaint, states that "[i]ndividual infractions . . . relating to the safety or security of the Airport may result in the immediate suspension or permanent revocation of an Airport ID badge . . . at the sole discretion of the Airport . . . notwithstanding the Admonishment or Citation procedures [above]."  Dkt. No. 1 [Compl.] at ¶ 47; Dkt. No. 1-1 [Compl., Exh. A] at p. 103 of 106.  Finally, Rule 2.1 reserves discretion to the Airport Director to make any interpretive decisions about ambiguous rules.  Dkt. No. 1-1 [Compl., Exh. A] at p. 15 of 106.

These facts are subject to the Court's consideration on a motion to dismiss because the Complaint both quotes from and attaches the Airport's Rules and Regulations.  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  The Airport's Rules and Regulations are also subject to consideration as a matter of public record, and Defendants do not dispute their relevance or authenticity.  *Id.*  Crucially, because the Airport's Rules and Regulations are so incorporated, to the extent any of Plaintiffs' allegations contradict this clear reservation of discretion by the Airport, this Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint." *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall*, 629 F.3d at 998).

//

In any event, Plaintiffs do not attempt to avoid the fact that the Airport retained "sole discretion" to permanently revoke their SIDA badges, *see* Dkt. No. 1 [Compl.] at ¶ 47, and this fact underscores the outcome required by *Magassa*, *Egan*, and *Dorfmont*.  "Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005); *see also Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (quoting same).  Due Process protections do not attach to the discretionary issuance or revocation of these security badges, regardless of Plaintiffs' unliteral beliefs about them.  *See also Doyle v. City of Medford*, 606 F.3d 667, 672-73 (9th Cir. 2010); *Shanks v. Dressel*, 540 F.3d 1082, 1091 (9th Cir. 2008).

### C.    Plaintiffs Do Not Allege Cognizable Reputational Harm, Either.

To the extent Plaintiffs allege that the Airport's actions caused reputational harm impacting their employability in violation of the Fourteenth Amendment's procedural Due Process protections—and it is not clear that Plaintiffs do—such claims also fail.  While courts have occasionally identified protected liberty interests in one's reputation related to employment, plaintiffs must satisfy the "stigma plus" test to allege a cognizable procedural Due Process violation.  Under that test, plaintiffs must show that the government made stigmatizing statements harming their reputation *and* must show the deprivation of a protected interest.  *Magassa*, 52 F.4th at 1169; *Paul v. Davis*, 424 U.S. 693, 709-712 (1976).  Here, Plaintiffs have no such protected interest, so their claims fail.  *See* Section I, Parts A and B, *supra*; *see also Hodge v. Jones*, 31 F.3d 157, 165 (4th Cir. 1994) (rejecting claim of reputational Due Process violations where plaintiffs had no protected interests in their security clearances).  Moreover, Plaintiffs do not allege that the Airport made any stigmatizing statements—nor could they, as the Airport merely informed Plaintiffs of its determinations regarding their security infractions, and Plaintiffs acknowledge that the Airport *had* to submit their names to the CRD.  Dkt. No. 1-2 [Compl., Exh. B] at 2-3 of 18; Dkt. No. 1-3 [Compl., Exh. C] at 2 of 2; Dkt. No. 1 [Compl.] at ¶ 52.

### D.    Plaintiffs Cannot Cure These Defects Through Amendment, so Dismissal Without Leave to Amend Is Appropriate.

Counts I and II should be dismissed without leave to amend because their flaws are inherent; Plaintiffs simply lack a protected liberty or property interest in their former SIDA badges and in

1  employment that requires a SIDA badge, as a matter of law. Any amendment could not overcome

2  this, and thus would be futile. *Lund v. Cowan*, 5 F.4th 964, 973 (9th Cir. 2021).

