JOHN K. BUCHE (CA BAR NO. 239477)
BYRON MA (CA BAR NO. 299706)
**BUCHE & ASSOCIATES, PC**
875 Prospect Street Suite 305
La Jolla, CA 92037
Telephone: (713) 589-2214
Fax: (858) 459-9120
Email: jbuche@buchelaw.com
         bma@buchelaw.com

SAMUEL A. SEHAM (NY BAR NO. 5768080) (*pro hac vice*)
LEE SEHAM (NY BAR NO. 2194306) (*pro hac vice*)
**SEHAM, SEHAM, METZ & PETERSEN LLP**
199 Main Street, 7th Floor
White Plains, NY 10601
Telephone: (914) 997-1346
Fax: (914) 997-7125
Email: samuel.seham@gmail.com
         ssmpls@aol.com

*Attorneys for the Plaintiffs Walter Spurlock and Andre Guibert*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### (SAN FRANCISCO DIVISION)

| | |
|---|---|
| WALTER SPURLOCK and ANDRE GUIBERT, <br><br>        *Plaintiffs*, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, AIRPORT COMMISSION OF THE CITY AND COUNTY OF SAN FRANCISCO, KEABOKA MOLWANE in his individual capacity and official capacity as Aviation Security and Regulatory Compliance Officer at the San Francisco International Airport, and JEFF LITTLEFIELD in his individual capacity and official capacity as Chief Operating Officer at San Francisco International Airport, <br><br>        *Defendants*. | Case No. 3:23-cv-4429 <br> *Jury Trial Demanded* <br><br> COMPLAINT FOR: <br><br> 1) VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION; <br><br> 2) VIOLATION OF THE EIGHTH AMENDMENT OF THE U.S. CONSTITUTION; <br><br> 3) VIOLATION OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C.; and <br><br> 4) DECLARATORY, INJUNCTIVE, AND COMPENSATORY RELIEF. |

1    Come now Plaintiffs Walter Spurlock ("Spurlock") and Andre Guibert ("Guibert") and, by

2  and through their attorneys, bring this action against Defendants City and County of San Francisco,

3  Airport Commission of the City and County of San Francisco ("Airport Commission"),  Keaboka

4  Molwane ("Molwane") in his individual capacity and official capacity as an Aviation Security and

5  Regulatory Compliance Officer at the San Francisco International Airport ("SFO"), Jeff Littlefield

6  ("Littlefield") in his individual capacity and official capacity as Chief Operating Officer at SFO

7  and allege as follows:

8                    **NATURE OF THE CASE**

9       1.      Aviation Maintenance Technicians ("AMTs") are responsible for the maintenance

10  and safety of aircraft that operate in federal airspace.  Like any doctor or lawyer, AMTs are

11  engaged in a licensed profession to which they expect to devote their entire lives.  Plaintiffs were

12  previously AMTs employed by Alaska Airlines, Inc. ("Alaska Airlines").  For decades, Plaintiffs

13  were stationed and dutifully performed essential maintenance work on aircraft at SFO.  As a result

14  of Defendants' reckless disregard for Plaintiffs' constitutional rights, Plaintiffs lost not only their

15  jobs at Alaska Airlines, but also their AMT careers.

16      2.      In order to perform their job functions, Alaska Airlines AMTs stationed at SFO

17  must maintain a Secured Identification Display Area ("SIDA") badge.  SIDA badges permit

18  authorized employees, contractors, and vendors to access safety-sensitive areas of the airport.  The

19  Airport Commission oversees SFO operations.  It sets policies regarding the issuance and

20  revocation of SIDA badges that are, in turn, applied by SFO management.

21      3.      Applying Airport Commission polices, SFO management revoked Plaintiffs' SIDA

22  badges.  Absent from the revocation proceedings was any semblance of the due process rights

23  guaranteed by the Fourteenth Amendment of the U.S. Constitution.  Plaintiffs were told they could

24

1   write a one-paragraph statement, throwing themselves on the mercy of SFO management.  In reply,

2   Plaintiffs received curt decisions that summarily revoked their SIDA badges.

3       4.    Upon the revocation of the Plaintiffs' SIDA badges, SFO management submitted

4   Plaintiffs' names to the Transportation Security Administration ("TSA") Centralized Revocation

5   Database ("CRD").  SFO management provided Plaintiffs with no notice of their CRD placement

6   and provided no opportunity to challenge the placement.

