EXHIBIT E



San Francisco International Airport

December 15, 2022

Jeff Heard
Airline Representative
AMFA Local 32
1403 W. 10th Place, Suite B-116
Tempe, Arizona 82581

***TRANSMITTED VIA EMAIL AND U.S. MAIL***
alaskaheard@outlook.com

Subject: Response to Letter Regarding SIDA Badge Revocation and CRD Placement

Dear Mr. Heard:

I write in response to the Aircraft Mechanics Fraternal Association's (AMFA) letter to the Commissioners of the San Francisco International Airport (SFO or Airport) regarding the badge revocation of two Alaska employees Andre Guibert (Guibert) and Walter Spurlock (Spurlock) in 2021. We appreciate AMFA's concerns and take them very seriously. Because the Airport's highest priority is safety and security, we stand by our decisions as explained below.

The Airport largely agrees with AMFA's background facts regarding Guibert and Spurlock's actions on September 9, 2021, at SFO, which led to the issuance of a citation for violation of the Airport Rules and Regulations (Airport Rules) and revocation of their badges. When a biometric scanner denied Spurlock entry to the Security Identification Display Area (SIDA), which is restricted, Spurlock passed his badge to Guibert to reset the scanner. Even though the scanner reset the second time, these actions constitute a violation of Airport Rule 7.7(A), which states "[n]o person or entity may tamper or interfere with, compromise, modify, or attempt to circumvent any security system, measure, or procedure implemented under the Airport's [Airport Security Program] and TSA Regulations under 49 C.F.R. § 1500 *et. seq.*" AMFA does not dispute that Guibert and Spurlock's actions tampered with a secured access point, but disagrees with the penalty the Airport imposed to permanently revoke their badges as a result.

**Background on Security Violations**

The Airport strictly enforces security violations to address repeated violations over the years, which created an unacceptable level of on-going security threats. In September 2019, the Airport activated an anti-pass back security feature on its turnstiles to notify the Security Operations Center (SOC) if a badge holder used their badge in an unauthorized manner to escort or allow unauthorized individuals access to restricted areas in violation of the Airport's Rules. Soon thereafter, the Airport identified individuals who were engaging in this exact behavior, reaching through turnstiles and/or passing their badges through turnstiles to others to present to card readers on the secured side when they could not receive access on the public side reader in an attempt to try to "reset" the system and allow themselves to bypass this security feature. Despite the Airport's repeated warnings that this conduct was unacceptable and posed a critical security threat, the frequency of these incidents continued to increase.

**AIRPORT COMMISSION** CITY AND COUNTY OF SAN FRANCISCO

| LONDON N. BREED | ELEANOR JOHNS | MALCOLM YEUNG | EVERETT A. HEWLETT, JR. | JANE NATOLI | JOSE F. ALMANZA | IVAR C. SATERO |
| *MAYOR* | *PRESIDENT* | *VICE PRESIDENT* | | | | *AIRPORT DIRECTOR* |

Post Office Box 8097   San Francisco, California 94128   Tel 650.821.5000   Fax 650.821.5005   www.flysfo.com

In response, in December 2020, the Airport issued a notice to Airport employers that due to the increase in violations, employers must brief their badged employees on the policy not to compromise, tamper, or modify direct access point systems. The Airport included in this notice the potential penalty of non-compliance could result in badge revocation. In addition, SOC staff verbally briefed all new applicants as well as those seeking badge renewal. The Airport also placed signage at each of the turnstile locations advising those who had issues using the turnstiles to call the SOC.

Nevertheless, the violations continued. The Airport increased its communications to Airport employers and to individual badge holders. In April 2021, the Airport issued another written communication, which also advised that "[b]adge revocations become part of the Transportation Security Administration records and may affect a violator's ability to pass a federal security screening in the future." Despite the extensive outreach, the behavior continued. The Airport then imposed a zero-tolerance policy for these violations, and began to immediately and permanently revoke the badges of individuals who violated this rule. After several revocations, the violations decreased dramatically. The Airport's policy has not changed. Thus, when Guibert and Spurlock engaged in the exact behavior that the Airport had repeatedly communicated could and had resulted in badge revocations, Airport staff immediately issued a citation and revoked their badges. Given these circumstances, the Airport stands by its decision.

## Due Process Concerns

AMFA next contends that the Airport did not provide an adequate appeal process for its decision to revoke Guibert and Spurlock's badges, but this too is incorrect. The Airport followed its rules to impose a penalty and conduct an appeal. First, under Rule 7.1(D), the Airport has discretion to immediately revoke access privileges to any person "who violates this Rule 7, compromises Airport security, or creates or engages or participates in any unsafe, unsecure, or hazardous condition or activity at the Airport…on a temporary or permanent basis." Assuming that AMFA's background facts are accurate, Guibert and Spurlock violated Rule 7.1(D).

Second, the Airport followed its appeal process. Under Rule 14.5(C), "[t]he Chief Operating Officer shall be the hearing officer for any appeal involving…permanent revocation of an Airport ID badge." The hearing officer may, but is not required to, request additional information from the appellant. The hearing also may, but is not required to, hold a hearing on the appeal. (Rule 14.5(C). Here, the Chief Operating Officer reviewed the facts, which again are not in dispute, and determined that based on the Airport's policy, the permanent revocation should stand. The Airport disagrees with AMFA's claim that the Airport did not provide sufficient due process, especially where, as here, there was no liberty interest implicated. *See Magassa v. Mayorkas*, 52 F.4th 1156 (2022).

## TSA Central Revocation Database

In addition, AMFA claims that the Airport improperly placed Guibert and Spurlock's badge revocations in the TSA's Central Revocation Database (CRD) without proper notice. The Airport provided notice to all badge holders, as required, that possible badge revocations would result in a

*Jeff Heard, AMFA Local 32*
*SIDA Badge Revocation and CRD Placement*
*Page 3*

listing on the CRD. Guibert and Spurlock also went through the Airport's appeal process prior to the Airport listing their names in the CRD; TSA does not require more. After notice and appeal, the Airport followed TSA's rules on inputting their names in the CRD based on the security violation that occurred. Our understanding is that a listing on the CRD expires after five years. Being listed in the CRD also does not mean that an individual is barred from employment. Airports are not precluded from hiring individuals on the CRD and are free to inquire about the circumstances leading to the revocation. SFO remains open to engaging in inquiries from other airports where Guibert and Spurlock may pursue badging. In addition, employment is available at airlines or at other locations that do not require an airport badge.

The Airport takes very seriously the consequences of the penalties it imposes. Given the circumstances and context regarding Guibert and Spurlock's violations, which as reflected by AMFA's own account, is the exact behavior that the Airport communicated posed an unacceptable security threat, the Airport stands by its decision to revoke their badges. In addition, the Airport followed all necessary procedures in its appeal process, along with TSA's requirements regarding the CRD. We understand that this decision has serious ramifications, but based on the circumstances, the safety and security of the Airport is paramount.

Respectfully,

Jeff Littlefield
Chief Operating Officer

cc:     Mayor London N. Breed, City of San Francisco
        Ben Minicucci
        Constance Von Muehlen
        Jenny Wetzel
        Max Tidwell
        Don Wright
        Scott Harman
        Sonia Alvarado
        Jarod Mills
        Earl Clark
        Bret Oestreich
        Scott King
        Rui Leonardo
        Lucas Middlebrook
        Nicholas Granath
        Marquis Bosuego
        Walter Spurlock
        Andre Guilbert