# EXHIBIT D



**AIRCRAFT MECHANICS FRATERNAL ASSOCIATION**
AMFA Local 32 ● 1403 W. 10th Pl., Suite B-116 ● Tempe, Arizona 85281-5257
PHONE (480) 420-6919 ● FAX (480) 323-2235 ● WEBSITE: www.amfa32.com

VIA ELECTRONIC AND                                                C/O     carolyn.jayin@flysfo.com
FIRST CLASS MAIL

Airport Commission
San Francisco International Airport
PO Box 8097
San Francisco, CA 94128-8097

Matter:     **Andre Guibert and Walter Spurlock SIDA Badge Revocation and CRD Placement**

Dear Commissioners:

I write on behalf of Local 32 of the Aircraft Mechanics Fraternal Association (AMFA).  AMFA is the exclusive collective bargaining representative for the Aviation Maintenance Technicians (AMTs) at Alaska Airlines, Inc. (Alaska).  Local 32 represents Alaska AMTs based out of San Francisco International Airport (SFO).  Two of those AMTs, Andre Guibert and Walter Spurlock, now stand to lose their careers, livelihood, and ability to provide for their families because of the actions of the Airport Commission's agents.  We ask that you intervene to prevent such irreparable injury and that Guibert and Spurlock receive the full benefit of their statutory and constitutional rights.

Background Facts

On the morning of September 9, 2021, Mr. Guibert and Mr. Spurlock both reported to their work area security checkpoint.  To access a secured area at SFO, AMTs must swipe their Security Identification Display Area (SIDA) badge at a reader, use a biometric scanner (fingerprint), and proceed through a turnstile.  After Mr. Guibert's successful entry, Mr. Spurlock attempted to access the same security point.

Mr. Spurlock had a successful badge read and biometric scan.  He attempted to use the turnstile, but the turnstile ceased to function halfway through its rotation.  Mr. Spurlock was forced to back out of the turnstile and returned to the non-SIDA side of the checkpoint.  Because the security system erroneously registered Mr. Spurlock's entrance, the badge reader would no longer initiate a read.

Mr. Spurlock then passed his SIDA badge, from the non-SIDA side, to Mr. Guibert, on the SIDA side, and Mr. Guibert placed Mr. Spurlock's badge on the reader, to reset the badge reader.  Nobody entered the access point turnstile, from either side, during the process of resetting the reader.  The badge was immediately returned to Mr. Spurlock, and he initiated a successful badge read and biometric scan.  Mr. Spurlock then proceeded through the turnstile without issue.  There was nothing egregious or nefarious about this.  It was simply two aircraft technicians attempting to report to work.

The SFO badging authority issued a citation to Mr. Guibert and Mr. Spurlock.  It later permanently revoked their SFO SIDA badges.  The SFO badging authority also placed Mr. Spurlock and Mr. Guibert into the TSA Centralized Revocation Database (CRD).  Mr. Spurlock and Mr. Guibert were not informed

of their placement on the CRD and were not provided an opportunity to challenge placement into the CRD.

Before permanent SFO badge revocation and entry into the CRD, Mr. Spurlock and Mr. Guibert were entitled to an appeal before a hearing officer.  The AMTs never received video footage taken from the access point.  They were not allowed to testify at the hearing or present documentary evidence.  There was no live hearing.  In a one-page decision, the hearing officer summarily concluded that Mr. Spurlock and Mr. Guibert "facilitated circumvention of a secured access point" in violation of SFO's Rules and Regulations 7.7(A).  The hearing officer confirmed the permanent revocation of Mr. Spurlock and Mr. Guibert's SFO SIDA badges.

Revocation of SIDA badge privileges for commercial aircraft technicians and entry into the CRD is not just punishment, it is career ending.  It destroys their ability to earn a living and provide for their families.  Mr. Guibert and Mr. Spurlock cannot work at SFO without SIDA badges.  They have been able to hold temporary positions in the last few months, but now those positions are ending.  They have been refused SIDA badges and permanent positions at other airports because of their entry on the CRD.

Losing a long-term career as a commercial aircraft mechanic and being forced out of one's profession for the above stated infraction is unjust.  Both Mr. Guibert and Mr. Spurlock are longtime members of the community.  Both have families and children.  Alaska would continue to employ Mr. Guibert and Mr. Spurlock if they could obtain the necessary SIDA badges.

As explained below, AMFA also believes that Mr. Guibert's and Mr. Spurlock's statutory and constitutional rights have been violated throughout this process.

CRD Federal Statutory Rights

The statutory authority and regulatory guidance for the CRD require that airports establish a procedure for challenging CRD placement.  In the FAA Reauthorization Act of 2018, Congress established the CRD and required that a procedure be developed that would allow an individual whose name was mistakenly entered into the database to correct the record and expunge his or her name from the database.  Public Law 115-254—Oct. 5, 2018, 131 Stat. 3186, 3574.  In a regulatory guidance statement on the CRD, the DHS unequivocally stated: "Airport and aircraft operators will be required to notify individuals of their placement in the centralized database along with the reason for the revocation, and must establish administrative processes that permit the individual an opportunity to correct their record or seek expungement."  Dep't of Homeland Sec., Airport Access for Aviation Workers, Apr. 27, 2020.

