JOHN K. BUCHE (CA BAR NO. 239477)
BYRON MA (CA BAR NO. 299706)
**BUCHE & ASSOCIATES, PC**
875 Prospect Street Suite 305
La Jolla, CA 92037
Telephone: (713) 589-2214
Fax: (858) 459-9120
Email: jbuche@buchelaw.com
        bma@buchelaw.com

SAMUEL A. SEHAM (NY BAR NO. 5768080) (*pro hac vice*)
LEE SEHAM (NY BAR NO. 2194306) (*pro hac vice*)
**SEHAM, SEHAM, MELTZ & PETERSEN LLP**
199 Main Street, 7th Floor
White Plains, NY 10601
Telephone: (914) 997-1346
Fax: (914) 997-7125
Email: samuel.seham@gmail.com
        ssmpls@aol.com

*Attorneys for the Plaintiffs Walter Spurlock and Andre Guibert*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### (SAN FRANCISCO DIVISION)

| | |
|---|---|
| WALTER SPURLOCK and ANDRE GUIBERT,<br><br>          *Plaintiffs*,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, AIRPORT COMMISSION OF THE CITY AND COUNTY OF SAN FRANCISCO, KEABOKA MOLWANE in his individual capacity and official capacity as Aviation Security and Regulatory Compliance Officer at the San Francisco International Airport, and JEFF LITTLEFIELD in his individual capacity and official capacity as Chief Operating Officer at San Francisco International Airport,<br><br>          *Defendants*. | Case No. 3:23-cv-4429<br>*Jury Trial Demanded*<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date:  May 23, 2024<br>Time:               2:00 p.m.<br>Before:            Hon. Araceli Martínez-Olguín<br>Place:             450 Golden Gate Avenue<br>                      Courtroom 10<br>                      San Francisco, CA 94102<br><br>Action Filed:   August 28, 2023 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 3

   I.   Federal Law and Regulations Governing Airport Security Programs and SIDA Badges 3

   II.  SFO Security Requirements, Rules, and Regulations ...................................... 5

   III.  The Airport Revoked Plaintiffs' SIDA Badges for Alleged Security Violations and Placed Plaintiffs on the CRD ....................................................................... 6

ARGUMENT ................................................................................................................. 8

   I.   Plaintiffs Have a Property Interest in Their SIDA Badges and a Liberty Interest in Their Omission from the CRD ....................................................................... 8

      A.   Regulations, Internal Rules, and Past Practice Constrain Defendants' Ability to Revoke SIDA Badges and Create a Property Right in Plaintiffs' Favor ........................... 8

      B.   CRD Placement Violated Plaintiffs' Liberty Interests in Their Reputations ........... 10

      C.   Defendants' Cited Cases Involve Absolute Decisionmaker Discretion and Do Not Address the Implications of TSA-NA-21-01A. ................................................ 12

   II.  Plaintiffs' SIDA Badges Revocations Were Punitive Deprivations of Property and Violated Eighth Amendment Protections Against Execessive Punishment .................. 15

   III.  Plaintiffs' Allegations Regarding Defendants' Violations of a Federal Regulation Properly Assert an Implied, Private Right Of Action .................................... 17

   IV.  Molwane and Littlefield Are Not Entled To Qualfieid Immunity from Plaintiffs' Individual Capacity Claims ......................................................................... 18

   VI.  Plaintiffs' Official Capacity Claims Against Littlefield and Molwane Are Not Redundant and the Airport Commision Should Not Be Dismissed............................ 18

CONCLUSION .............................................................................................................. 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Adams v. Laird*
    420 F.2d 230 (1969)...................................................................................... 13

4

*Alexander v. Sandoval*
    532 U.S. 275, 284 (2001).............................................................................. 17

5

*Austin v. United States*
    509 U.S. 602 (1993)...................................................................................... 15

6

*B.O.L.T. v. City of Rancho Cordova*, No. 2:14-CV-01588-GEB-DAD, 2014 U.S. Dist. LEXIS
    170233 (E.D. Cal. Dec. 5, 2014)................................................................... 20

7

*Bd. of Regents v. Roth*
    408 U.S. 564 (1972)........................................................................................ 8

8

*Cleveland Bd. of Educ. v. Loudermill*
    470 U.S. 532 (1985)................................................................................. 8, 14

9

*Cort v. Ash*
    422 U.S. 66 (1975)........................................................................................ 17

10

*Dep't of the Navy v. Egan*
    484 U.S. 518 S. Ct. 818 (1988)................................................................ 12, 13

11

*DePaul Indus. v. City of Eugene*, No. 6:18-cv-0320-MC, 2018 U.S. Dist. LEXIS 144340 (D. Or.
    Aug. 23, 2018) ............................................................................................... 8

12

*District of Columbia v. Wesby*
    583 U.S. 48 (2018)....................................................................................... 18

13

*Dorfmont v. Brown*
    913 F.2d 1399 (9th Cir. 1990) ................................................................ 12, 13

14

*Groten v. California*
    251 F.3d 844 (9th Cir. 2001) ......................................................................... 8

15

*Harman v. City & Cnty. of San Francisco*
    136 Cal. App. 4th 1279 (2006). ................................................................... 19

16

*Hart v. Parks*
    450 F.3d 1059 (9th Cir. 2006) ..................................................................... 10

