1  DAVID CHIU, SBN 189542
   City Attorney
2  YVONNE R. MERÉ, SBN 173594
   Chief Deputy City Attorney
3  SARA J. EISENBERG, SBN 269303
   Chief of Complex & Affirmative Litigation
4  ADAM M. SHAPIRO, SBN 267429
   MOLLY J. ALARCON, SBN 315244
5  Deputy City Attorneys
   Fox Plaza
6  1390 Market Street, 6th Floor
   San Francisco, CA  94102-5408
7  Telephone:    (415) 554-3894
   Facsimile:    (415) 437-4644
8  E-Mail:       Molly.Alarcon@sfcityatty.org

9  Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| WALTER SPURLOCK and ANDRE GUIBERT,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, AIRPORT COMMISSION OF THE CITY AND COUNTY OF SAN FRANCISCO, KEABOKA MOLWANE in his individual capacity and official capacity as Aviation Security and Regulatory Compliance Officer at the San Francisco International Airport, and JEFF LITTLEFIELD in his individual capacity and official capacity as Chief Operating Officer at San Francisco International Airport,<br><br>Defendants. | Case No. 3:23-cv-4429<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Hearing Date:     May 23, 2024<br>Time:             2:00 p.m.<br>Before:           Hon. Araceli Martínez-Olguín<br>Place:            450 Golden Gate Avenue<br>                  Courtroom 10<br>                  San Francisco, CA 94102<br><br>Date Action Filed:   August 28, 2023 |
|---|---|

# **TABLE OF CONTENTS**

Table of Authorities ...........................................................................................................................3

Introduction......................................................................................................................................6

Argument .........................................................................................................................................8

    I.    Plaintiffs Cannot Establish a Liberty or Property Interest, and Therefore Have No Viable Due Process Claims (Counts I and II) ......................................................8

        A.    Plaintiffs Misstate the Standard for Identifying a Protected Property Interest.................................................................................................................8

        B.    Plaintiffs Do Not Have an Entitlement to a SIDA Badge and, Thus, Lack a Protected Property Interest. ..................................................................10

        C.    Counts I and II also Fail Because Plaintiffs Do Not Satisfy the "Stigma-Plus" Test and Fail to State a Claim for Reputational Harm that Violates Due Process.................................................................................................11

    II.    Count III Fails Because Plaintiffs Have No Eighth Amendment Claim ...............14

    III.    Count IV Fails Because Congress Expressed No Intent, Explicit or Implicit, to Give Plaintiffs a Private Right of Action to Enforce ███████████ ███ ..............................................................................................................14

    IV.    If Any Claims Survive, Littlefield and Molwane Are Entitled to Qualified Immunity Because Plaintiffs Have No Rights that Were Violated, Let Alone Any Clearly Established Rights. ................................................................................17

    V.    Plaintiffs' Claims Against Littlefield and Molwane in Their Official Capacities Are Redundant and Should Be Dismissed. ............................................................17

    VI.    Plaintiffs Have No Response to Defendants' Arguments that the Airport Commission Is an Improper Defendant and Should Be Dismissed ........................18

Conclusion .....................................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Sandoval*
　532 U.S. 275 (2001) .................................................................................................. 14, 15

*Austin v. United States*
　509 U.S. 602 (1993) .......................................................................................................... 14

*B.O.L.T. v. City of Rancho Cordova*
　No. 2:14-CV-01588-GEB-DAD, 2014 U.S. Dist. LEXIS 170233 (E.D. Cal. Dec. 5, 2014) .... 18

*Bollow v. Fed. Rsrv. Bank of San Francisco*
　650 F.2d 1093 (9th Cir. 1981) ........................................................................................... 13

*California v. Sierra Club*
　451 U.S. 287 (1981) .......................................................................................................... 16

*Chaudhry v. Aragón*
　68 F.4th 1161 (9th Cir. 2023) ............................................................................................ 12

*Cleveland Bd. of Educ. v. Loudermill*
　470 U.S. 532 (1985) ............................................................................................................ 9

*Cort v. Ash*
　422 U.S. 66 (1975) ...................................................................................................... 15, 16

*Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*
　533 F.3d 780 (9th Cir. 2008) ............................................................................................. 17

*Daniels-Hall v. Nat'l Educ. Ass'n*
　629 F.3d 992 (9th Cir. 2010) ............................................................................................. 11

*Dep't of the Navy v. Egan*
　484 U.S. 518 (1988) ........................................................................................................ 6, 9

*District of Columbia v. Wesby*
　583 U.S. 48 (2018) ............................................................................................................ 17

*Dorfmont v. Brown*
　913 F.2d 1399 (9th Cir. 1990) .................................................................................. 6, 9, 13

*Excel Fitness Fair Oaks, LLC v. Newsom*
　No. 2:20-CV-02153-JAM-CKD, 2021 WL 795670 (E.D. Cal. Mar. 2, 2021) ..................... 19

*Groten v. California*
　251 F.3d 844 (9th Cir. 2001) ........................................................................................... 8, 9