3  **II.  Count III Fails to State a Claim Because the Eighth Amendment's Protection Against**

4  **Cruel and Unusual Punishment Does Not Apply in This Non-Criminal Context**

5          Plaintiffs' third cause of action should be dismissed for the straightforward reason that the

6  Eighth Amendment's prohibition against cruel and unusual punishment applies only to criminal

7  matters. Plaintiffs allege that their badge revocation and inclusion on the CRD "constituted an

8  excessive punishment" in violation of the Eighth Amendment. Dkt. No. 1 [Compl.] at ¶ 67. "In the

9  few cases where the [United States Supreme] Court has had occasion to confront claims that

10 impositions outside the criminal process constituted cruel and unusual punishment, it has had no

11 difficulty finding the Eighth Amendment inapplicable." *Ingraham v. Wright*, 430 U.S. 651, 667–68

12 (1977). Indeed, the Court has made clear that "the State does not acquire the power to punish [in a

13 manner] with which the Eighth Amendment is concerned until after it has secured a formal

14 adjudication of guilt in accordance with due process of law." *Id*. at 671 n.40. Instead, "[w]here the

15 State seeks to impose punishment without [criminal] adjudication, the pertinent constitutional

16 guarantee is the Due Process Clause of the Fourteenth Amendment." *Id*. Although the Ninth Circuit

17 has acknowledged the application of the Eighth Amendment's prohibition on cruel and unusual

18 punishment outside the context of a criminal *conviction*, it has nonetheless required the initiation of

19 some criminal *process* for Eighth Amendment protections regarding punishment to apply. *Martin v.

20 City of Boise*, 920 F.3d 584, 614 (9th Cir. 2019). Because no aspect of Plaintiffs' badge revocation or

21 placement on the CRD was criminal, Plaintiffs' Eighth Amendment cause of action fails.[4]

22 //

23

---

24      [4] Plaintiffs' Complaint discusses alleged "excessive punishment," Dkt. No. 1 [Compl.] at ¶ 67,
and elsewhere refers to the "punishment" Plaintiffs sustained, *id*. at ¶ 6. Defendants take this to assert

25 a claim under the Eighth Amendment's prohibition on cruel and unusual punishment, and not the
Excessive Fines Clause, which *can* apply in civil matters. See *Hudson v. United States*, 522 U.S. 93,

26 103 (1997). Regardless, even if the Complaint can be read to assert a claim under the Excessive Fines
Clause, Plaintiffs have paid no fines and do not allege that the Airport imposed any monetary

27 punishment, and thus Plaintiffs fail to state such a claim. *Austin v. United States*, 509 U.S. 602, 609–
10 (1993) ("The Excessive Fines Clause limits the government's power to extract payments, whether

28 in cash or in kind, as *punishment* for some offense.") (emphasis in original) (citation omitted).

Dismissal of Count III without leave to amend is appropriate because Plaintiffs cannot cure this defect in an amended complaint. *Lund*, 5 F.4th at 973. The proceedings that resulted in Plaintiffs' badge revocation and subsequent placement on the CRD simply were not criminal, and the Eighth Amendment is not implicated by them.

## III.  In the Alternative, Littlefield and Doe 1 Have Qualified Immunity from Plaintiffs' Individual Capacity Claims

To the extent the arguments set forth in Sections I and II do not dispose of all of Plaintiff's claims, Littlefield and Doe 1 should be dismissed based on qualified immunity. In all three counts, Plaintiffs sue Littlefield in Doe 1 in their individual capacities, seeking to hold them personally liable for alleged constitutional violations. Plaintiffs' individual capacity claims are subject to dismissal as to Littlefield and Doe 1 under the doctrine of qualified immunity because Plaintiffs have not alleged a violation of a clearly established right.

### A.  Government Officials Are Entitled to Qualified Immunity from § 1983 Suits Where the Right at Issue Is Not Clearly Established.

"In § 1983 actions, the doctrine of qualified immunity protects city officials from personal liability in their *individual* capacities for their official conduct so long as that conduct is objectively reasonable and does not violate clearly-established federal rights." *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 964 (9th Cir. 2010) (emphasis in the original). Because the "entitlement is an *immunity from suit* rather than a mere defense to liability", the issue of immunity should be resolved "at the earliest possible stage in the litigation." *Id.* at 965 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)) (emphasis in original).