7       5.    CRD placement is a death sentence for airline industry employees.  It is the

8   standard practice of airport operators to refuse issuance of SIDA badges to persons on the CRD.

9   A vast majority of aviation maintenance work occurs in areas that require AMTs to hold SIDA

10  badges.  Because other airport operators refused to issue SIDA badges to the Plaintiffs, they could

11  no longer perform the aviation maintenance work that they are licensed to perform.

12      6.    The revocation procedures developed and implemented by the Defendants failed

13  to provide Plaintiffs with minimum due process protections.  Plaintiffs' due process rights were

14  again violated by the Defendants' failure to provide notice to the Plaintiffs' of their CRD

15  placement, and the Defendants' refusal to provide a procedure whereby the Plaintiffs could

16  challenge their placement.  The revocation of Plaintiffs' SIDA badges and their placement on the

17  CRD constituted punishment that violated the prohibitions of the Eighth Amendment of the U.S.

18  Constitution, as applied against the Several States.  Plaintiffs bring this action pursuant to 42

19  U.S.C. § 1983.

20  ## JURISDICTION & VENUE

21      7.    This Court has personal jurisdiction over Defendants.  The Airport Commission is

22  a department, agency, and instrumentality of the City and County of San Francisco, located in this

23  judicial district.  Mr. Molwane and Mr. Littlefield are employed at SFO, located in this judicial

24  district and are tasked with applying Airport Commission policies at SFO.  The Court has personal

jurisdiction over Defendants because Plaintiffs' claims arise out of actions taken by the Defendants in this judicial district.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b) and (c).  The events and conduct giving rise to the violations of law occurred in this District, and Plaintiffs and Defendants are located and conduct business in this district.

### DIVISIONAL ASSIGNMENT

9.      Pursuant to Civil Local Rules 3-2(c) and 3-2(d), the action is properly assigned to the San Francisco Division of this Court because a substantial part of the events giving rise to the claims asserted herein occurred in San Francisco counties.

### PARTIES

10.     Plaintiff Spurlock has worked at SFO since 2000.  He obtained his AMT license and Airframe/Powerplant ratings in 1999 and, since that date, has worked at American Airlines, Virgin America, and Alaska Airlines as an AMT.  Mr. Spurlock is an Airforce veteran and served in Operation Desert Storm.  He is father to a two-year-old son.

11.     Plaintiff Guibert has worked at SFO since 1995.  He obtained his AMT license and Airframe/Powerplant ratings in 1996 and, since that date, has worked at Continental Airlines, American Airlines, Virgin America, and Alaska Airlines as an AMT.  He is a family man and a father to three children.

12.     Defendant City and County of San Francisco is a municipal corporation organized and existing under the laws of the State of California.

13.     Defendant Airport Commission was established by the San Francisco City Charter in 1970 and is a department, agency, and instrumentality of the City and County of San Francisco. The Airport Commission consists of five members appointed by the Mayor of San Francisco.  It issues the Rules and Regulations for the San Francisco International Airport ("SFO Rules and

Regulations"), which govern the general conduct of the public, tenants, employees, and commercial users of SFO.  (Ex. A.)

14.     Mr. Molwane is an Aviation Security and Regulatory Compliance Officer at SFO. He served as the hearing officer in proceedings against Spurlock and Guibert and approved the revocation of their SIDA badges.  A hearing officer is responsible for applying SFO Rules and Regulations in the course of SIDA badge revocation proceedings.

15.     Defendant Littlefield has served as the Chief Operating Officer at SFO since 2016. The Chief Operating Officer is responsible for the day-to-day executive level operation of SFO. Pursuant to the SFO Rules and Regulations, the SFO Chief Operating Officer serves as the hearing officer in appeals related to SIDA badge revocations.  The Chief Operating Officer is responsible for applying the SFO Rules and Regulations in the course of SIDA badge revocation appeals. Littlefield was the appeals officer in the proceedings related to Spurlock and Guibert and approved the revocation of their SIDA badges.  Mr. Littlefield approved the placement of Plaintiffs on the CRD without first providing Plaintiffs with notice of the placement. Following requests by Plaintiffs' union, Mr. Littlefield refused to provide a process by which Plaintiffs could challenge their CRD placement.