SFO has failed to provide Mr. Guibert and Mr. Spurlock an opportunity to challenge their placement on the CRD.  In violation of DHS requirements, these professional aircraft technicians were never told that they had been placed on the CRD.  They only discovered that fact months later, when they were denied permanent positions at other airports.  SFO has also failed to provide any procedure to correct CRD placement or seek expungement.  That failure is all the more troubling because expungement would be proper here based on the absence of malintent and the otherwise sterling records of both Mr. Guibert and Mr. Spurlock.

Procedural Due Process Rights

The Due Process Clause of the Fourteen Amendment forbids arbitrary deprivations of liberty. *Goss v. Lopez,* 419 U.S. 565 (1975).  The United States Supreme Court has recognized that the right to work for a living is the very essence of the personal liberty.  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 523, 543

(1985) ("We have frequently recognized the severity of depriving a person of the means of livelihood."); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564 (1972); *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 185 (1951) ("To be deprived not only of present . . . employment but of future opportunity for it certainly is no small injury.").

Determination of whether administrative procedures are constitutionally sufficient requires analysis of the governmental and private interests that are affected.  *Mathews v. Eldridge,* 424 U.S. 319, 334-335 (1976).  However, the Supreme Court has set out the following minimum due process requirements that must be observed before a person is deprived of a liberty interest: (1) written notice of the claimed violation; (2) disclosure of the evidence against the alleged violator to enable him to prepare a defense; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral, impartial and detached decision maker; and (6) a written statement by the factfinders as to the evidence relied on and the reasons for the decision. *Morrissey v. Brewer*, 408 U.S. 471 (1972).

Mr. Guibert and Mr. Spurlock have been denied more than half of the recognized procedural due process requirements.  They did not receive video footage taken from the security access point.  The video would have shown that Mr. Guibert and Mr. Spurlock acted honestly in response to an unexpected technical failure, without conspiring.

Mr. Guibert and Mr. Spurlock did not receive a true hearing and were not provided an opportunity to testify or present documentary evidence.  That evidence would have established that they were authorized to enter through the security access point.  Mr. Guibert and Mr. Spurlock were not given an opportunity to cross examine any representative of the SFO badging authority.

The decision rendered by the hearing officer does not explain the hearing officer's findings or the reason for the permanent revocation.  Neither Mr. Guibert, Mr. Spurlock, nor any other individual gained unauthorized entrance into a secured area.  The security measures in place were not functioning, and both gentlemen tried to comply with the spirit of the security measures, rather than circumvent those measures.  SFO Rule and Regulation 14 provides for a warning or temporary suspension of SIDA badge privileges after a first security violation.  The hearing officer imposed full revocation without any justification, effectively stripping away the careers and livelihood of Mr. Guibert and Mr. Spurlock without even basic notions of due process required under applicable law and the United States and California Constitutions.

Conclusion

It is within the Commissioners' power to prevent injustice and save the careers of Mr. Guibert and Mr. Spurlock.  The Commission must act to uphold the laws of this country and this state.  We greatly appreciate your attention to this matter.


Respectfully,

Jeff Heard
Airline Representative
AMFA Local 32

*Jeff Heard, AMFA Local 32*
*SIDA Badge Revocation and CRD Placement*
*Page 3*

listing on the CRD. Guibert and Spurlock also went through the Airport's appeal process prior to the Airport listing their names in the CRD; TSA does not require more. After notice and appeal, the Airport followed TSA's rules on inputting their names in the CRD based on the security violation that occurred. Our understanding is that a listing on the CRD expires after five years. Being listed in the CRD also does not mean that an individual is barred from employment. Airports are not precluded from hiring individuals on the CRD and are free to inquire about the circumstances leading to the revocation. SFO remains open to engaging in inquiries from other airports where Guibert and Spurlock may pursue badging. In addition, employment is available at airlines or at other locations that do not require an airport badge.

The Airport takes very seriously the consequences of the penalties it imposes. Given the circumstances and context regarding Guibert and Spurlock's violations, which as reflected by AMFA's own account, is the exact behavior that the Airport communicated posed an unacceptable security threat, the Airport stands by its decision to revoke their badges. In addition, the Airport followed all necessary procedures in its appeal process, along with TSA's requirements regarding the CRD. We understand that this decision has serious ramifications, but based on the circumstances, the safety and security of the Airport is paramount.

Respectfully,

Jeff Littlefield
Chief Operating Officer

cc: Mayor London N. Breed, City of San Francisco
Ben Minicucci
Constance Von Muehlen
Jenny Wetzel
Max Tidwell
Don Wright
Scott Harman
Sonia Alvarado
Jarod Mills
Earl Clark
Bret Oestreich
Scott King
Rui Leonardo
Lucas Middlebrook
Nicholas Granath
Marquis Bosuego
Walter Spurlock
Andre Guilbert

Cc.
London N. Breed
Ben Minicucci
Constance Von Muehlen
Jenny Wetzel
Max Tidwell
Don Wright
Scott Harman
Sonia Alvarado
Jarod Mills
Earl Clark
Bret Oestreich
Scott King
Rui Leonardo
Lucas Middlebrook
Nicholas Granath
Marquis Bosuego
Walter Spurlock
Andre Guilbert

**SAFETY IN THE AIR BEGINS WITH QUALITY MAINTENANCE ON THE GROUND**