17

*Hickey v. Reeder*
    12 F.3d 754 (8th Cir. 1993) ......................................................................... 16

18

19

20

21

22

23

24

*Humphries v. Cty. of L.A.*
    554 F.3d 1170 (9th Cir. 2009) *rev'd in part on other grounds*, 562 U.S. 29 (2010).......... 10, 11

*Magassa v. Mayorkas*
    52 F.4th 1156 (9th Cir. 2022) ........................................................................ 12

*Magassa v. Wolf*
    487 F. Supp. 3d 994 (W.D. Wash. 2020)........................................................ 14

*Magassa v. Wolf*
    545 F. Supp. 3d 898 (W.D. Wash. 2021)........................................................ 14

*Mark H. v. Lemahieu*
    513 F.3d 922 (9th Cir. 2008) ....................................................................... 17

*Paul v. Davis*
    424 U.S. 693 (1976)..................................................................................... 10

*Pembaur v. City of Cincinnati*
    475 U.S. 469 (1986)..................................................................................... 19

*Perry v. Sindermann*
    408 U.S. 593 (1972)....................................................................................... 8

*Town of Castle Rock*
    545 U.S 748. ............................................................................................ 8, 10

*Parks v. Watson*
    716 F.2d 646 (9th Cir. 1983) ......................................................................... 8

*United States* v. *Halper*
    490 U.S. 435  (1989)..................................................................................... 15

**Statutes**
5 U.S.C. § 553............................................................................................. 4, 12

**Regulations**
49 C.F.R. § 1542.101 ......................................................................................... 4
49 C.F.R. § 1503.101 ......................................................................................... 4
49 C.F.R. §1540.301 ........................................................................................... 4
49 C.F.R. § 1542.211 ......................................................................................... 5
49 C.F. R. § 1540.5 ............................................................................................ 4
49 C.F. R. § 1542.103 ........................................................................................ 4
49 C.F.R. § 1542.105 ...................................................................................... 4, 9
49 C.F.R § 1542.211 ......................................................................................... 4
40 C.F.R. § 1500, *et seq.* ................................................................................... 5
TSA-NA-21-01A ....................................................................... 1,2, 4, 12, 18

**Other Authorities**

TSA Modernization Act of 2018, Public Law 115-254—Oct. 5, 2018, 131 Stat. 3186....... 2, 5, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Every day, approximately 1.4 million Americans scan their Security Identification Display Area ("SIDA") badges and report to work at the Nation's airports.[1]  As the name suggests, SIDA badges are airport-issued identification badges required for people who work beyond airport security checkpoints.  The consequences of SIDA badge revocation are severe.  When an airport operator revokes a SIDA badge, the badge holder is placed on the Transport Security Administration ("TSA") Centralized Revocation Database ("CRD").  The CRD is the equivalent of a sex offender list for the airline industry.  CRD placement effectively prevents employment at any of the Nation's airports.  And the consequences for Plaintiffs Andre Guibert and Walter Spurlock were more severe still.

As aviation maintenance technicians ("AMTs") at Alaska Airlines, both men had completed years of technical education and training.  They hold federal Airframe and Powerplant licenses that allow them to release repaired aircraft into the Nation's airspace.  Both had worked as AMTs at the San Francisco International Airport ("SFO" or the "Airport") for over twenty years and had maintained SFO SIDA badges since the Airport adopted the badging system in 2002.  On October 23, 2021, as a direct result of Defendants' policies, acts, and omissions, Plaintiffs' SIDA badges were revoked and their names placed on the CRD.  Absent from the revocation proceedings was any semblance of the due process protections required by the Fourteenth Amendment ██ ████████████████████████████████████ Because the vast majority of AMT jobs require a SIDA badge, not only did Plaintiffs lose their jobs, they lost their ability to practice their chosen professions.  That severe punishment also violated Eighth Amendment protections.

---

[1] *See* Transportation Security Administration, *SIDA Airport Security Fiscal Year 2017 Report to Congress*, Feb. 6, 2018 [https://www.dhs.gov/sites/default/files/publications/TSA%20-%20SIDA%20Airport%20Security.pdf].

1    The protections of the Fourteenth Amendment Due Process Clause do not depend on

2    sweeping maxims, but on examination of the facts.  As acknowledged in the SFO Rules and

3    Regulations, and confirmed by Plaintiffs' decades of experiences, SFO must find that a SIDA

4    badge holder has violated an airport security requirement before it can revoke that person's badge.

5    ████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████

7    The "security violation" requirement limits the Airport's discretion over SIDA badge revocations.

8    It reflects that the SIDA badge is essential to the livelihood of millions of people and may not be

9    revoked absent good cause and due process.

10   ████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████

14   ███████████████████████████████████████████████

15   Plaintiffs here seek the full range of declaratory, injunctive, and compensatory relief as

16   remedy for Defendants' constitutional, statutory, and regulatory violations.  All named Defendants

17   must remain parties to action as there is no guarantee that any individual Defendant can provide

18   the full scope of relief.  Officers named in their individual capacities were responsible for knowing

19   and enforcing the rules and regulations that governed SIDA badge revocation and CRD placement.

20   Their willful violations of those requirements preclude qualified immunity protections.

21   Because Plaintiffs state viable claims, and because there are any number of unresolved

22   issues of fact, the Court should deny Defendants' Motion to Dismiss.