*Harman v. City & County of San Francisco*
　136 Cal. App. 4th 1279 (2006) .......................................................................................... 17

*Hart v. Parks*
  450 F.3d 1059 (9th Cir. 2006) ..................................................................................12

*Hickey v. Reeder*
  12 F.3d 754 (8th Cir. 1993) ......................................................................................14

*Houghton v. South*
  965 F.2d 1532 (9th Cir. 1992) ..............................................................................7, 17

*Hudson v. United States*
  522 U.S. 93 (1997) .....................................................................................................6

*Humphries v. Cnty. of Los Angeles*
  554 F.3d 1170 (9th Cir. 2008) ............................................................................12, 13

*Ingraham v. Wright*
  430 U.S. 651 (1977) .................................................................................................14

*Kentucky v. Graham*
  473 U.S. 159 (1985) ...........................................................................................17, 18

*Lil' Man in the Boat, Inc. v. City & Cnty. of San Francisco*
  5 F.4th 952 (9th Cir. 2021) ......................................................................................16

*Logan v. U.S. Bank Nat'l Ass'n*
  722 F.3d 1163 (9th Cir. 2013) ............................................................................15, 16

*Lopez v. Cnty. of Los Angeles*
  No. 15-CV-03804-TEH, 2016 WL 54123 (N.D. Cal. Jan. 5, 2016) .........................18

*Los Angeles Cnty., Cal. v. Humphries*
  562 U.S. 29 (2010) ...................................................................................................12

*Magassa v. Mayorkas*
  52 F.4th 1156 (9th Cir. 2022) ..........................................................................6, 9, 12

*Magassa v. Wolf*
  545 F. Supp. 3d 898 (W.D. Wash. 2021) ...................................................................9

*Martin v. City of Boise*
  920 F.3d 584 (9th Cir. 2019) ...................................................................................14

*Monell v. Dep't of Soc. Servs. of City of New York*
  436 U.S. 658 (1978) .................................................................................................17

*Paul v. Davis*
  424 U.S. 693 (1976) .................................................................................................12

*Pembaur v. City of Cincinnati*
  475 U.S. 469 (1986) .................................................................................................18

*Perez v. Mortg. Bankers Ass'n*
    575 U.S. 92 (2015) ................................................................................................................ 11

*Perry v. Sindermann*
    408 U.S. 593 (1972) ............................................................................................................ 8, 9

*Rodriguez v. Sony Comput. Ent. Am., LLC*
    801 F.3d 1045 (9th Cir. 2015) ............................................................................................... 15

*Segalman v. Sw. Airlines Co.*
    895 F.3d 1219 (9th Cir. 2018) ............................................................................................... 16

*The Bd. of Regents of State Colls. v. Roth*
    408 U.S. 564 (1972) ............................................................................................................ 8, 9

*Town of Castle Rock v. Gonzales*
    545 U.S. 748 (2005) ................................................................................................................. 8

*Ulrich v. City and Cnty. of San Francisco*
    308 F.3d 968 (9th Cir. 2002) ................................................................................................ 13

*United States v. Halper*
    490 U.S. 435 (1989) ................................................................................................................. 6

*Vance v. Cnty. of Santa Clara*
    928 F. Supp. 993 (N.D. Cal. 1996) ....................................................................................... 18

*Wilson v. Craver*
    994 F.3d 1085 n.8 (9th Cir. 2021) ......................................................................................... 11

*Wisconsin v. Constantineau*
    400 U.S. 433 (1971) ............................................................................................................. 13

**San Francisco Charter**
Article I
    § 1.101 .................................................................................................................................. 18

**Other Authorities**
42 U.S.C.
    § 1983 .............................................................................................................................. 12, 18

FAA Reauthorization Act of 2018, PL 115-254
    § 1934(i) ................................................................................................................................ 15
    § 1934(i)(1)(C) ................................................................................................................ 15, 16
    § 1934(i)(2) ...................................................................................................................... 15, 16

**Introduction**

Plaintiffs lost the privilege of holding airport security clearances because, as admitted in their Second Amended Complaint ("SAC"), they engaged in conduct that subverted security protocols. Dkt. No. 43 [SAC] at ¶¶ 26-27. Their attempt to make a federal case out of it fails because the law does not recognize their claims and does not provide them any relief. In their opposition to Defendants' motion to dismiss, Plaintiffs largely ignore binding case law establishing that Plaintiffs' claims are not viable. Plaintiffs also fail to show how further amendment—after three versions of their complaint to date—could revive their claims. This case should be dismissed in its entirety without leave to amend.