A two-part analysis applies in qualified immunity cases. *Frudden v. Pilling*, 877 F.3d 821, 831 (9th Cir. 2017). First, the court decides "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Second, the court decides "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* As discussed above, Plaintiffs cannot satisfy the first element, as they have failed to allege a violation of a cognizable constitutional right. As set forth below, Plaintiffs cannot satisfy the second element either.

"A right is clearly established for purposes of qualified immunity only where '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Frudden,* 877 F.3d at 831 (quoting *Dunn v. Castro,* 621 F.3d 1196, 1200 (9th Cir. 2010)). For a right to be clearly established, the law must be "settled"—the constitutionality "beyond debate"—with a sufficiently clear foundation in "then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). The precedent must be sufficiently clear so that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*. "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*. at 63 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986).) A plaintiff bears the initial burden of proving that the rights allegedly violated by defendants were clearly established at the time of the alleged misconduct. *Houghton v. South*, 965 F.2d 1532, 1534 (9th Cir. 1992).

**B.    Littlefield and Doe 1 Did Not Violate a Clearly Established Right.**

As set forth in Sections I and II, *supra*, Plaintiffs have not alleged facts that make out a violation of any constitutional rights, including violations of the Fourteenth Amendment or the Eighth Amendment, and qualified immunity therefore protects Littlefield and Doe 1 at step one of the inquiry. In the alternative, if Plaintiffs have alleged a violation of a constitutional right (they have not), the rights at issue are not clearly established.

**1.    Counts I and II – There is no clearly established right to Due Process in connection with revocation of a security clearance, employment that requires such a clearance, or in being listed on the CRD.**

In Count I, Plaintiffs appear to define the right at issue as the right to "due process" in the course of "revocation proceedings" concerning their SIDA badges. Dkt. No. 1 [Compl.] at ¶¶ 54-57. Count II is directly linked to the purported right asserted in Count I, as Plaintiffs acknowledge that "[w]here an airport operator revokes an individual's operator-issued badge, the operator *must* submit the name of the individual to the CRD," *Id*. at ¶ 52 (emphasis added). To the extent Count II articulates a different right, it appears to be the right to "notice" and "a means of challenging their placement on the CRD," but this too ultimately relates to Plaintiffs' ability to obtain employment requiring a SIDA badge. *Id*. at ¶¶ 62-63. No version of these rights, if they exist, is clearly

established.  There is no clearly established Due Process right to a security clearance or employment that requires a security clearance.

To the contrary, the Ninth Circuit's decision in *Magassa*, holds that there is no liberty or property interest in a government-issued security clearance, including a SIDA badge.  52 F.4th at 1168-69.  The underlying decision by the Western District of Washington in *Magassa*—which also concluded that the plaintiff did not have a protected interest in connection with the revocation of a SIDA badge—was issued on June 23, 2021.  *Magassa v. Wolf*, 545 F. Supp. 3d 898, 907-09 (W.D. Wash. 2021).  This was several months before Plaintiffs' SIDA badges were allegedly revoked.  *See* Dkt. No. 1 [Compl.] at ¶ 33 (Doe 1 permanently revoked Plaintiff's SIDA badges on September 14, 2021); *id*. at ¶ 39 (Littlefield denied Plaintiffs' appeal on October 23, 2021).  At the very least, the district court's decision called into doubt whether revocation of Plaintiffs' SIDA badges implicated any constitutional rights, thus foreclosing any argument that Plaintiffs' asserted Due Process rights were clearly established.  Moreover, in affirming the district court's decision, the Ninth Circuit in *Magassa* followed a line of precedent going back to the Supreme Court's 1988 decision in *Department of the Navy v. Egan*, where the Supreme Court announced: "It should be obvious that no one has a 'right' to a security clearance."  484 U.S. at 528.

In light of this line of authority, as discussed further in Section I, *supra*, reasonable officials in Littlefield and Doe 1's positions would have had no reason to believe that Plaintiffs had a protected liberty or property interest in their SIDA badges, that Plaintiffs had a constitutional right to Due Process in connection with revocation of their SIDA badges, or that Littlefield and Doe 1's alleged actions in revoking Plaintiffs' SIDA badges were unconstitutional.  *See Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016).  Likewise, they would have had no reason to believe that adding Plaintiffs' names to the CRD, thereby impacting their future employability, constituted an unlawful act, let alone an unconstitutional one.