## FACTS COMMON TO ALL CLAIMS

**AMT License and Training Requirements**

16.     Federal regulations limit who may perform preventative maintenance on aircraft and who may approve the return of aircraft to service following maintenance, rebuilding, or alternation. 14 C.F.R.  §§  43.3(a),  43.7(a).    AMTs holding mechanic certificates and Airframe/Powerplant ratings are among those limited category of persons entitled to perform maintenance and maintenance approval work.  14 C.F.R. §§ 43.3(b), 43.7(b), 65.71, and 65.73.

17.    Each applicant for a mechanics certificate or rating must complete eighteen (18) months to thirty (30) months of practical experience based on the number of ratings sought or complete equivalent experiential training at an aviation maintenance technician school. 14 C.F.R. §§ 65.77. Each applicant must additionally pass written, oral, and practical tests as appropriate to the rating sought. 14 C.F.R. §§ 65.75 and 65.79.

18.    At all relevant times, Plaintiffs held mechanics certificates and Airframe/Powerplant ratings.  They were entitled to perform and approve maintenance work on aircraft, airframes, aircraft engines, propellers, appliances, and component parts.  Plaintiffs expected to continue in their profession free from arbitrary interference therewith.  That expectation shaped all aspects of their lives including where they worked, where they lived, and their ability to support their families.

**SIDA Badge Requirements**

19.    Every airport operator regularly serving operations of an aircraft operator or foreign air carrier must establish at least one SIDA.  49 C.F.R. § 1542.205(a).  Each airport operator that is required to establish a SIDA must establish and carry out measures to prevent the unauthorized presence and movement of individuals in the SIDA that include personnel identification systems incorporating the display of personnel identification media.  *Id.* (b); 49 C.F.R § 1542.211(a).

20.    The SFO Rules and Regulations provide for the creation of SIDAs, access to which is limited to persons holding an Airport-issued identification badge (i.e., SIDA Badge).

**Events of September 9, 2021**

21.    On the morning of September 9, 2021, Guibert and Spurlock both reported to an SFO external security checkpoint.  Both Plaintiffs were scheduled to work on that day and were authorized to access their work area through the checkpoint.

22.     To access the Alaska Airlines work area, AMTs must swipe their SIDA badge at a reader, use a biometric scanner (fingerprint), and proceed through a turnstile.

23.     After Guibert's successful badge read, biometric scan, and entry through the turnstile, Spurlock attempted to use the same security checkpoint. Spurlock had a successful badge read and biometric scan. He attempted to proceed through the turnstile, but the turnstile malfunctioned halfway through its rotation, the result of a mechanical failure. Spurlock was forced to back out of the turnstile and return to the non-SIDA side of the checkpoint. The badge reader would no longer initiate a read because the system had erroneously registered Spurlock's entrance.

24.     Spurlock passed his SIDA badge, from the non-SIDA side, to Guibert, on the SIDA side, and Guibert placed Spurlock's badge on the outgoing badge reader, to reset the badge reader system. Nobody entered the access point turnstile, from either side, during the process of resetting the reader. The badge was immediately returned to Spurlock, and he initiated a successful badge read and biometric scan. Spurlock then proceeded through the turnstile without issue.

25.     At a subsequent internal checkpoint, both Spurlock and Guibert had successful SIDA badge reads and biometric scans. SFO security officers examined their SIDA badges and Spurlock and Guibert were allowed to proceed to their work area.

26.     Spurlock and Guibert began to complete assigned maintenance work. They were then told by their foreman that they should report to the SFO security office. To reach the SFO security office, both Spurlock and Guibert completed successful badge scans at two interior checkpoints.

27.     On arriving at the SFO security office, SFO security officers issued citations to Spurlock and Guibert and suspended their SIDA badges.

***Revocation of Plaintiffs' SIDA Badges and Placement on the Central Revocation Database***

28.     Pursuant to the SFO Rules and Regulations, Plaintiffs sought a review of their SIDA badge suspension.

29.     Plaintiffs were not provided with all evidence against them prior to the review. They did not receive the following evidence 1) a copy of video evidence showing their actions at the external security checkpoint, 2) pictures of the SFO notices purportedly posted at the checkpoint, and 3) SFO notices purportedly distributed to vendors regarding SIDA badge use.