23   //

24   //

## BACKGROUND

### I.   Federal Law and Regulations Governing Airport Security Programs and SIDA Badges

All commercial airports are required to develop an Airport Security Program ("ASP") and submit the program plan to the TSA for approval.  49 C.F.R. § 1542.101.  The ASP must include, among other things, a description of the airport's SIDAs and procedures to prevent unauthorized presence and movement in the SIDA.  *Id.* at § 1542.103.  SIDAs cover all "Secured Areas" of an airport, including where aircraft operators enplane and deplane passengers, sort and load baggage, and any adjacent areas that are not separated by adequate security measures.  *Id.* at § 1540.5.  Personnel entering an airport SIDA must continuously display an identification medium (*i.e.*, a SIDA badge) or be under escort.  *Id.* at § 1542.211(a)(2).

The TSA may amend an airport's ASP if safety and the public interest so require.  *Id.* at § 1542.105(c).  Affected airport operators receive a notice of the proposed amendment and have a period of no less than thirty (30) days in which to submit comments.  *Id.* at 1542.105(c)(1).  After consideration of all comments, the TSA may adopt or rescind the proposed amendment.  *Id.* at 1542.105(c)(1).  An amendment is presumptively incorporated into the airport's ASP thirty (30) days after its adoption.  *Id.*  The procedures governing TSA amendment of an airport's ASP comply with Administrative Procedure Act requirements for informal agency rulemaking.  *See* 5 U.S.C. § 553.  An airport's failure to comply with an ASP amendment may result in civil penalties and the withdrawal of TSA approval of the airport's ASP.  *See* 49 C.F.R. §§ 1503.101, 1540.301.

As part of the TSA Modernization Act of 2018, Congress directed the TSA Administrator to develop a centralized database containing the names of individuals who have had airport-issued SIDA badges revoked for failure to comply with aviation security requirements.  Public Law 115-254—Oct. 5, 2018, 131 Stat. 3186, 3574.  Recognizing that placement on the centralized database

1  constituted a serious penalty, Congress required that SIDA badge holders be afforded the right to

2  challenge their inclusion on that database.  *Id.*



23  //

24  //

**II.        SFO Security Requirements, Rules, and Regulations**

SFO maintains a set of Rules and Regulations, in part to comply with federal law, that pertain to airport security and security badges.  Dkt. No. 43-1.  Rule 7 describes the Airport's various security requirements.  *Id.* at 62.[2]  The Rule requires SIDA badge holders to maintain a secure airport and provides that no person may "[t]amper or interfere with, compromise, modify, or attempt to circumvent any security system, measure, or procedure implemented under the Airport's ASP and TSA Regulations under 40 C.F.R. § 1500, *et seq*."  *Id.* at 64, 73 (Rule 7.3, 7.7).

Rule 14 provides for the enforcement of the SFO Rules and Regulations.  *Id.* at 100.  In the event of a Rule 7 security requirement violation, a badge holder is subject to an escalating fine schedule for each violation.  *Id.* at 102, 103 (Rule 14.2, 14.3).  Additional, escalating punishments range from a "[w]arning" for a First Offense to "[s]ecurity access permanently terminated" for a Fourth Offense.  *Id.* at 104.  The Rule also sets forth an administrative review and appeal procedure for those seeking to challenge an Airport citation.  *Id.* at p. 105, 106 (Rule 14.5.)  The procedures provide for an initial hearing where the hearing officer, at his or her discretion, may request submissions from the applicant.  *Id.* at 105.  An appeal from the initial determination may be taken, at which point a second hearing officer, again at his or her discretion, may hold a hearing so that the appellant can state his or her respective position.  *Id.* at 106.  Rule 14 does not provide for the disclosure of incriminating or exculpatory evidence, nor does it require decisionmakers to explain the basis for their decisions.

Where the Rules and Regulations refer to SIDA badge revocation, they confirm that the Airport and its representatives will revoke a badge only after finding that the badge holder has violated an SFO security requirement:

---

[2] Pin citations refer to the CM/ECF page number.

> [Rule 7.1(D)] Any person who violates this Rule 7, compromises Airport security, or creates or engages or participates in any unsafe, unsecure, or hazardous condition or activity at the airport may have access privileges immediately revoked on a temporary or permanent basis at the sole discretion of the Airport (see also Rule 7.3 and Rule 14.4).

*Id.* at 62.

> [Rule 14.4] Individual infractions on the [Airport Operations Area] and/or relating to the safety or security of the Airport may result in the immediate suspension or permanent revocation of a [SIDA] badge or driving privileges, at the sole discretion of the Airport, notwithstanding the Admonishment or Citation procedures below.

*Id.* at 103. A confirmed security violation is thus a necessary predicate for any badge revocation. The discretion of the Airport and its agents is confined to the penalty for the violation, and they must first find a violation before exercising that discretion. Indeed, since the inception of the SIDA badge program, SFO has only revoked SIDA badges where badge holders violated published security requirements or where revocation was required by federal law. Dkt. No. 43 ¶¶ 22, 64.