Plaintiffs' Due Process claims (Counts I and II) fail at the outset because the Constitution does not recognize a liberty or property interest related to airport security badges issued by the government. Plaintiffs do not meaningfully grapple with a nearly identical case to this one in which the Ninth Circuit held that individuals lack a protected liberty or property interest in SIDA badges—the very clearances at issue in this case—and thus cannot invoke the Due Process Clause at all. *Magassa* (bolstered by *Egan* and *Dorfmont*) compel dismissal of Plaintiffs' Due Process claims. *Magassa v. Mayorkas*, 52 F.4th 1156 (9th Cir. 2022); *Dep't of the Navy v. Egan*, 484 U.S. 518 (1988); *Dorfmont v. Brown*, 913 F.2d 1399 (9th Cir. 1990). Plaintiffs' invented dispute about the "degree" of discretion possessed by the government is legally irrelevant, as Plaintiffs cannot establish an *entitlement* to a SIDA badge, and that is what the law requires. For several reasons, Plaintiffs also fail to state a claim for reputational harm amounting to a Due Process violation. The Fourteenth Amendment does not provide a right or a remedy for Plaintiffs' grievances.

Count III should be dismissed because the Eighth Amendment's protections against cruel and unusual punishment do not apply to airport security badge revocations, and Plaintiffs fail to identify even a single case that holds otherwise. Instead, Plaintiffs invite the Court to apply the Eighth Amendment in entirely new circumstances based on an unrelated double jeopardy case that has not been good law since 1997. *See* Dkt. No. 47 (hereinafter "Opp.") at p. 15, *citing United States v. Halper*, 490 U.S. 435 (1989), *abrogated by Hudson v. United States*, 522 U.S. 93 (1997). The Court should reject this invitation to depart so dramatically from precedent regarding the application of the

Eighth Amendment's protections against cruel and unusual punishment, and should reject Plaintiffs' undeveloped arguments about the Excessive Fines Clause, since Defendants did not impose any fines.

Regarding Count IV, Plaintiffs ignore the most important factor for determining whether Congress has authorized a private right of action to enforce federal law: evidence in the statutory text of Congressional intent to create a private right and a private remedy. Here, no statutory or regulatory language suggests that Congress meant to create a private right for individuals to enforce ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in federal court. In their attempt to convince this Court to create Congressional intent where none exists, Plaintiffs misread statutory language that merely directs the TSA's actions, and ignore language directing the agency to create a *non-judicial process* to correct mistakes in the database. Count IV should be dismissed without leave to amend because Plaintiffs lack a cause of action.

In the alternative, if any cause of action survives, Plaintiffs have failed to show that any defendant other than the City and County of San Francisco is proper. Plaintiffs cannot satisfy their burden to show that Defendants Molwane or Littlefield, acting in their individual capacities, violated "rights" possessed by Plaintiffs that were "clearly established" at the time. *Houghton v. South*, 965 F.2d 1532, 1534 (9th Cir. 1992). Plaintiffs have not identified the violation of *any* rights, let alone "clearly established" ones, because under existing law, Plaintiffs have no such rights related to their SIDA badges or placement on the CRD. Thus, if Plaintiffs can state a claim, Molwane and Littlefield are entitled to qualified immunity. Moreover, Plaintiffs' claims against Molwane and Littlefield in their official capacities are redundant even under Plaintiffs' asserted standard because Plaintiffs could obtain "complete" relief from the City and County of San Francisco. The Airport Commission should be dismissed because only the City and County of San Francisco may be sued in a civil action, and Plaintiffs fail even to address this argument.

Plaintiffs have failed to state any claims upon which relief can be granted. The SAC should be dismissed without leave to amend.

///

///

///

# Argument

## I. Plaintiffs Cannot Establish a Liberty or Property Interest, and Therefore Have No Viable Due Process Claims (Counts I and II)

Plaintiffs' arguments that they possess a constitutionally protected property interest in their SIDA badges and a protected liberty interest related to their listing on the CRD are directly refuted by binding precedent, and Plaintiffs simply cannot state viable Due Process claims. The cases relied upon by Plaintiffs do not establish otherwise.

### A. Plaintiffs Misstate the Standard for Identifying a Protected Property Interest.

According to the very cases cited by Plaintiffs, Opp. at p. 8, Plaintiffs must demonstrate an entitlement to a SIDA badge in order to state a Due Process claim based on the deprivation of a protected property interest.[1] *Perry v. Sindermann*, 408 U.S. 593, 601 (1972); *Groten v. California*, 251 F.3d 844, 850 (9th Cir. 2001). This claim of entitlement must be supported by statutory text, a contract, or evidence of a mutual understanding rising to the level of a contract. *Perry*, 408 U.S. at 601, citing *The Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *Groten*, 251 F.3d at 850. Thus, under Plaintiffs' own cited case law, it is not true that "the extent of decisionmaker discretion" is the "actual touchstone of the due process analysis." Opp. at p. 15. The existence of an entitlement, supported by more than the plaintiff's unilateral beliefs, is the touchstone. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); Opp. at p. 8 (citing same). Under *Perry*, *Groten*, and related cases, Plaintiffs must show that the Airport had *no* discretion in issuing or revoking SIDA badges and that Plaintiffs held their badges as a matter of right. *Groten*, 251 F.3d at 850 ("if an applicant meets the three requirements, there is no discretion in the state licensing agency [and thus, the plaintiff] has a legitimate claim of entitlement to the license if he meets the three prerequisites.").