**2.      Count III – There is no clearly established Eighth Amendment right in connection with revocation of a security clearance.**

In Count III, Plaintiffs appear to define the right at issue as an Eighth Amendment right to be free from punishment in the form of permanent SIDA badge revocation or placement on the CRD.

Dkt. No. 1 [Compl.] at ¶¶ 65-67.  However, as discussed in Section II, *supra*, since at least 1977, the law has been clear that the Eighth Amendment does not apply outside of the criminal context.  *See Ingraham*, 430 U.S. at 667–68; *Martin*, 920 F.3d at 614.  Accordingly, reasonable officials in Defendants' positions would not have known, let alone suspected, that their actions ran afoul of the Eighth Amendment.  Littlefield and Doe 1 are therefore entitled to qualified immunity from Count III as well.

## IV.  In the Alternative, Plaintiffs' Official Capacity Claims Against Littlefield and Doe 1 Should Be Dismissed as Redundant

Plaintiffs have also sued Littlefield and Doe 1 in their official capacities.  These official capacity claims should be dismissed as redundant, as Plaintiffs are also suing the City.  An official capacity suit against a municipal officer is equivalent to a suit against the municipal entity.  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).  Such suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978).  Where "both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant."  *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008); *see also Luke v. Abbott*, 954 F. Supp. 202, 204 (C.D. Cal. 1997) ("[I]t is no longer necessary or proper to name as a defendant a particular local government officer acting in official capacity. To do so only leads to a duplication of documents and pleadings, as well as wasted public resources for increased attorneys' fees.").  Accordingly, the official capacity claims against Littlefield and Doe 1 should be dismissed as well.

## V.  In the Alternative, the Airport Commission is an Improper Defendant

The Airport Commission is not a proper defendant as to Plaintiffs' claims.  First, municipal departments are not subject to suit under § 1983.  Moreover, under the San Francisco City Charter ("S.F. Charter"), only the City, and not its constituent departments, may be sued in a civil action.

As an initial matter, the Airport Commission is not subject to suit under § 1983.  Section 1983 affords certain protections, "but only for deprivations by persons acting under the color of state law."  *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 995 (N.D. Cal. 1996).  In *Vance*, the Northern

District of California determined that while the term "persons" encompasses local governmental entities, it "does not encompass municipal departments." *Id.* at 996. "Naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality." *Id.* (quoting *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991)).

Moreover, under the S.F. Charter, only the City has the power to "appear, sue, and defend" in a civil action. (S.F., Cal. Charter art. I, § 1.101[5]; *see also Sanders v. San Francisco Pub. Libr.*, Case No. 23-CV-00211-JSW, 2023 WL 5723695, at *3 (N.D. Cal., Sept. 5, 2023) (granting the San Francisco Public Library's motion to dismiss because "[u]nder the San Francisco Charter, only the City has the power to 'appear, sue, and defend in all courts in all matters and proceedings.'"). Further, the Charter makes clear that the City is composed of its departments, appointive boards, and other constituent departments (S.F. Charter, Article IV, § 4.100), and the powers of those boards and departments, including the Commission, do not include the power to appear, sue and defend (S.F., Cal. Charter, art. IV, §§ 4.102, 4.115, 4.126).

The Airport is thus an inappropriate defendant and should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' Complaint be dismissed in its entirety without leave to amend. In the alternative, should any cause of action survive, Defendants respectfully request that only the City and County of San Francisco remain as Defendant in this case.

//

//

//

//

//

//

---

[5] The relevant provisions of San Francisco's Charter are included with Defendants' Request for Judicial Notice, filed herewith.

Dated:  November 27, 2023

Respectfully submitted,

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
SARA J. EISENBERG
Chief of Complex & Affirmative Litigation
ADAM M. SHAPIRO
MOLLY J. ALARCON (she/her)
Deputy City Attorneys

By:   _/s/ Molly J. Alarcon_____

Attorneys for Defendants