30.     Plaintiffs were not provided exculpatory evidence establishing that 1) SFO was aware that the security checkpoint turnstile in question frequently malfunctioned, 2) SFO had taken no action to fix the malfunctioning checkpoint turnstile, 3) Plaintiffs were authorized to enter at the external checkpoint, 4) Plaintiffs had not jeopardized the safety of SFO operations, and 5) SFO had not revoked the SIDA badges of other badge holders who had taken similar actions.

31.     Plaintiffs were allowed to submit a one paragraph statement pleading for the return of their SIDA badges.  They were not allowed to present supporting evidence that 1) SFO was aware that the security checkpoint turnstile frequently malfunctioned, 2) SFO had taken no action to fix the malfunctioning checkpoint turnstile, 3) Plaintiffs were authorized to enter at the designated checkpoint, 4) Plaintiffs had not jeopardized the safety of SFO operations, and 5) SFO had not revoked the SIDA badges of other badge holders who had taken similar actions.

32.     Plaintiff were not afforded a hearing.  They were not allowed to testify, cross examine SFO witnesses, or call their own witnesses.

33.     On the September 14, 2021, Defendant Molwane permanently revoked Plaintiffs' SIDA badges. The decision did not acknowledge that both Spurlock and Guibert were authorized to enter at the checkpoint and had not allowed any unauthorized person to enter at the checkpoint. It did not explain why permanent revocation was the appropriate punishment or consider lesser punishments. The decision relied on pictures of SFO notices purportedly posted at the checkpoint

turnstile and SFO notices purportedly distributed to vendors regarding SIDA badge use. That evidence had been withheld from Plaintiffs prior to the hearing. (Ex. B).

34.    Pursuant to the SFO Rules and Regulations, Spurlock and Guibert sought an appeal of their revocation decisions.

35.    Plaintiffs were not provided with all evidence against them prior to the appeal. They did not receive a copy of video evidence showing their actions at the security gate.

36.    Again, Plaintiffs were not provided exculpatory evidence establishing that 1) SFO was aware that the security checkpoint turnstile frequently malfunctioned, 2) SFO had taken no action to fix the malfunctioning checkpoint turnstile, 3) Plaintiffs were authorized to enter at the designated checkpoint, 4) Plaintiffs had not jeopardized the safety of SFO operations, and 5) SFO had not revoked the SIDA badges of other badge holders who had taken similar actions.

37.    Again, Plaintiffs were allowed to submit a one paragraph statement pleading for the return of their SIDA badges. They were not allowed to present supporting evidence that 1) SFO was aware that the security checkpoint turnstile frequently malfunctioned, 2) SFO had taken no action to fix the malfunctioning checkpoint turnstile, 3) Plaintiffs were authorized to enter at the designated checkpoint, 4) Plaintiffs had not jeopardized the safety of SFO operations, and 5) SFO had not revoked the SIDA badges of other badge holders who had taken similar actions.

38.    Again, Plaintiffs were not afforded a hearing or the opportunity for oral argument. They were not allowed to testify, cross examine SFO witnesses, or call their own witnesses.

39.    On October 23, 2021, Defendant Littlefield denied the Plaintiffs' appeal.  The decision did not acknowledge that both Plaintiffs were authorized to enter at the checkpoint and had not allowed any unauthorized person to enter at the checkpoint. It did not explain why permanent revocation was the appropriate punishment or consider lesser punishments. (Ex. C).

40.     Upon the permanent revocation of Plaintiffs' SIDA Badges, Mr. Littlefield authorized the submission of Plaintiffs' names to the CRD without first providing notice to Plaintiffs of the CRD placement.

41.     The Aircraft Mechanics Fraternal Association ("AMFA") served as Plaintiffs' certified bargaining agent while they were employed at Alaska Airlines.  On November 11, 2022, AMFA Air Line Representative Jeff Heard wrote to the Airport Commission addressing the need to provide both notice and an opportunity to challenge CRD placement.  (Ex. D).  On December 15, 2022, Mr. Littlefield replied on behalf of the Airport Commission refusing to provide a process whereby Guibert and Spurlock could challenge their CRD placement.  (Ex. E).

***SFO Regulations Governing SIDA Badge Revocation, Hearing, and Appeal***

42.     Plaintiffs did not violate any SFO Rule or Regulation governing the use of SIDA badges.  Plaintiffs used only their own badges at security checkpoints and badge scanners while reporting to work and entering Restricted Areas.  At all times, Plaintiffs were entitled to be within Restricted Areas of the airports.  They did not tamper or interfere with, modify, or attempt to circumvent any security system.  Their actions, at all times, facilitated the proper functioning of the SFO security system.