### III.   The Airport Revoked Plaintiffs' SIDA Badges for Alleged Security Violations and Placed Plaintiffs on the CRD

On the morning of September 9, 2021, Guibert and Spurlock both reported to an SFO external security checkpoint. Both were scheduled to work that day and were authorized to access their work area through the checkpoint. *Id.* ¶ 23. Guibert successfully scanned his SIDA badge and proceeded through the checkpoint turnstile. *Id.* ¶ 25. Spurlock also had a successful badge scan. *Id.* As he proceeded through the SFO-maintained turnstile, the mechanism jammed and he was forced to backout. *Id.* Guibert and Spurlock then successfully corrected the error in the SFO security system, and both were able to report to work. *Id.* ¶¶ 26–28. At no point did they tamper or interfere with, modify, or attempt to circumvent any aspect of the security system. Plaintiffs were authorized to enter the airport and did not jeopardize SFO security. *Id.* ¶ 46.

SFO security officers subsequently issued citations to Guibert and Spurlock and temporarily suspended their badges. *Id.* ¶ 29. Plaintiffs sought a review of the suspension pursuant to the SFO Rules and Regulation. *Id.* ¶ 30. As set forth in their Second Amended Complaint, the Plaintiffs' initial hearing and appeal suffered from due process infirmities. Guibert and Spurlock were not provided with the evidence that formed the basis for their badge suspensions. *Id.* ¶ 31. They did not receive exculpatory evidence from SFO including evidence confirming that the Airport was aware of the malfunctioning checkpoint, but took no corrective action. *Id.* at ¶¶ 32, 38. They were not allowed to submit evidence in their defense. *Id.* ¶¶ 33, 39.

On September 14, 2021, Defendant Molwane permanently revoked Plaintiffs' SIDA badges on the grounds that Plaintiffs had violated SFO aviation security requirements. *Id.* ¶ 35. The revocation was upheld in an appeal before Defendant Littlefield. *Id.* ¶ 41. Upon the permanent revocation of Plaintiffs' SIDA badges, and because of the determination that Plaintiffs had violated published SFO aviation security requirements, Defendant Littlefield authorized the submission of Plaintiffs' names to the CRD. *Id.* ¶ 42. At no point did Defendants inform Plaintiffs that revocation of their SIDA badges would result in CRD placement. *Id.* ¶ 43.

The revocation of Plaintiffs' SIDA badges resulted not only in the loss of their positions at Alaska Airlines, it resulted in the loss of their careers as AMTs. Plaintiffs have been denied SIDA badges and employment at other airports in the San Francisco area because their names appear on the CRD. *Id.* ¶¶ 45, 74. They have suffered extensive economic and emotional injury.

Defendants do not challenge the sufficiency of Plaintiffs' factual pleadings, and the propriety of Plaintiffs' attempts to correct malfunctions of the SFO security system are not at issue here. Instead, Defendants argue that Plaintiffs have failed to assert legally cognizable claims. As set forth below, Plaintiffs' Fourteenth Amendment Due Process, Eighth Amendment, and regulatory claims are recognized under the applicable caselaw and pleading standards.

1

**ARGUMENT**

2

**I.      Plaintiffs Have a Property Interest in Their SIDA Badges and a Liberty Interest in Their Omission from the CRD**

3

4          The property and liberty rights protected by Fourteenth Amendment due process are not

5    stagnant ideals but instead "gather meaning from experience" and "relate to the whole domain of

6    social and economic fact . . . ." *Bd. of Regents v. Roth*, 408 U.S. 564, 571 (1972).  Property interests

7    protect those claims upon which people rely in their daily lives and are defined by existing rules

8    or understandings independent from the Constitution.  *Id.* at 577.  Liberty interests are "broad

9    indeed" and preclude the government's impugning of a person's good name and reputation.  *Id.*

10   Plaintiffs here possessed a property interest in their SIDA badges and a liberty interest in their

     omission from the CRD.  Those interests must be safeguarded by constitutional due process.

11

12          A.      Regulations, Internal Rules, and Past Practice Constrain Defendants' Ability to
                    Revoke SIDA Badges and Create a Property Right in Plaintiffs' Favor

13          Recognized limits on the discretion of a party conferring a benefit create a property right

14   in favor of the recipient.  *Perry v. Sindermann*, 408 U.S. 593, 601 (1972); *Groten v. California*,

15   251 F.3d 844, 850 (9th Cir. 2001).  Such limits may take the form of written rules.  *See Cleveland*

16   *Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985) (confirming that an Ohio civil service

17   statute restricting the grounds for termination created a property interest).  Alternatively, a

18   legitimate claim of entitlement may derive from "de facto" conditions, implied agreements, or

19   courses of conduct. *See Perry*, 408 U.S. at 602 (concluding that an employee who had held a

20   position over an extended period may claim a property interest in the position); *DePaul Indus. V.*

21   *City of Eugene*, No. 6:18-cv-0320-MC, 2018 U.S. Dist. LEXIS 144340, at *15 (D. Or. Aug. 23,

22   2018) (finding repeated renewals of contract created a de facto property interest).  Extensive

23   procedural rights also confirm the presence of an underlying property right.  *Town of Castle Rock*

24   *v. Gonzales*, 545 U.S. 748, 771-72 (2005); *Parks v. Watson*, 716 F.2d 646, 656 (9th Cir. 1983).