In *Perry*, relied upon by Plaintiffs, Opp. at p. 8, although the defendant college disclaimed having any tenure system for professors, it nonetheless advised in its official faculty guide that it "'wishes the faculty member to feel that he has permanent tenure as long as his teaching services are

---

[1] Despite claiming in an introductory sentence that "Plaintiffs here possessed . . . a liberty interest in their omission from the CRD," Opp. at p. 8, Plaintiffs do not develop their liberty-interest theory except in the context of arguments about reputational harm they allegedly suffered—i.e., their "stigma-plus" arguments. *See* Opp. at pp. 8-15. Defendants address Plaintiffs' stigma-plus arguments in Section I.C, *infra*.

satisfactory.'" *Perry*, 408 U.S. at 600. The Court determined that because of this and other indicia of a de facto tenure program, the plaintiff adequately showed a mutually held, explicit understanding of the plaintiff's entitlement to continued employment. *Id*. at 600-01.[2] *Perry* was decided the same day as *Roth*, in which the Court rejected a non-tenured university teacher's claim of a protected interest in his continued employment where that plaintiff had no basis for asserting an entitlement beyond his one-year contract, even though teachers were usually re-hired year to year. *Roth*, 408 at 575, 578. Both of these cases support Defendants' position because they confirm that courts must evaluate a plaintiff's claim of an entitlement based on "independent source[s] such as state law," *Roth*, 408 U.S. at 577, and not the claimant's "subjective 'expectancy.'" *Perry*, 408 U.S. at 603. Yet all Plaintiffs offer here—in the face of explicit language reserving "sole discretion" to the Airport—are assertions of their unreasonable, unilateral expectations. *E.g.*, Dkt. No. 43 [SAC], ¶ 20.

In the face of this requirement to show an entitlement, Plaintiffs' attempt to distinguish *Magassa*, *Dorfmont*, and *Egan* on the theory that those cases involved "complete discretion" by the government is meaningless. *See* Opp. at p. 12. The degree of discretion possessed by the government is relevant only if the government completely *lacks* discretion to grant or revoke a benefit, and, thus, the plaintiff can show a legitimate entitlement. *Groten*, 251 F.3d at 850. The plaintiff in *Magassa* could not show how he could be entitled to a SIDA badge, and, thus, the Court concluded that he had no protected interest. *Magassa*, 52 F.4th at 1168. Moreover, the Ninth Circuit did not "assume[]" that SIDA badges are security clearances, as Plaintiffs argue, Opp. at p. 14; they are, and this is evident from the applicable regulations and the record. Indeed, the district court found that SIDA badges involve national security interests, justifying the application of cases like *Egan* and *Dorfmont*. *Magassa v. Wolf*, 545 F. Supp. 3d 898, 908 (W.D. Wash. 2021). The same is true here. Just like the plaintiff in *Magassa*, Plaintiffs are not entitled to their SIDA badges.[3]

---

[2] *Loudermill*, cited by Plaintiffs, *see* Opp. at p. 8, is similarly distinguishable because the plaintiff in that case was a civil service employee who could not be fired except for "misfeasance, malfeasance, or nonfeasance in office," and the parties below did not dispute that this created a property interest in the plaintiff's continued employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985).

[3] It is irrelevant to the legal analysis that Plaintiffs argue that they did not "tamper or interfere with, modify, or attempt to circumvent any aspect of the security system." Opp. at p. 6. As a factual matter, this is directly refuted by specific factual allegations admitted by Plaintiffs, Dkt. No. 43 [SAC]

### B. Plaintiffs Do Not Have an Entitlement to a SIDA Badge and, Thus, Lack a Protected Property Interest.

There is no factual dispute that the Airport possessed some degree of discretion in determining when a badge holder committed a security violation and when revocation was appropriate. Plaintiffs concede the existence of this discretion repeatedly. *See*, *e.g.*, Opp. at p. 10 (arguing that "the Airport does not have complete discretion over SIDA badge revocations," thereby conceding it has some). Plaintiffs admit that the Airport maintained secure areas and related identification and access systems as a requirement of federal law. Dkt. No. 43 [SAC], ¶ 21. Plaintiffs also admit that in order to hold SIDA badges, Plaintiffs had to apply to the government and pass criminal background checks. Dkt. No. 43 [SAC], ¶ 20. In other words, SIDA badges were not issued as a matter of course. *See id*. Plaintiffs also understood that if they violated airport security rules, their badges could be revoked. *Id*. Plaintiffs also knew that their badges could be revoked if federal law prohibited them from holding a badge. *Id*. Plaintiffs admit that the SFO Rules and Regulations, including rules 7 and 14, were in effect and applicable to Plaintiffs during the relevant time period. Dkt. No. 43 [SAC], ¶¶ 47-55. They attached the full set of Rules and Regulations to their SAC. Dkt. No. 43-1 [Exh. A]. Rule 7.1(D) states, "Any person who violates this Rule 7, compromises Airport security, or creates or engages or participates in any unsafe, unsecure, or hazardous condition or activity at the Airport may have access privileges immediately revoked on a temporary or permanent basis *at the sole discretion of the Airport*." Dkt. No. 43-1 [Exh. A], p. 62 of 106 (emphasis added). Rule 7.3 states, "Violation of the Airport access control procedures below may result in the assessment of fines under Rule 14, and/or fines under the terms of a lease and/or permit, and/or temporary or permanent revocation of an Airport ID badge *at the sole discretion of the Airport*." Dkt. No. 43-1 [Exh. A], p. 64 of 106 (emphasis added). The Airport also reserved discretion in applying penalties or consequences for such violations, as stated in the SAC and rule 14.4. Dkt. No. 43 [SAC], ¶ 52; *see also* Opp. at p. 9 (implying that the Airport only had discretion in meting out penalties, not also in determining when a person committed a violation). In the face of these allegations, Plaintiffs' conclusory and