43.      Rule 14 of the SFO Rules and Regulations establishes the enforcement and appeal procedures that apply in the event of an alleged violation of the Rules and Regulations.  (Ex. A).

44.     Rule 14.2 of the SFO Rules and Regulations provides: "Any person or business entity violating or otherwise engaging in prohibited conduct under these Rules and Regulations may be subject to general and/or administrative fines as provided under the Rule 14."  Security violations prohibited by Rule 7 are subject to Category E fines.  (*Id.*)

45.     Rule 14.3 of the SFO Rules and Regulations provides for escalating fines based on the number of violations that occur within the same calendar year.  Category E fines are subject to

the following schedule: First Offense – $1,000; Second Offense – $2,000; Third Offense – $3,000. (*Id.*)

46.     Rule 14.4 of the SFO Rules and Regulations applies only to individual employees who are granted access to secure areas of the Airport for their work duties.  Security violations prohibited by Rule 7 are subject to the following penalty schedule:

| | | First Offense/<br>written Admonishment | Warning to employee |
|---|---|---|---|
| **7.0** | **Individual security violations** | First Offense/<br>Citation | ▪ Airport ID badge immediately confiscated for one full day (a 24-hour period) following Citation<br>▪ Security Access Office training class |
| | | Second Offense | ▪ Airport ID badge immediately confiscated for three full consecutive days (a 72-hour period) following Citation<br>▪ Security Access Office training class<br>▪ Employer pays lease/permit charge for a violation of the Rules and Regulations |
| | | Third Offense | ▪ Airport ID badge immediately confiscated for ten full consecutive days (a 240-hour period) following Citation<br>▪ Security Access Office training class<br>▪ Employer pays lease/permit charge for a violation of the Rules and Regulations |
| | | Fourth Offense | Security access permanently terminated |
| | | **Note for all individual security or security-related violations:** | Airport ID Badge holders directed to attend in-person training administered by the Security Access Office shall do so within the time specified or may be subject to further badge suspension or revocation. The charge for the training is a $50 administrative fee which the employee or the employee's authorized signatory shall pay before attending the training.  (ASB 19-06) |

47.     Rule 14.4 of the SFO Rules and Regulations provides: "Individual infractions . . . relating to the safety or security of the Airport may result in the immediate suspension or permanent revocation of an Airport ID badge or driving privileges, at the sole discretion of the Airport, notwithstanding the Admonishment or Citation procedures [above]." (*Id*)

48.     Any person seeking to challenge a penalty imposed under the SFO Commission Rules and Regulations must follow the administrative procedures set out in Rule 14.5.  (*Id*).

49.     Pursuant to Rule 14.5(B) of the SFO Rules and Regulations, a request for review must be received by the Airport within ten (10) calendar days of the date the Notice of Citation is issued.  A request for review shall include (i) the name, date, mailing address, e-mail address, and phone number of the requestor and (ii) a detailed basis for the review.  The Airport Director shall designate an Airport Commission employee to review a request.   The designated reviewer will have no personal knowledge of the incident resulting in the Citation. The reviewer may request additional information from the requestor.  Within thirty (30) calendar days of receipt of the Request for Initial Review, the reviewer shall issue an administrative decision affirming, dismissing, or amending the citation. (*Id*.)

50.     Pursuant to Rule 14.5(C) of the SFO Rules and Regulations, an administrative decision affirming or amending a Citation may be appealed within ten (10) calendar days of the date the decision is issued.  The request for appeal must include information detailing the basis of the appeal.  The Airport Chief Operator shall be the hearing officer for any appeal involving long-term suspension (more than 72 hours) or permanent revocation of an Airport ID badge.  The hearing officer may request additional information for the appellant.  The hearing officer may in his/her sole discretion invite both the appellant and the Airport Division issuing the citation to a hearing to state their respective positions and answer questions posed by the hearing officer; the hearing may be in person or in writing as directed by the hearing officer.  The hearing officer shall issue an administrative decision affirming, dismissing, or amending the citation.  The hearing officer's decisions shall be final on the date issued.  The hearing officer shall issue a decision within sixty (60) days of the date of the receipt of the written appeal. (*Id.*)

***Federal Requirements Regarding CRD Placement***

FIRST AMENDED COMPLAINT; 3:23-cv-4429

51.     Under the Federal Aviation Administration Reauthorization Act of 2018, Congress directed the TSA Administrator to develop a centralized database containing the names of individuals who have had airport-issued SIDA badges revoked for failure to comply with aviation security requirements. Public Law 115-254—Oct. 5, 2018, 131 Stat. 3186, 3574.  To comply with the directive, the TSA created and maintains the CRD.