1    Several forms of written rules constrained Defendants' ability to revoke Plaintiffs' SIDA

2    badges, the most inescapable of which are the federal regulations that expressly limit the grounds

3    for revocation. ████████████████████████████████████████████

4    ████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████

15   Reflecting another portion of Defendants' internal written policies, SFO Rules and

16   Regulations similarly limit discretion over SIDA badge revocations.  Rule 7.1(D) and Rule 14.4

17   explicitly describe the scenarios under which a badge may be revoked.  Dkt. No. at 43-1 at 62,

18   103.  It may be revoked only on a finding that the badge holder has violated an Airport security

19   requirement.  The provisions' reference to discretion apply to the degree of penalty that the Airport

20   may impose after finding a violation.  That penalty can only follow a confirmed violation.

21   It is also a commonsense observation that SFO relies on its tenants, including vendors,

22   carriers, and the TSA, for its continued viability as a transit center.  Unfettered discretion over

23   SIDA badges would jeopardize tenants' ability to hire and retain employees.  The SFO Rules and

24   Regulations therefore set expectations and provide clear limits on when the airport will revoke a

badge.  The procedures identified in Rule 14 for the challenge and appeal of rule citations, although insufficient, also confirm Plaintiffs' ultimate property rights.  *See Town of Castle Rock*, 545 U.S. at 771-72.  Such procedures reflect the Airport's acknowledgement that penalties will only be imposed for good cause, where established facts support an alleged violation of Airport rules.  The procedures would be rendered meaningless if SFO could impose penalties at will.

Plaintiffs' respective two decades of combined experience as SFO SIDA badge holders confirm that the Airport does not have complete discretion over SIDA badge revocations.  They allege, unequivocally, that SFO has only revoked SIDA badges after finding a security violation or to otherwise comply with federal law.  Dkt. No. 43 ¶¶ 22, 64.  The continued renewal of Plaintiffs' badges over that period also created legitimate expectations that Plaintiffs would continue to hold their badges absent good cause for revocation.  *Id.* ¶ 19.  While as a last resort, Defendants rely on the SFO Director's ability to resolve ambiguities in the SFO Rules and Regulations, the Airport's past practice confirms that there is no ambiguity to resolve.  The Defendants simply do not have unfettered discretion to revoke SIDA badges.  To the extent that the parties dispute the Defendants' ultimate discretion, that dispute cannot be resolved at the motion to dismiss stage and in the absence of any form of discovery.  Plaintiffs are entitled to all evidence confirming how Defendants have applied SFO Rules and Regulations regarding SIDA badge revocations.

B.   <u>CRD Placement Violated Plaintiffs' Liberty Interests in Their Reputations</u>

Procedural due process protections apply to reputational harm when a plaintiff suffers stigma from governmental action plus alteration of a previously recognized right or status (*i.e.*, the "stigma-plus test").  *Paul v. Davis*, 424 U.S. 693, 711 (1976); *Hart v. Parks*, 450 F.3d 1059, 1070 (9th Cir. 2006).  Such an "alteration" may take the form of a tangible burden or impediment placed on an recognize status.  *Humphries v. Cty. of L.A.*, 554 F.3d 1170, 1188 (9th Cir. 2009) *rev'd in*

1    *part on other grounds*, 562 U.S. 29 (2010).  "A tangible burden exists . . . where a law effectively

2    requires agencies to check a stigmatizing list and investigate any adverse information prior to

3    conferring a legal right or benefit."  *Id.*

4    The placement of Plaintiffs on the CRD implicates a liberty interest identical to the one

5    confirmed by the Ninth Circuit in *Humphries*.  There, the court addressed plaintiffs' claims that

6    they had been placed on the California Child Abuse Central Index ("CACI") without constitutional

7    due process.  *Id.* at 1175.  The state Child Abuse and Neglect Reporting Act ("CANRA") required

8    certain agencies to consult the CACI prior to conferring a variety of "stated-issued licenses or other

9    benefits." *Id.* at 1178.  Those licenses and benefits included child care licenses, the ability to

10   volunteer in crisis nursery, and the ability to receive custody of a relative's child.  *Id.* at 1187.

11   Such licenses and benefits did not necessarily rise to the level of a right guaranteed by substantive

12   due process, that is, an independent liberty interest.  *See id.* at 1187 (discussing the absence of a

13   substantive due process right to custody of a relative's children).  The Court nevertheless found

14   that placement on the CACI infringed plaintiffs' liberty interest because CANRA directed state

15   agencies to consult the CACI and "draw[] independent conclusions regarding the quality of the

16   evidence disclosed." *Id.* at 1188.  It confirmed that placement on a stigmatizing list need not

17   extinguish a benefit in order infringe on plaintiffs' liberty interest because mandatory consultation

18   of the list constituted an "alteration" of the benefit. *Id.*

19   Placement of Plaintiffs' name on the CRD had negative consequence on their good name

20   and reputation.  By law, the list may only contain names of those persons who have had their SIDA

21   badges revoked for violations of an airport security requirement. Public Law 115-254—Oct. 5,

22   2018, 131 Stat. 3186, 3574; Dkt. No 43-7 at 4.  Inclusion on the list implies past malfeasance.