---

at ¶¶ 26-27, and the Court need not accept their contradictory conclusions. Additionally, as discussed herein, the pertinent analysis is whether Plaintiffs have an entitlement to their SIDA badges, and this legal question is not affected by the factual question of whether Plaintiffs believe they committed security violations.

1  contradictory arguments that the Airport's discretion was limited or that the Airport could only revoke
2  badges for "good cause" fail. *E.g.*, Opp. at pp. 9-10; *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992,
3  998 (9th Cir. 2010) ("We are not, however, required to accept as true allegations that contradict
4  exhibits attached to the Complaint . . . or unreasonable inferences."); *Wilson v. Craver*, 994 F.3d 1085,
5  1095 n.8 (9th Cir. 2021) (rejecting complaint allegations contradicted by information subject to
6  judicial notice). Plaintiffs allege facts establishing that the Airport had at least some degree of
7  discretion in issuing and revoking SIDA badges—and those same facts establish that Plaintiffs had no
8  entitlement to a badge.

9  Nothing in the ▇▇▇▇▇▇▇[4] creates a protected entitlement to a SIDA badge, either. In fact,
10-17 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
18  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ impossible for Plaintiffs to
19  claim a continued entitlement to their SIDA badges, when ▇▇▇▇▇▇▇▇▇▇▇▇▇▇
20-21 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

### C. Counts I and II also Fail Because Plaintiffs Do Not Satisfy the "Stigma-Plus" Test and Fail to State a Claim for Reputational Harm that Violates Due Process.

Plaintiffs misstate the "stigma-plus" test and attempt to recraft it in a manner unsupported by Supreme Court or Ninth Circuit law. They acknowledge that a plaintiff must make two showings to

---

[4] Plaintiffs accuse Defendants of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

state a claim of reputational harm that violates procedural Due Process: first, that the plaintiff suffered stigma from governmental action, and second, "alteration of a previously recognized right or status." Opp. at p. 10 (citing *Paul v. Davis*, 424 U.S. 693, 711 (1976)). But they assert, without authority, that this second, "plus," part of the test means something other than demonstrating the "deprivation of an independent liberty [or property] right." Opp. at p. 15. But courts have been clear that this is exactly what the "plus" part of the test means, according to the very cases cited by Plaintiff. Opp at p. 10 (citing *Hart v. Parks*, 450 F.3d 1059, 1070 (9th Cir. 2006)). In *Hart*, the Ninth Circuit explained that there are two ways plaintiffs can satisfy the "stigma-plus" test. First, "the plaintiff must show that the injury to his reputation was inflicted *in connection with* the deprivation of a federally protected right." *Hart*, 450 F.3d at 1070 (emphasis in original). Alternatively, "the plaintiff must show that the injury to reputation *caused* the denial of a federally protected right." *Id*. (emphasis in original). Both versions require the deprivation or denial of a federally protected liberty or property interest. *Id*.; *see also Chaudhry v. Aragón*, 68 F.4th 1161, 1170 (9th Cir. 2023). This test is not "legally meaningless," as Plaintiffs argue, Opp. at p. 15, because harm to one's reputation alone is not independently actionable under 42 U.S.C. § 1983. *Hart*, 450 F.3d at 1069. Importantly, Plaintiffs do not refute their failure to allege a protected liberty or property interest in their SIDA badges or listing on the CRD because, as a matter of law, they have no such protected interests. *Magassa*, 52 F.4th at 1169. Hence, Plaintiffs do not and cannot satisfy the "plus" aspect of the test.

*Humphries* did not change the "plus" component of the test. In that case, the Ninth Circuit reaffirmed that a plaintiff alleging reputational harm amounting to a Due Process violation must show that the government made stigmatizing statements plus the "alteration or extinguishment of 'a right or status previously recognized by state law.'" *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1185 (9th Cir. 2008), as amended (Jan. 30, 2009), *rev'd and remanded sub nom. Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29 (2010), quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976). The Court in *Humphries* repeatedly emphasized the breadth of freedoms impacted by the plaintiffs' placement on a list of known and suspected child abusers, despite being found "factually innocent," where multiple government agencies were required to consult the list before, for example, renewing teaching credentials, authorizing work at a local community center, or disbursing other licenses and benefits

under state law. *Humphries*, 554 F.3d at 1187-88 (9th Cir. 2008). The Court concluded that the plaintiffs' liberty interests in using their "good name" to "obtain a license, secure employment, become guardians, volunteer or work for CASA, or adopt" were harmed—meaning, the default state of the world for the plaintiffs, in which they could access these legal rights normally, was impacted. *Id*. at 1192. Likewise, in *Wisconsin v. Constantineau*, the police posted the plaintiff's name on a list prohibiting her from purchasing alcohol. 400 U.S. 433, 434-35 (1971). This altered the default state of the world, in which adults can purchase alcohol as a matter of course, thus impacting the plaintiff's liberty interest.