52.     Where an airport operator revokes an individual's operator-issued badge, the operator must submit the name of the individual to the CRD.  Names of individuals who have had operator-issued badges revoked are maintained on the CRD for five years along with their social security number and contact information.  *Id.*; Dep't of Homeland Sec., *Airport Access for Aviation Workers* at 6, Apr. 27, 2020; (Ex. F).  The CRD may include only those individuals who have had badges revoked as result of a violation of a security requirement or a determination that the individual poses a threat to aviation security.  Airport operators must check the name of any applicant for an operator-issued badge against the list of names maintained on the CRD prior to issuing a badge to the applicant.  Placement on the CRD has profound stigmatizing effects and prevents individuals from obtaining future employment in the airline industry.

53.     The TSA is an agency within the Department of Homeland Security ("DHS").  Pursuant to DHS guidance, "Airport and aircraft operators must provide the opportunity for redress to individuals entered into the centralized database so that the individual can challenge his or her inclusion in the database." Dep't of Homeland Sec., *Airport Access for Aviation Workers* at 5, Apr. 27, 2020; (Ex. F); *see also* TSA National Amendment: Centralized Revocation Database for Individual with Revoked Identification Media TSA-NA-21-01A.  An individual placed on the CRD may be removed following a successful challenge.  The guidance additionally states, "If a badge is revoked, the airport operator must notify the individual of the reason why and that the individual's record is being entered into the database, as well as provide an opportunity to

challenge the revocation." *Id.* at 7; *see also* TSA National Amendment: Centralized Revocation Database for Individual with Revoked Identification Media TSA-NA-21-01A

**COUNT ONE**

**DEFENDANTS' FAILURE TO PROVIDE PLAINTIFFS WITH MINIMUM DUE PROCESS RIGHTS DURING REVOCATION PROCEEDINGS VIOLATES PLAINTIFFS' DUE PROCESS RIGHTS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION AND THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C § 1983**

54.    Plaintiffs re-allege and incorporate all previous and following paragraphs as if fully set forth herein.

55.    The Fourteenth Amendment of the U.S. Constitution provides that no State may deprive any person of life, liberty, or property, without due process of law.

56.    Under 42 U.S.C. § 1983, any person acting under the color of state law that subjects or causes to be subjected any citizen of the United States or other person within its jurisdiction to the deprivation of any rights, privileges, or immunities by the Constitution and laws, shall be liability to the parties injured.

57.    AMTs who hold SFO SIDA Badges have a reasonable expectation that their badges will not be deprived arbitrarily or without due process.  Years of training and life decisions are undertaken on the basis of that expectation.  The SFO Rules and Regulations recognize the importance of SIDA badges to individual employees.  Penalties for the improper use of SIDA badges follow a progressive model with mandatory security access training after the first three offenses. Although entirely inadequate, the SFO Rules and Regulations provide a process that employees must follow if they seek a review of their SIDA badge suspension or revocation. The Federal Government recognizes the impact that SIDA Badge revocation and CRD placement may have on an individual employee.  It requires that airport operators notify badge holders prior to revocation and establish a process for the review of CRD placement.

FIRST AMENDED COMPLAINT; 3:23-cv-4429

58.     The Airport Commission is responsible for the promulgation of the SFO Rules and Regulations.  The SFO Rules and Regulations failed to provide adequate due process protections for the Plaintiffs:

a.   The SFO Rules and Regulations do not require that persons subject to SIDA badge revocation proceedings be provided with all evidence against them.  As a result, Plaintiffs did not receive 1) a copy of video evidence showing their actions at the external security checkpoint, 2) pictures of the SFO notices purportedly posted at the checkpoint, and 3) SFO notices purportedly distributed to vendors regarding SIDA badge use.