23   Plaintiffs were denied SIDA badges at other airports in the San Francisco area because of their

24   inclusion on the CRD.  Dkt. No. 43 ¶ 74.  Placement on the CRD clearly satisfies the "stigma"

1   element of the stigma-plus test. ████████████████████████████

2   ████████████████████████████████████████████████████████

3   ███████████████████████████   A SIDA badge is a benefit or status,

4   similar to those identified in *Humphries*, even if it does not rise to the level of a substantive due

5   process right.  Like a child care license, they permit the holder to engage in a set of activities and

6   occupations. ████████████████████████████████████████████

7   ██████████████████████████████████

8       Plaintiffs additionally have a liberty right in their CRD placement for the same reasons

9   they have a property interest in their SIDA badge. ████████████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ██████████████████████████████████████████

14      C.    Defendants' Cited Cases Involve Absolute Decisionmaker Discretion and Do Not
              Address the Implications of TSA-NA-21-01A.

15      Defendants rely on a trilogy of cases in support their contention that Plaintiffs had no

16  liberty or property interest in their respective SIDA badges: *Dep't of the Navy v. Egan*, 484 U.S.

17  518, 528, 108 S. Ct. 818 (1988); *Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990); *Magassa v.*

18  *Mayorkas*, 52 F.4th 1156 (9th Cir. 2022).   In each instance, the respective court determined that

19  the security clearance at issue was subject to complete discretion and therefore declined to find a

20  property or liberty right protected by due process.  The cases do not address the impact of TSA-

21  NA-21-01A, ██████████████████████████████, or the badging practices at SFO.

22      The Supreme Court in *Egan* heard claims brought by a Naval Department employee who

23  had been denied a "sensitive" designation and was thereafter terminated from a position working

24  on nuclear submarines.  *Egan*, 484 U.S. at 520.  His challenge did not rely on the Due Process

clause of either the Fifth or Fourteenth Amendment, but instead asserted a statutory right to the administrative review of the merits of his security clearance denial.  *Id.* at 525.  The Court noted that "the **general** standard is that a clearance may be granted only when 'clearly consistent with the interests of national security.'" *Id.* at 528 (emphasis added) (citing executive orders and federal regulations).  That standard, as such, was really no standard at all: "The attempt to define not only the individual's future actions, but those of outside and unknown influences renders the 'grant or denial of security clearances . . . an inexact science at best." *Id.* at 529 (quoting *Adams v. Laird*, 420 F.2d 230, 239 (1969), cert. denied, 397 U.S. 1039 (1970)).  Additionally, executive departments like the Navy retained the President's unfettered discretion as Commander in Chief to act unilaterally in the interests of national security.  *Id.* at 527.  The absence of a clear standard, and the complete discretion retained by the Executive Branch, prevented an administrative merits review of the security clearance determination.

The *Dorfmont* case implicated the same security clearance standard at issue in *Egan* or, practically speaking, the absence of a standard.  Under Department of Defense Directive 522.6 § F.3, an employee could maintain a security clearance "only . . . upon a finding that to do so is clearly consistent with the national interest. *Dorfmont*, 913 F.2d at 1403.  After the Department of Defense revoked Dorfmont's security clearance, she brought Fifth Amendment due process claims challenging the procedures used in the revocation proceedings.  *Id.* at 1402.  The Ninth Circuit found that Dorfmont had no liberty or property interest in the identified security clearance and therefore could not assert due process claims.  *Id* at 1404.  Following *Egan*, the Ninth Circuit found that the Department of Defense could exercise the President's ultimate discretion to grant or revoke security clearances.  *Id.* at 1401.  The Court also held that the applicable security clearance standard failed to limited the Department's discretion, but expressly acknowledged a scenario wherein limits to that discretion could create a property right entitled to due process.  *Id.*

1    at 1403 (citing *Loudermill*, 470 U.S. at 538-39).  It left the door open for a right in a nominal

2    "security clearance" where the decisionmaker retained only limited discretion over issuance.

3        The facts of *Magassa*, more completely set out in the district court decision *sub nom.*

4    *Magassa v. Wolf*, 487 F. Supp. 3d 994 (W.D. Wash. 2020) [hereinafter "*Magassa I*"], involved the

5    Port of Seattle's revocation of the plaintiff's airport-issued SIDA badge in 2016.  *Magassa I,* 487

6    F. Supp. at 1003.  Magassa alleged that certain TSA Redress Procedures leading to the revocation

7    of his badge had deprived him of due process rights.  The district court initially concluded that

8    Magassa had no property or liberty interest in his SIDA badge and cited his failure to plead the

9    existence of any "law, rule, or understanding that makes the conferral of airport worker credentials

10   'mandatory.'" *Id.* at 1015.[3]  On appeal, in a brief discussion of Magassa's due process claims, the

11   Ninth Circuit assumed that his SIDA badge was a "security clearance" subject to the same

12   standards   applicable   to   the   security   clearances   at   issue   in   *Egan*   and   *Dorfmont*.

13   *Magassa*, 52 F.4th at 1168.  Following those decisions, the Ninth Circuit concluded that Magassa

14   had asserted no property or liberty interest in his SIDA badge protected by due process.