Here, the default state of the world for Plaintiffs, or anyone, is not possessing a SIDA badge. As discussed above, no person has a right to a SIDA badge. *See Dorfmont*, 913 F.2d at 1403. Thus, it does not and cannot implicate a liberty interest when airports consult the CRD prior to issuing a SIDA badge to Plaintiffs (or anyone), when, as here, Plaintiffs have no right to receive a SIDA badge as a matter of course.

Plaintiffs completely fail to engage with Defendants' other arguments demonstrating their inability to plead a cognizable "stigma-plus" claim. First, Plaintiffs do not allege that the Airport (or any other part of the City and County of San Francisco) made any stigmatizing statements, a necessary showing for their claim against any Defendant. Plaintiffs do not refute that the Airport only informed Plaintiffs of its determinations regarding their security infractions, and Plaintiffs acknowledge that the Airport *had* to submit their names to the CRD. Dkt. No. 43-2 [SAC, Exh. B] at pp. 2-3 of 22; Dkt. No. 43-3 [SAC, Exh. C] at p. 2 of 2; Dkt. No. 43 [SAC] at ¶ 72. Plaintiffs' allegations regarding stigma relate to their "placement on the CRD" and *not* any statements or other actions by the Airport. *E.g.*, Dkt. No. 43 [SAC], ¶ 46. Indeed, Plaintiffs fail to identify a single statement made by the Airport that they allege is stigmatizing. Second, Plaintiffs do not refute the fact that the CRD is not public and that under the "stigma-plus" test, "a plaintiff must show the public disclosure of a stigmatizing statement by the government." *Ulrich v. City and Cnty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002); *see also Bollow v. Fed. Rsrv. Bank of San Francisco*, 650 F.2d 1093, 1101 (9th Cir. 1981). For either of these additional reasons, Plaintiffs' procedural Due Process claim based on reputational harm should be dismissed.

## II. Count III Fails Because Plaintiffs Have No Eighth Amendment Claim

Count III should be dismissed because the Eighth Amendment's protections against cruel and unusual punishment do not apply to security badge revocations, and Plaintiffs fail to identify even a single case that suggests otherwise. Plaintiffs cite an inapposite case involving civil asset forfeiture, where the Court applied a different part of the Eighth Amendment. Opp. at p. 15. In *Austin v. United States*, 509 U.S. 602 (1993), the Supreme Court held that Eighth Amendment's Excessive Fines Clause applies to in rem civil forfeiture proceedings. That holding is irrelevant here. Plaintiffs do not allege violations of the Excessive Fines Clause. Rather, the SAC repeatedly refers to "punishment," Dkt. No. 43 [SAC] at ¶¶ 6, 81, implicating the Eighth Amendment's prohibition against cruel and unusual punishment.[5]

The out-of-circuit case relied upon by Plaintiffs, *Hickey v. Reeder*, is distinguishable in every respect: it involved a person convicted of a crime, sentenced to prison, and awaiting transfer in a jail, who endured bodily harm at the hands of jail officials when he refused to sweep his cell. 12 F.3d 754, 756 (8th Cir. 1993). Plaintiffs do not refute, or even address, the binding case law cited by Defendants that the Eighth Amendment's prohibition against cruel and unusual punishment applies only to criminal matters, such as those in *Hickey*. *Ingraham v. Wright*, 430 U.S. 651, 667-68 (1977); *Martin v. City of Boise*, 920 F.3d 584, 614 (9th Cir. 2019). And Plaintiffs do not dispute that this matter does not involve any criminal proceeding or threat of criminal process.

## III. Count IV Fails Because Congress Expressed No Intent, Explicit or Implicit, to Give Plaintiffs a Private Right of Action to Enforce ▮▮▮▮▮▮

In arguing that there is a private right of action for Plaintiffs to sue under the TSA Authorization Act of 2018, Plaintiffs ignore the most important factor for determining whether Congress has authorized a private right of action and a remedy to enforce federal law: evidence in the statutory text of such Congressional intent. Opp. at pp. 17-18. *Alexander v. Sandoval*—upon which

---

[5] In any event, Plaintiffs' argument (not alleged in the SAC) that a badge revocation is the same as a monetary penalty of $3,000 is inadequate to assert an Excessive Fines Clause claim. *See* Opp. at p. 16. Although Plaintiffs argue in a footnote that the Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind," there is no plausible interpretation of the events involving Plaintiffs in which their SIDA badge revocation is deemed to be the extraction of a monetary payment from Plaintiffs.