b.   The SFO Rules and Regulations do not require that persons subject to SIDA badge revocation proceedings receive all exculpatory evidence.  As a result, Plaintiffs were not provided exculpatory evidence establishing that 1) SFO was aware that the security checkpoint turnstile frequently malfunctioned, 2) SFO had taken no action to fix the malfunctioning checkpoint turnstile, 3) Plaintiffs were authorized to enter at the external checkpoint, 4) Plaintiffs had not jeopardized the safety of SFO operations, and 5) SFO had not revoked the SIDA badges of other badge holders who had taken similar actions.

c.   The SFO Rules and Regulations require employees subject to SIDA badge revocations to submit a detailed basis for the review or appeal.  In practice, it is the policy of the Airport Commission and its agents to allow employees to submit a single paragraph request for review or appeal.  As a result of this policy, Plaintiffs were not permitted to present a range of probative evidence establishing their lack of culpability including that 1) SFO was aware that the security checkpoint turnstile frequently malfunctioned, 2) SFO had taken no action to fix the malfunctioning

checkpoint turnstile, 3) Plaintiffs were authorized to enter at the designated checkpoint, 4) Plaintiffs had not jeopardized the safety of SFO operations, and 5) SFO had not revoked the SIDA badges of other badge holders who had taken similar actions.

d.   The SFO Rules and Regulations do not require that persons subject to SIDA badge revocation proceedings receive a live hearing during which they may testify, cross-examine witnesses, or call their own witnesses. As a result, Plaintiffs did not receive a live hearing and did not have an opportunity to testify, cross-examine witnesses or call their own witnesses.

e.   The SFO Rules and Regulations do not require that hearing or appeal officers issue decisions explaining the reasons for the decisions or the nature of the imposed punishment. As a result, the initial revocation decision by Mr. Molwane and the appeal decision by Mr. Littlefield did not consider the explanations offered by the Plaintiffs and did not consider alternatives to SIDA badge revocation.

59.   The SFO Rules and Regulations commit aspects of SIDA Badge revocation proceedings to the discretion of the hearing officer and appeals officer.  Those officers may 1) provide employees with all evidence against them, 2) order the production of exculpatory evidence, 3) solicit information from the employee beyond the required one paragraph statement, 4) provide a live hearing during which an employee may testify, cross-examine, and call their own witnesses, and 5) issue decisions explaining the reason for the decisions and any resulting punishment.

60.   Mr. Molwane served as the hearing officer during SIDA badge revocation proceedings against Plaintiffs.   He applied the SFO Rules and Regulations in the course of the

1    hearing.  Mr. Molwane failed to exercise the discretion provided to him under the SFO Rules and

2    Regulations to prevent the abrogation of Plaintiffs' due process rights.

3        61.    Mr. Littlefield served as the appeals officer during SIDA Badge revocations

4    proceedings against Plaintiffs.  He applied the SFO Rules and Regulations in the course of the

5    hearing.  Mr. Littlefield failed to exercise the discretion provided to him under the SFO Rules and

6    Regulations to prevent the abrogation of Plaintiffs' Due Process rights.

7                                    **COUNT TWO**

8    **DEFENDANTS' FAILURE TO PROVIDE PLAINTIFFS WITH NOTICE AND A**
     **MEANS OF CHALLENGING THEIR PLACEMENT ON THE CRD VIOLATED**
9    **PLAINTIFFS' DUE PROCESS RIGHTS GUARANTEED BY THE FOURTHEENTH**
     **AMENDMENT OF THE U.S. CONSTITUTION**

10       62.    Defendants failed to provide notice to Plaintiffs prior to placing their names on the

11   CRD. Notice is an essential element of due process as it ensures that an individual has a full

12   opportunity to protect and exercise his legal rights. Plaintiffs were unaware that their names had

13   been placed on the CRD until their SIDA Badge applications were denied by another airport in the

14   San Francisco area.  That lack of notice deprived Plaintiffs of an opportunity to challenge their

15   placement on the CRD prior to submitting SIDA badge applications to other airports and ultimately

16   resulted in the denial of the applications.  Lack of notice violated express DHS guidance to airport

17   operators and TSA regulations regarding the need to notify individuals prior to their placement on

18   the CRD and, as such, violated Plaintiffs' due process rights.