15       Plaintiffs' due process claims arise in a distinct context from those in *Egan*, *Dorfmont*, and

16   *Magassa*.  With respect to the property interest in their SIDA badges, Plaintiffs have established

17   that the standard for revocation places considerable limits on Defendants' discretion.   As

18   representatives of a municipal instrumentality, Defendants also cannot claim the authority to act

19   unilaterally on issues related to national security.   While the *Magassa* decision discusses

20   background checks and interviews as relevant considerations to the due process analysis, those

---

21   [3] In *Magassa I*, the district court dismissed plaintiff's procedural due process claims with leave to amended.  In his

22   amended complaint, Magassa again failed to plead any limit on the Port of Seattle's discretion over SIDA badge
     revocation, but instead perfunctorily argued that a SIDA badge was not a "true security clearance."  In its dismissal

23   with prejudice of the amended complaint, the district dourt discussed various levels of security clearances, but did not
     address potential limits on the Port of Seattle's discretion over SIDA badge issuance. *Magassa v. Wolf*, 545 F. Supp.

24   3d 898, 907 (W.D. Wash. 2021) [hereinafter "*Magassa II*"].

aspects are present in the hiring process for any number of government positions.  They do not

illuminate the extent of decisionmaker discretion, the actual touchstone of the due process analysis.

With respect to Plaintiffs' liberty interests in their reputations, Defendants' cited cases do

not address *Humphries* or the effects that mandatory consultation of a stigmatizing list may have

on a recognized status or benefit.  Defendants may attempt to argue that, under *Magassa*, a SIDA

badge does satisfy the "plus" element of the "stigma plus test."  Again, the *Magassa* court labored

under a set of facts and briefing that did not address potential limitations on SIDA badge

revocations.  More importantly, any suggestion in *Magassa* that the "plus" element must rise to a

level of an independent "right" would be inconsistent with Supreme Court and Circuit precedent

confirming that the "plus" need only be a "status."  *Paul*, 424 U.S. at 711; *Humphries*, 554 F.3d at

1187.  A contrary reading requiring plaintiffs to assert a reputational harm <u>and</u> deprivation of an

independent liberty right would render the "stigma-plus test" legally meaningless, as plaintiffs'

constitutional claims could be brought on the basis of the independent right alone.

Due process analysis requires individualized and careful consideration of the facts before

the Court.  The facts here confirm that Plaintiffs had property and liberty interests in their SIDA

badges and CRD placement.  Defendants' cited cases do not prove otherwise.

## II.   Plaintiffs' SIDA Badges Revocations Were Punitive Deprivations of Property and Violated Eighth Amendment Protections Against Excessive Punishment

"The notion of punishment . . . cuts across the division between the civil and the criminal

law." *United States* v. *Halper*, 490 U.S. 435, 447-448 (1989).  "It is commonly understood that

civil proceedings may advance punitive as well as remedial goals, and, conversely, that both

punitive and remedial goals may be served by criminal penalties."  *Id.* at 447.  Forfeiture of

property rights in civil proceedings may violate Eight Amendment prohibitions.  *See Austin v.*

*United States*, 509 U.S. 602, 622 (1993) (finding civil in rem forfeiture of personal property subject

to Eighth Amendment limitations).  To determine if a property deprivation constitutes punishment,

courts examine whether the legal framework for the deprivation emphasizes the culpability of the property holder and whether it has either deterrent/retributive or remedial purposes. *Id.*

The revocations of the Plaintiffs' SIDA badges constitute punitive deprivations of property and violate the protections of the Eighth Amendment. SFO Rules and Regulations formed the legal basis for the revocations. The Rules confirm a property interest in the badges both by the limits they place on badge revocation and by their incorporated penalty schedules, which equate badge revocation with a minimum monetary penalty of $3,000. Dkt. No. 43-1 at 102–104.[4]

Plaintiffs' SIDA badges were revoked pursuant to Rule 7.3 and Rule 7.7. *See* Dkt. No. 43-2 at 19. Both rules require examination of a badge holders' individual actions and, thus, their culpability. *See* Dkt. No. 43-1 at 64, 73. Defendants applied those rules to further retributive and deterrent ends. Mr. Littlefield's December 15, 2022 correspondence to Plaintiffs' union representative recounts alleged conduct of other SFO SIDA badge holders and describes how the Airport had adopted a "zero tolerance" policy towards the violation of badge requirements. Dkt. No. 43-1 at 3. He claims that harsh application of the Rules and Regulations resulted in the decrease of violations. *Id.* at 4. The application of the SFO Rules and Regulations against the Plaintiffs carried a retributive and deterrent purpose. Mr. Littlefield pursued a shameful theory of collective guilt that violates the Eighth Amendment and that has no place in this country. *Hickey v. Reeder*, 12 F.3d 754, 758 (8th Cir. 1993) (finding Eighth Amendment violation where punishment was imposed to "make an example" of an inmate and correct others' behavior). Revocation of Plaintiffs' SIDA badges was plainly excessive in light of the alleged conduct and asserted violations.

---

[4] The Eight Amendment Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind. *Austin v. United States*, 509 U.S. at 609-10.