Plaintiffs rely—emphasized that courts must discern Congressional intent to authorize private rights of action from the text and structure of the applicable statute. *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001); Opp. at p. 17 (citing *Sandoval*). Plaintiffs' arguments as to why this Court should infer a cause of action entirely gloss over the relevant statutory text.[6] That text—like the provision in *Sandoval* found *not* to create a private right of action—directs a federal agency to take various actions. *Compare* FAA Reauthorization Act of 2018, PL 115-254, § 1934(i) (directing TSA to create the CRD and establish a process to expunge wrongly included names) *with Sandoval*, 532 U.S. at 288-89 (finding no right of action implied by a statutory provision that directs federal agencies to effectuate provisions of a different subsection). The Ninth Circuit has confirmed that where, as here, the "language of the statute is directed toward the entity being regulated, rather than the party seeking relief, we have not recognized a private right of action." *Rodriguez v. Sony Comput. Ent. Am., LLC*, 801 F.3d 1045, 1051 (9th Cir. 2015); *see also Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1171 (9th Cir. 2013).

Language directing the TSA to create the CRD and "establish a process to allow an individual whose name is mistakenly entered into the database to correct the record" does not evidence Congressional intent to authorize private parties to sue in court. FAA Reauthorization Act of 2018, PL 115-254, § 1934(i)(1)(C); s*ee Rodriguez*, *supra*, 801 F.3d at 1050 (noting absence of language like "the aggrieved party" in provision found not to create private right of action, in contrast to provision that did). Nor does language advising the agency that the database, which the agency must create and maintain, should not include individuals whose badges were revoked for reasons unrelated to security violations. FAA Reauthorization Act of 2018, PL 115-254, § 1934(i)(2). Under *Sandoval*, the analysis begins and ends with the statutory text and scheme. Here, Section 1934(i) does not show that Congress intended to authorize private parties to sue in court.

To the extent the *Cort v. Ash* factors are relevant, Congressional intent is a "'supreme factor,' and *Cort*'s other three factors are used to decipher congressional intent." *Lil' Man in the Boat, Inc. v.*

---

[6] Plaintiffs also argue that "because there is no adequate state law remedy, the Court must find an implied cause of action." Opp. at p. 2. Plaintiffs fail to develop this argument, but in any event, it is not part of the relevant analysis. *See generally Sandoval*, 532 U.S. at 288.

*City & Cnty. of San Francisco*, 5 F.4th 952, 958 (9th Cir. 2021), *quoting Logan*, 722 F.3d at 1171; *see* Opp. at p. 17 (discussing factors in *Cort v. Ash*, 422 U.S. 66 (1975)). Plaintiffs fail to acknowledge that factor three of the *Cort* test—whether it is consistent with the purpose of the legislative scheme to imply a private cause of action—weighs heavily in Defendants' favor. Part of the statutory provision at issue requires the TSA to "establish a process to allow an individual whose name is mistakenly entered into the database to correct the record and have the individual's name expunged from the database." FAA Reauthorization Act of 2018, PL 115-254, § 1934(i)(1)(C). Thus, the remedy for a "mistakenly entered" name in the CRD is up to the TSA to "establish," and it is inconsistent with the statutory scheme to infer a private cause of action where the language directs the agency to create a non-judicial process for error correction. *See Segalman v. Sw. Airlines Co.*, 895 F.3d 1219, 1227 (9th Cir. 2018) (finding no private right of action in the Air Carrier Access Act, which provided its own "remedial scheme" administered by a federal agency).

Plaintiffs also refer to Section 1934(i)(2), which states that the CRD "shall not include the name of any individual whose badge has been revoked . . . unrelated to—(A) a violation of a security requirement; or (B) a determination that the individual poses a threat to aviation security." But this language, too, is directed at TSA and does not contain "rights-creating language." *Lil' Man in the Boat*, *supra*, 5 F.4th at 958. That this provision impacts and could benefit private parties is not the relevant question. The Supreme Court has explained that "[t]he question is not simply who would benefit from [an] Act, but whether Congress intended to confer federal rights upon those beneficiaries." *California v. Sierra Club*, 451 U.S. 287, 294 (1981). The language of this subsection does "not unmistakably focus on any particular class of beneficiaries whose welfare Congress intended to further." *Id.* Here, badge holders or would-be badge holders are just the "object" of the "obligation[s]" imposed on the regulated party. *Lil' Man in the Boat*, 5 F.4th at 959 (quoting *Logan, supra*, 722 F.3d at 1169-73). Thus, the language and structure of the statute lead to the conclusion that Congress did not intend to create a right for private parties to sue in court.

As Plaintiffs lack a cause of action, Count IV should be dismissed without leave to amend.

### IV. If Any Claims Survive, Littlefield and Molwane Are Entitled to Qualified Immunity Because Plaintiffs Have No Rights that Were Violated, Let Alone Any Clearly Established Rights.