19       63.    Mr. Littlefield, acting on behalf of the Airport Commission, refused to provide

20   Plaintiffs with a means of challenging their placement on the CRD, again in violation of DHS

21   guidance to airport operators and TSA regulations.   Pursuant to the Federal Aviation

22   Reauthorization Act of 2018, the CRD may only include the names of individuals who have had

23   badges revoked as a result of a violation of a security requirement or a determination that the

24   individual poses a threat to aviation security.  Continued placement on the CRD has a stigmatizing

effect and has negatively impacted Plaintiffs' reputation in the airline industry. It indicates (falsely) that Plaintiffs have violated security requirements or posed a threat to aviation security. Plaintiffs' names, social security numbers, and contact information have been shared with prospective employers. The placement has prevented plaintiffs from obtaining alternative employment in the airline industry.

64.     DHS guidance and TSA regulations require that airport operators establish a process whereby individuals who have been placed on the CRD may challenge their placement on the CRD. The process ensures that the CRD only includes persons who have violated a security requirement or who pose a threat to aviation security. Plaintiffs violated no security requirement and pose no threat to aviation security. Defendants' refusal to provide Plaintiffs with a means of challenging their inclusion on the CRD subverts the requirements of Federal law and the purpose of the CRD. The refusal violates Plaintiff's due process rights.

## COUNT THREE

### DEFENDANTS' REVOCATION OF PLAINTIFFS' SIDA BADGES AND SUBSEQUENT PLACEMENT OF THE PLAINTIFFS ON THE CRD VIOLATED THE EIGHTH AMENDMENT OF THE U.S. CONSTITUTION AND THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C § 1983

65.     Plaintiffs re-allege and incorporate all previous and following paragraphs as if fully set forth herein.

66.     Plaintiffs did not violate any SFO Rule or Regulation governing the use of SIDA badges. Plaintiffs used only their own badges at security checkpoints and badge scanners while reporting to work and entering Restricted Areas. At all times, Plaintiffs were entitled to be within Restricted Areas of the airports. They did not tamper or interfere with, modify, or attempt to circumvent any security system. Their actions, at all times, facilitated the proper functioning of the SFO security system.

67.     Even should the facts support a finding that Plaintiffs violated SFO Rules and Regulations governing the use of SIDA Badges, Defendants had available to them a wide range of penalties which could have been imposed on the Plaintiffs.  The SFO Rules and Regulations confirm that permanent SIDA badge revocation is the harshest penalty that may be imposed on an individual employee.  Defendants failed to consider whether a lesser penalty was appropriate.

68.     The permanent revocations of Plaintiffs' SIDA badges and their subsequent placement on the CRD constituted an excessive punishment far out of proportion with any wrongdoing by the Plaintiffs.  Therefore, Plaintiffs are entitled to relief for these violations of their Eighth Amendment Rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgement against Defendants as follows:

A.      A declaratory judgment that the hearing and appeal procedures applied in the SIDA badge proceedings against the Plaintiffs did not comport with the due process requirements of the Fourteenth Amendment to the U.S. Constitution;

B.      A declaratory judgment that the Defendants' failure to provide notice of CRD placement and a process by which the Plaintiffs could challenge their placement on the CRD violated the due process requirements of the Fourteenth Amendment to the U.S. Constitution;

C.      A declaratory judgment that the Defendants' permanent revocation of Plaintiffs' SIDA badges and placement of Plaintiffs on the CRD violated the Eighth Amendment of the U.S. Constitution;

D.      A preliminary injunction requiring that Defendants provide Plaintiffs with a hearing and appeal process that comply with the Due Process requirements of the Fourteenth Amendment to the U.S. Constitution;

1       E.      A preliminary injunction requiring that Defendants establish a process by which

2   Plaintiffs may challenge their placement on the CRD;

3       F.      Compensatory damages resulting from Defendants permanent revocation of

4   Plaintiff's SIDA Badges and the placement of the Plaintiffs on the CRD;

5       G.      An order granting reasonable attorneys' fees and costs, and

6       H.      Such other and further relief as may be just and proper

7

8   Dated  November  30, 2023

                                Respectfully Submitted,

9

                            By   /s/ Samuel Seham

10                               Samuel A. Seham, Esq. (NY BAR NO. 5768080)

11

12                               Lee Seham, Esq. (NY BAR NO. 2194306)
                                 John K. Buche, Esq. (CA BAR NO. 239477)
                                 Byron Ma, Esq. (CA BAR NO. 299706)
13

14                               *Attorneys for the Plaintiffs Walter Spurlock and*
                                 *Andre Guibert*

15

16

17

18

19

20

21

22

23

24