III.    **Plaintiffs' Allegations Regarding Defendants' Violations of A Federal Regulation Properly Assert an Implied, Private Right of Action**

Regulations may be enforced through a private right of action when they "authoritatively construe" the authorizing statute.  *Alexander v. Sandoval*, 532 U.S. 275, 284 (2001); *Mark H. v. Lemahieu*, 513 F.3d 922, 935 (9th Cir. 2008).  To determine whether a statute creates a private cause of action, courts consider: 1) if the Plaintiff is a member of the class for whose benefit the statute was enacted; 2) if there is any indication of legislative intent to create or deny such a remedy; 3) if it is consistent with the underlying purposes of the legislative scheme to apply such a remedy for the plaintiff; and 4) if the cause of action is one traditionally relegated to state law. *Cort v. Ash*, 422 U.S. 66, 78 (1975).

The TSA Authorization Act of 2018 authorizes a private cause of action for individuals subject to SIDA badge revocation in accordance with the *Cort* factors.  Sections 1934(i)(1)(C) and 1934(i)(2) expressly identify that class of individuals and seek to confer protections on that group alone.  The sections benefit no other class.  Not only does that Act seek to confer protections, it also contemplates that the protected class will have access to a set of remedies by which individuals may affirmatively seek expungement.  That Act does not provide for the enforcement of its expungement provisions by the TSA, an airport operator, or another third party.  A private cause of action is consistent with the underlying purposes of the Act.  The Act establishes the CRD and, in recognition of the severe consequences of CRD placement, requires means of CRD expungement.  Plaintiffs do not contemplate, and Defendants have not identified, any state or local law that would provide for the enforcement of the rights and protection created by the Act.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████

**IV.    Molwane and Littlefield Are Not Entitled to Qualified Immunity from Plaintiffs' Individual Capacity Claims**

The individual capacity defendants concede that they cannot rely on qualified immunity if there is sufficient evidence that they knowingly violated Plaintiffs' rights. *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Plaintiffs' asserted claims all find their basis in the SFO Rules and Regulations and in federal regulations incorporated in the airport's ASP. Molwane and Littlefield were tasked with knowing and applying both the Rules and Regulations and all TSA regulations applicable to SFO. Dkt. 43 ¶ 7. The rights and requirements contained within those documents, █████████████████████████████████████, could not be spelled out more clearly. The punishments imposed by the two officers far exceeded anything contemplated in the Airport's own punishment guidelines. Plaintiffs have adequately alleged that the individual capacity complaints knowingly violated their clear and confirmed rights under the Fourteenth Amendment, the Eighth Amendment, and TSA-NA-21-01A.

**V.    Plaintiffs' Official Capacity Claims Against Littlefield and Molwane Are Not Redundant, and the Airport Commission Should Not Be Dismissed**

For the premise that Plaintiffs' official capacity claims should be dismissed as redundant, Defendants rely on a footnote from *Monell v. Dept of Soc. Servs. of City of New York* that states only that official capacity suits "*generally* represent only another way of pleading an action against an entity of which an officer is an agent." 436 U.S. 658, 690 n.55 (1978) (emphasis added). The litigants in *Monell* did not request the dismissal of the official capacity defendants, and the Court

1    ultimately did not direct the dismiss of those defendants.  Not only is the *Monell* footnote obiter

2    dicta, but by its own terms, it does not require the dismissal of official capacity defendants.

3         Instead, precedent confirms that in § 1983 actions asserted against SFO and its officer,

4    Courts do not dismiss official capacity claims.  *See Harman v. City & Cnty. of San Francisco*, 136

5    Cal. App. 4th 1279, 1286 (2006).  In *Harman*, the California Court of Appeal did not remove

6    individual members of the San Francisco Airport Commission or the director of the San Francisco

7    Airport named in a former employee's § 1983 claim, even though suit also named the airport and

8    the city as defendants.  *See id.*  The court described the delegation of policymaking authority to

9    one official, the EEO Manager of the central human resources department, in determining

10   municipal liability.  *See id.* at 1300–01.  Harman's suits against all parties were maintained because

11   of this delegation of authority.

12        Littlefield and Molwane must remain official capacity defendants in order for Plaintiffs to

13   have access to the complete range of sought relief.  Official capacity suits exist because

14   "municipalities often spread policymaking authority among various officers and official bodies."

15   *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)

16        . Liability falls to the municipality because "a deliberate choice to follow a course of action

17   is made from among various alternatives by the official."  *Id.*  Molwane and Littlefield had the

18   necessary policymaking authority in that they, in their roles as officers for the airport, revoked

19   Plaintiffs' SIDA badges and denied the appeal of the revocation. It is thus Molwane and Littlefield,

20   in their roles as officers, who can provide the necessary relief by amending their decisions and

21   providing due process.  Plaintiffs can only obtain relief if the officers with the power to act remain

22   parties.  *Accord B.O.L.T. v. City of Rancho Cordova*, No. 2:14-CV-01588-GEB-DAD, 2014 U.S.

23   Dist. LEXIS 170233, at *6 (E.D. Cal. Dec. 5, 2014) (declining to dismiss official capacity claims

24   against officers where plaintiff sought equitable relief from the individual officers).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss and permit the parties to engage in discovery with respect to their claims.

Dated March 15, 2023

Respectfully Submitted,

By   /s/ Samuel Seham
         Samuel A. Seham, Esq. (NY BAR NO. 5768080)

Lee Seham, Esq. (NY BAR NO. 2194306)
John K. Buche, Esq. (CA BAR NO. 239477)
Byron Ma, Esq. (CA BAR NO. 299706)

*Attorneys for the Plaintiffs Walter Spurlock and Andre Guibert*