If any cause of action in the SAC survives as a cognizable claim, then the Defendants named in their individual capacities are entitled to qualified immunity. Plaintiffs make only a half-hearted attempt to meet their burden to show that the rights at issue in Plaintiffs' SAC were "clearly established" at the time Littlefield and Molwane allegedly violated them. *See Houghton*, 965 F.2d at 1534. Plaintiffs argue that their "asserted claims all find their basis in the SFO Rules and Regulations and in federal regulations incorporated into the airport's ASP." Opp. at p. 18. But what this means is not evident, and it is legally irrelevant that "rights and requirements contained within those documents . . . could not be spelled out more clearly." *Id.* Plaintiffs must show that the rights they claim were violated were "clearly established" not in the SFO Rules and Regulations, but as a matter of "settled" law in "then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). But Plaintiffs point to no cases establishing that Plaintiffs had "settled" rights to their SIDA badges or related to being listed on the CRD.

### V. Plaintiffs' Claims Against Littlefield and Molwane in Their Official Capacities Are Redundant and Should Be Dismissed.

Plaintiffs ignore settled precedent regarding the redundancy of suing officers in their official capacities when also suing their municipal employer. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also* Dkt. No. 47 [Defendants' Motion to Dismiss SAC], at pp. 31-32 (citing same).[7] Thus, it is not just a "footnote from *Monell* [*v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)]," Opp. at p. 18, upon which Defendants rely to argue that the official capacity claims against Littlefield and Molwane should be dismissed. *See also Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are

---

[7] Unlike *Kentucky v. Graham*, the state court case cited by Plaintiffs, *Harman v. City & County of San Francisco*, 136 Cal. App. 4th 1279 (2006), is not authority for any holdings related to the redundancy of including official capacity claims. *See* Opp. at p. 19.

named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant.")

Indeed, because "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," *Kentucky*, 473 U.S. at 166, and because an injunction would bind the City and County of San Francisco and, therefore, its agents, Plaintiffs' argument that they cannot obtain "complete" relief by suing the City and County of San Francisco falls flat. Contrary to what Plaintiffs imply, *see* Opp. at p. 19, *Pembaur v. City of Cincinnati* did not decide any questions related to the redundancy of official capacity claims when the same claims are alleged against the municipality. Rather, the Court considered whether a municipality could be held liable for the actions of municipal officers. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).[8] Plaintiffs do not provide any articulable reason why they cannot obtain complete relief unless Littlefield and Molwane are included as redundant defendants.

**VI.  Plaintiffs Have No Response to Defendants' Arguments that the Airport Commission Is an Improper Defendant and Should Be Dismissed**

Plaintiffs simply fail to address Defendants' argument that the Airport Commission is an improper defendant because only the City and County of San Francisco—not its departments—may "appear, sue, and defend" in a civil action. S.F., Cal. Charter art. I, § 1.101.[9] Nor do Plaintiffs address the rationale of *Vance* that the term "persons" in 42 U.S.C. § 1983 excludes municipal departments, when the appropriate defendant is the municipality itself. *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996). Plaintiffs' failure to address these arguments constitutes waiver. *See Lopez v. Cnty. of Los Angeles*, No. 15-CV-03804-TEH, 2016 WL 54123, at *2 (N.D. Cal. Jan. 5, 2016) ("because Plaintiff failed to oppose many arguments in the instant motion to dismiss, the Court may treat such non-opposition as implicit consent to the merits of the arguments asserted"); *Excel*

---

[8] Additionally, the district court decision referenced by Plaintiffs contains no analysis or explanation for the court's decision not to dismiss redundant official capacity claims, apart from briefly summarizing the arguments on both sides. *See B.O.L.T. v. City of Rancho Cordova*, No. 2:14-CV-01588-GEB-DAD, 2014 U.S. Dist. LEXIS 170233, at *6 (E.D. Cal. Dec. 5, 2014).

[9] Plaintiffs also do not oppose Defendants' Request for Judicial Notice asking this Court to take judicial notice of the provisions of the San Francisco Charter that support Defendants' arguments regarding dismissal of the Airport Commission.

REPLY ISO MTD SAC                             18                          n:\cxlit\li2024\240220\01744646.docx
CASE NO. 3:23-cv-4429

*Fitness Fair Oaks, LLC v. Newsom*, No. 2:20-CV-02153-JAM-CKD, 2021 WL 795670, at *7 (E.D. Cal. Mar. 2, 2021).  The Airport Commission should be dismissed as a Defendant, if any of Plaintiffs' causes of action survive.

**Conclusion**

For the foregoing reasons and those explained in Defendants' motion to dismiss, Defendants respectfully request that Plaintiffs' SAC be dismissed in its entirety without leave to amend.  In the alternative, should any cause of action survive, Defendants respectfully request that only the City and County of San Francisco remain as Defendant in this case.

Dated:  March 29, 2024

Respectfully submitted,

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
SARA J. EISENBERG
Chief of Complex & Affirmative Litigation
ADAM M. SHAPIRO
MOLLY J. ALARCON (she/her)
Deputy City Attorneys

By:   */s/ Molly J. Alarcon*
        MOLLY J. ALARCON
        Attorneys for Defendants