UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER SPURLOCK, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. 23-cv-04429-AMO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 47 |

Defendants' motion to dismiss was heard before this Court on July 3, 2024. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** Defendants' motion, for the following reasons.

**I.     BACKGROUND[1]**

Plaintiffs Walter Spurlock and Andre Guibert were Aviation Maintenance Technicians at San Francisco International Airport ("SFO," or "the Airport"), employed by Alaska Airlines, Inc. Second Am. Compl. (ECF 43, "SAC") ¶ 1. The pair sue Defendants the City and County of San Francisco, the Airport Commission of the City and County of San Francisco, Keaboka Molwane in his individual capacity and official capacity as Aviation Security and Regulatory Compliance Officer at SFO, and Jeff Littlefield in his individual capacity and official capacity as Chief Operating Officer at SFO (collectively, "Defendants"), following revocation of Spurlock's and Guibert's security clearance badges.

---

[1] The Court accepts Plaintiffs' allegations in the complaint as true and construes the pleadings in the light most favorable to Plaintiffs. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

**A.     Airport Security Regulations**

The Airport is obligated under federal law to help ensure secure and safe operations. All commercial service airports within the United States are required to develop an Airport Security Plan ("ASP") and submit the plan to the Transportation Security Administration ("TSA") for approval. 49 C.F.R. pt. 1542 et seq. The ASP must include, among other things, a description of Security Identification Display Areas ("SIDAs") and procedures to prevent unauthorized presence and movement in the SIDAs. *Id.* § 1542.201-205; *see also* SAC ¶¶ 2, 21. Airports must carefully vet the employment and criminal history of airport workers who will have access to the SIDAs and conduct training before providing unescorted access to any secured area. 49 C.F.R. §§ 1542.201-205, 209-213; *see also* SAC ¶¶ 20-21.

In addition to these security requirements, airports with commercial air service, like SFO, must comply with extensive safety regulations under 14 C.F.R. part 139. Airports are required to ensure that all personnel with access to aircraft movement areas and safety areas are trained to perform their duties in compliance with Part 139 requirements. *Id.* § 139.303. This training includes familiarization with airport systems, procedures for access to and operation within movement and safety areas, airport radio and air traffic communications, and other duties specific to job requirements. *Id.*

The Airport maintains a set of Rules and Regulations, in part to comply with federal law, that pertain to Airport security and security badges, among other things. SAC, Ex. A. Those rules make clear that "[a]ny person holding an Airport-issued security badge does so as a privilege and not a right." *Id.* at 62 (Rule 7.2). Further, Rule 7.2(D) provides: "Any person who violates this Rule 7, compromises Airport security, or creates or engages or participates in any unsafe, unsecure, or hazardous condition or activity at the Airport may have access privileges immediately revoked on a temporary or permanent basis at the sole discretion of the Airport[.]" *Id.*

The Rules and Regulations elsewhere reiterate that "[i]ndividual infractions . . . relating to the safety or security of the Airport may result in the immediate suspension or permanent revocation of an Airport ID badge . . . at the sole discretion of the Airport." SAC ¶ 52, Ex. A at 103 (Rule 14.4). The Rules and Regulations also set forth an administrative review and appeal

procedure for those seeking to challenge a citation issued by the Airport. SAC, Ex. A at 105 (Rule 14.5). And while Rule 14.4 sets forth a penalty schedule for violations of Rule 7 (Airport Security), it also specifically provides that any infraction may result in the "immediate suspension or permanent revocation of an Airport ID badge . . . at the sole discretion of the Airport, notwithstanding the Admonishment or Citation procedures [above]." SAC ¶¶ 51-52 (quoting Rule 14.4).

### B. The Airport Revokes Spurlock's and Guibert's SIDA Badges for Security Violations

On the morning of September 9, 2021, Spurlock and Guibert reported to an external security checkpoint at SFO. SAC ¶ 24. To proceed through this checkpoint, they were required to swipe their SIDA badges at a reader, use a biometric scanner, and proceed through a turnstile. SAC ¶ 25.

Guibert proceeded through the turnstile without incident. SAC ¶ 26. However, Spurlock was unable to gain entry because the turnstile malfunctioned halfway through its rotation. *Id.* Rather than report the issue to Airport Security, as they were trained and as a sign at the checkpoint advised them to do in this situation (SAC, Ex. B at 2, 4-5), "Spurlock passed his SIDA badge, from the non-SIDA side, to Guibert, on the SIDA side, and Guibert placed Spurlock's badge on the outgoing badge reader, to reset the badge reader system." SAC ¶ 27. Spurlock and Guibert proceeded through that checkpoint as well as another checkpoint and then began to complete assigned maintenance work. SAC ¶¶ 27-29. Later that day, SFO security officers issued citations to Spurlock and Guibert and suspended their SIDA badges. SAC ¶ 30.

### C. Spurlock and Guibert Appeal the Revocation of their SIDA Badges

Pursuant to Airport Rule 14.5, Spurlock and Guibert were entitled to "seek review of a Citation and, following the review, [ ] appeal from a decision affirming or amending the Citation." SAC, Ex. A at 105 (Rule 14.5). Spurlock and Guibert availed themselves of this appeal procedure. SAC ¶ 31.

On September 14, 2021, following a review of the incident, Keaboka Molwane, an Aviation Security and Regulatory Compliance Officer, provided notice that the Airport decided to

permanently revoke Spurlock's and Guibert's SIDA badges. SAC ¶¶ 14, 36. In Guibert's notice, the Airport stated that he had "committed multiple aviation security violations and actively compromised the security of the Airport." SAC, Ex. B at p. 2. The letter informed Guibert that he violated Rule 7.7 by circumventing the security turnstile, and also violated Rule 7.3 by "receiving and using another person's Airport ID badge." *Id.* The letter noted that the Airport had sent multiple security reminders to Airport ID badge holders, including a July 27, 2021 communication stating that, "[i]f you are unable to gain access at a Direct Access Point reader . . . for any reason – you MUST either try a different access point or contact the Airport's Security Operations Center . . . . Any other actions taken to gain access will result in enforcement action, up to and including the possibility of Airport ID badge revocation." *Id.* at 2, 4.

Spurlock and Guibert were advised that they had a right to appeal the revocations (SAC, Ex. B at 3), and they sought such an appeal (SAC ¶ 37). The appeal was denied on October 23, 2021. SAC ¶ 42. In an October 26, 2021 letter to Guibert signed by Littlefield, the Airport again found that Spurlock's and Guibert's actions "facilitated circumvention of a secured access point" in violation of the Airport Rules and Regulations. SAC, Ex. C at 2. The letter concluded: "[w]e understand that, in retrospect, you acknowledge the seriousness of your actions. We cannot put Airport security at risk. . . . This decision is final." *Id.*

**D.   The Airport Submits Spurlock's and Guibert's Names to the Centralized Revocation Database**

Pursuant to statute, the TSA maintains a database, known as the Centralized Revocation Database ("CRD"), "containing the names of individuals who have had airport-issued SIDA badges revoked for failure to comply with aviation security requirements." SAC ¶ 56.

Defendants placed Spurlock's and Guibert's names on the CRD without notice. SAC ¶¶ 74-75. Being listed on the CRD "has a stigmatizing effect and has negatively impacted' reputation in the airline industry." SAC ¶ 46. Spurlock and Guibert have been denied SIDA badges at other airports because their names are listed on the CRD. *Id.*

//

//

### E. Procedural History

Spurlock and Guibert filed the instant action on August 28, 2023, and they have amended their complaint twice since. Spurlock and Guibert assert three causes of action under Title 42 U.S.C. § 1983 and a fourth claim arising under TSA Guidance. In Count 1, Spurlock and Guibert allege Defendants violated their right to procedural Due Process during their badge revocation proceedings. SAC ¶¶ 61-70. In Count 2, Spurlock and Guibert allege Defendants failed to provide them with notice and a means of challenging their placement on the CRD, also in violation of the Fourteenth Amendment's procedural Due Process protections. SAC ¶¶ 71-77. In Count 3, Spurlock and Guibert allege that the revocation of their SIDA badges and placement of their names on the CRD violated the Eighth Amendment's prohibition on cruel and unusual punishment. SAC ¶¶ 78-81. In Count 4, Spurlock and Guibert allege that Defendants' revocation of their airport security badges and placement of their names on the CRD violated relevant TSA Guidance. SAC ¶¶ 82-85.[2]

## II. DISCUSSION

Defendants move to dismiss Spurlock's and Guibert's SAC for failure to state a claim. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft*

---

[2] The TSA Guidance to which Spurlock and Guibert refer is and contains "sensitive security information" ("SSI"), is not publicly available, and is subject to specific confidentiality requirements. *See* 49 C.F.R. § 1520.5. For this reason and those stated at the hearing, the Court **GRANTS** the several administrative motions to file material under seal. *See* ECF 36, ECF 44, ECF 46, ECF 49, ECF 51.

5

*v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679.

If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005). "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

The Court takes up the sufficiency of Spurlock's and Guibert's allegations in turn, discussing the Due Process claims together before turning to the Eighth Amendment claim and finally the TSA Modernization Act claim. Given the Court's conclusions regarding the sufficiency of pleading on each of these causes of action, the Court does not reach Defendants' arguments regarding qualified immunity or which Defendants are properly named.

### A.     Counts 1 and 2 – Fourteenth Amendment Due Process

Plaintiffs allege violations of their Fourteenth Amendment Procedural Due Process rights based on the Airport's revocation of their SIDA badges and related actions to add Plaintiffs' names to the CRD, which has prevented Plaintiffs from obtaining employment requiring a SIDA badge at other airports. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

6

1   protections." *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th
2   Cir. 1998). On the first element, the plaintiff must show "more than an abstract need or desire" for
3   a constitutionally protected right or benefit; rather, the plaintiff must show a "legitimate claim of
4   entitlement to it." *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (quoting *Bd. of
5   Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Supreme Court "cases recognize that a
6   benefit is not a protected entitlement if government officials may grant or deny it in their
7   discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). Only if a
8   constitutionally protected interest is identified do courts turn to weigh "the risk of an erroneous
9   deprivation of such interest through the procedures used, and the probable value, if any, of . . .
10  procedural safeguards" against the government's interests and the burden of adding additional
11  procedural requirements. *Kashem v. Barr*, 941 F.3d 358, 378 (9th Cir. 2019) (quoting *Mathews*,
12  424 U.S. at 335).

### 1. Protected Property Interest

In support of the first element of their procedural due process claims, Spurlock and Guibert aver that they have a protected property interest in their SIDA badges. *See* Opp. at 8. The Court first addresses the applicable caselaw stating that possession of a SIDA badge does not constitute a protected interest before turning to Spurlock's and Guibert's argument that regulatory restraints on Defendants' discretion created a property right in Spurlock's and Guibert's SIDA badges.

#### a. Property Interest in SIDA Badges

The parties dispute the relevance of *Magassa v. Mayorkas*, 52 F.4th 1156 (9th Cir. 2022), a case in which the Ninth Circuit held that an airline employee had no Fourteenth Amendment-protected interest in his SIDA badge or employment conditioned on that badge. *Id.* at 1168 (affirming dismissal of the plaintiff's Due Process claims at the pleading stage). The plaintiff in *Magassa* alleged that his Due Process rights were violated when the TSA, without explanation, revoked his SIDA badge, which had allowed him to work as a cargo customer service agent for Delta Airlines in Seattle. *Magassa*, 52 F.4th at 1159. Like the Plaintiffs here, Magassa alleged that "the procedures employed to revoke his SIDA badge" were inadequate under the Fourteenth Amendment. *Id.* at 1164. He asserted a constitutionally protected liberty interest in his "freedom

7

1 to work in his chosen profession." *Id.* at 1168. In concluding that Magassa had no protected
2 interest, the Ninth Circuit relied on the Supreme Court precedent establishing that individuals do
3 not have a right to a security clearance where the government retains discretion to grant or deny
4 clearances based on its determination of national security interests. *Id.* at 1168 (citing *Dept. of the
5 Navy v. Egan*, 484 U.S. 518, 528 (1988)). The *Magassa* Court also relied on its own earlier
6 precedent that applied the logic of *Egan* to a Due Process claim and determined that "[w]here
7 there is no right [to a badge or clearance], no process is due under the Constitution." *Id.* at 1168
8 (citing *Dorfmont v. Brown*, 913 F.2d 1399, 1403 (9th Cir. 1990)). In *Dorfmont*, the plaintiff
9 challenged the revocation of her Defense Department security clearance, alleging that "that she
10 ha[d] a protected liberty interest in her ability to practice her chosen profession, and a protected
11 property interest in her employment at [a defense contractor]." *Dorfmont*, 913 F.2d at 1403. The
12 Ninth Circuit rejected these contentions, reasoning that, because protected interests must derive
13 from "existing rules or understandings that stem from an independent source" and must give rise
14 to a "legitimate claim of entitlement," *id.* (quoting *Roth*, 408 U.S. at 577), a person could not have
15 a legitimate claim of entitlement to a clearance where "[t]here is a presumption *against* obtaining
16 or maintaining" it. *Dorfmont*, 913 F.2d at 1403 (emphasis in original). Applying *Egan* and
17 *Dorfmont*, the Ninth Circuit concluded that Magassa "is like other workers who need security
18 clearances to stay employed" and "had to undergo extensive background checks" to obtain a badge
19 in the first place. *Magassa*, 52 F.4th at 1168; *see* 49 C.F.R. § 1542.209 (requiring criminal
20 background checks). Thus, the court held, Magassa did not hold a Fourteenth Amendment-
21 protected interest in his SIDA badge or in a job that requires one. *Id.*

22 Spurlock's and Guibert's claims that the Airport violated their Due Process rights all relate
23 to their purported entitlement to SIDA badges or to employment that requires a SIDA badge.
24 Thus, their claims are indistinguishable from the claim considered and rejected by *Magassa*.
25 Count 1 directly concerns the proceedings that resulted in the revocation of Spurlock's and
26 Guibert's SIDA badges and thus asserts a protected interest in the badges themselves. SAC ¶¶ 21-
27 22, 64-70. Regarding Count 2, Spurlock and Guibert admit that "[u]pon revocation of a SIDA
28 badge for a violation of an aviation security requirement, as a necessary, inevitable, and legally

mandated result, airport operators must place the former badge holder's name on the CRD." SAC ¶ 72. Thus, the interest asserted in Count 2 is the same as that asserted in Count 1, since it flows inexorably from Spurlock's and Guibert's badge revocations based on their security violations. Indeed, the allegations in Count 2 focus on the alleged lack of notice to Spurlock and Guibert about their placement on the CRD, and the subsequent alleged harm to Spurlock and Guibert when applying for SIDA badges at other airports. SAC ¶¶ 71-75. This interest is, at base, an asserted liberty or property interest in a SIDA badge or in employment requiring a SIDA badge. *See Magassa*, 52 F.4th at 1168. Under *Magassa*, *Egan*, and *Dorfmont*, Spurlock and Guibert have no constitutionally protected right to a SIDA badge or to employment requiring one. Thus, following this binding authority, Spurlock and Guibert fail to state a claim under the Fourteenth Amendment's Due Process Clause.

### b. Limits on Defendants' Discretion to Revoke Badges

To avoid the conclusion reached in the preceding section, Spurlock and Guibert attempt to distinguish their allegations from those advanced in *Magassa*. They argue, for example, that the procedural limits on Defendants' exercise of discretion to revoke Spurlock's and Guibert's SIDA badges, limits imposed in part by TSA guidance TSA-NA-21-01A, created a protected property right in their possession of the badges. *See* Opp. at 8 (citing *Perry v. Sindermann*, 408 U.S. 593, 601 (1972); *Groten v. California*, 251 F.3d 844, 850 (9th Cir. 2001)). Spurlock and Guibert concede, however, the existence of Defendants' discretion in determining when a badge holder committed a security violation and when revocation is appropriate, particularly in the face of airport security rule violations. They attach the full set of Rules and Regulations to their pleading. *See* SAC, Ex. A. Spurlock and Guibert admit that the SFO Rules and Regulations, including rules 7 and 14, were in effect and applicable to them during the relevant time period. SAC ¶¶ 47-55. Rule 7.1(D) states, "Any person who violates this Rule 7, compromises Airport security, or creates or engages or participates in any unsafe, unsecure, or hazardous condition or activity at the Airport may have access privileges immediately revoked on a temporary or permanent basis at the sole discretion of the Airport." SAC, Ex. A at 62. Rule 7.3 states, "Violation of the Airport access control procedures below may result in the assessment of fines under Rule 14, and/or fines under

9

1   the terms of a lease and/or permit, and/or temporary or permanent revocation of an Airport ID

2   badge at the sole discretion of the Airport." *Id.*, Ex. A at 64. The Airport also reserved discretion

3   in applying penalties or consequences for such violations, as stated in the SAC and Rule 14.4.

4   SAC ¶ 52. Spurlock's and Guibert's allegations establish that Defendants maintained discretion to

5   revoke SIDA badges, and that discretion precludes finding that Plaintiffs were entitled to the

6   badges. *Cf. Groten*, 251 F.3d at 850 (holding that lack of discretion under statute created a

7   property interest in a real estate appraiser license); *Castle Rock*, 545 U.S. at 756 ("a benefit is not a

8   protected entitlement if government officials may grant or deny it in their discretion."). Spurlock

9   and Guibert thus fail to establish a property interest in the badges on this basis.

### c.     "De facto" Limits on Badge Revocation

Spurlock and Guibert argue alternatively that "de facto" conditions of SIDA badge revocation created a protected property right. Opp. at 8-9 (citing *Perry*, 408 U.S. at 602; *DePaul Indus. v. City of Eugene*, No. 6:18-CV-0320-MC, 2018 WL 4039693, at *7-8 (D. Or. Aug. 23, 2018)). But in *Perry v. Sindermann*, 408 U.S. at 601, the Court said that a "person's interest in a benefit is a 'property' interest for due process purposes if there are . . . rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." In that case, although the defendant college disclaimed having any tenure system for professors, the institution advised in its official faculty guide that it "'wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory.'" *Perry*, 408 U.S. at 600. The Court determined that because of this and other indicia of a de facto tenure program, the plaintiff adequately showed a mutually held, explicit understanding of the plaintiff's entitlement to continued employment. *Id.* at 600-01. The Court reinforced the importance of rules or mutually explicit understandings to create protected property rights in *Board of Regents v. Roth*, 408 U.S. at 577, stating, "property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." In that case, the Court rejected a non-tenured university teacher's claim of a protected interest in his continued employment where that

1  plaintiff had no basis for asserting an entitlement beyond his one-year contract, even though
2  teachers were usually re-hired year to year.  *Roth*, 408 U.S. at 575, 578.

3        Spurlock and Guibert ground the creation of a protected property interest in the fact that
4  SFO has previously only revoked SIDA badges after finding a security violation or to otherwise
5  comply with federal law.  SAC ¶¶ 22, 64.  Additionally, Spurlock and Guibert contend that the
6  continued renewal of their badges since they were first instituted in 2002 also created legitimate
7  expectations that Spurlock and Guibert would continue to hold their badges absent good cause for
8  revocation.  SAC ¶ 19.  However, as clarified in the Supreme Court cases discussed above, courts
9  must evaluate a claim of an entitlement based on "independent source[s] such as state law," and
10 not the claimant's "subjective 'expectancy.'"  *Roth*, 408 U.S. at 577; *Perry*, 408 U.S. at 603.
11 Spurlock and Guibert fail to show Defendants' understanding of the SIDA badges as an
12 entitlement and instead only demonstrate that their own expectations were subjective and
13 unilateral.  *See* SAC ¶ 20 ("It is Plaintiffs' understanding, borne out by nearly two decades of
14 experience at SFO, that they would retain their SIDA badges so long as they did not violate an
15 SFO aviation security requirement[.]").[3]  Spurlock and Guibert fail to identify an independent
16 source for their unilateral expectations, and they accordingly fail to show a protected interest in
17 their SIDA badges.

18       For all those reasons, the Court finds that Spurlock and Guibert fail to state a claim for
19 violation of their procedural due process rights.

20       **2.**      **Liberty Interest in Reputations**

21       Spurlock and Guibert also allege that the Airport's actions caused reputational harm and
22 that their placement on the CRD "has a stigmatizing effect."  SAC ¶ 46.  Plaintiffs must satisfy the
23 "stigma plus" test to allege a cognizable procedural Due Process violation based on reputational
24 harm.  *Paul v. Davis*, 424 U.S. 693, 709-12 (1976).  "Under the stigma-plus test, a plaintiff who
25 has suffered reputational harm at the hands of the government may assert a cognizable liberty
26 interest for procedural due process purposes if the plaintiff suffers stigma from governmental

---

[3] Plaintiffs admit that they violated an SFO aviation security requirement.  SAC ¶¶ 26-27.

action plus alteration or extinguishment of a right or status previously recognized by state law." *Fikre v. Fed. Bureau of Investigation*, 35 F.4th 762, 776 (9th Cir. 2022) (internal quotation marks and citations omitted), cert. granted, 144 S. Ct. 479 (2023), and aff'd, 601 U.S. 234 (2024). "[D]amage to reputation alone is not actionable." *Fikre*, 35 F.4th at 776 (citation omitted).

The Ninth Circuit's opinion in *Magassa* considered a similar Due Process claim based on the plaintiff's liberty interest in his reputation. 52 F.4th at 1168-69. The court held that the plaintiff had sufficiently alleged reputational harm, but he failed to state a Due Process claim where he failed to articulate the "plus" portion of the test: "[w]ithout a right to a security clearance, *Egan*, 484 U.S. at 528, or a job that requires one, *Dorfmont*, 913 F.2d at 1403, his procedural due process claim fails." *Magassa*, 52 F.4th at 1169.

Spurlock and Guibert here, as the plaintiff in *Magassa*, cannot establish a protected interest in their SIDA badges. As discussed above, a SIDA badge is not a benefit or status to which Plaintiffs are entitled.[4] Accordingly, Spurlock's and Guibert's procedural Due Process claim based on reputational harm must also be dismissed.

**B.        Count 3 – Eighth Amendment Prohibition of Cruel and Unusual Punishment**

Spurlock and Guibert allege that their badge revocation and inclusion on the CRD "constituted an excessive punishment" in violation of the Eighth Amendment. SAC ¶ 81. Defendants aver that this claim should be dismissed because the Eighth Amendment's prohibition against cruel and unusual punishment applies only to criminal matters.

The Supreme Court has held that "[a]n examination of the history of the [Eighth] Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes." *Ingraham v. Wright*, 430 U.S. 651, 664 (1977). Indeed, the Supreme Court concluded that:

> The State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where

---

[4] The Court need not reach whether Spurlock's and Guibert's placement on the CRD has a stigmatizing effect or even whether the non-public nature of the CRD implicates the public requirement of the stigma-plus test. *Ulrich v. City and Cnty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002).

> the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

*Id.* at 671, n.40. Although the Ninth Circuit has acknowledged the application of the Eighth Amendment's prohibition on cruel and unusual punishment outside the context of a criminal conviction, it has nonetheless required the initiation of some criminal process for Eighth Amendment protections regarding punishment to apply. *Martin v. City of Boise*, 920 F.3d 584, 614 (9th Cir. 2019), overruled on other grounds by *City of Grants Pass, Oregon v. Johnson*, No. 23-175, --- S.Ct. ---, 2024 WL 3208072, at *17 (U.S. June 28, 2024).

In this case, Spurlock and Guibert have not alleged that Defendants charged them with a crime or that they have been convicted of any crime. As a result, Spurlock and Guibert have not suffered the type of "punishment" that would implicate the cruel and unusual punishment clause of the Eighth Amendment. Moreover, Spurlock and Guibert fail to cite to any authority in support of the premise that revocation of a security badge implicates protections against excessive punishment. Their citation to *Hickey v. Reeder*, 12 F.3d 754, 756 (8th Cir. 1993), is readily distinguishable on this basis alone – the plaintiff there had been convicted of a crime and suffered bodily harm during his incarceration. In contrast, no aspect of Spurlock's and Guibert's badge revocation or subsequent placement on the CRD involved any criminal process or threat of criminal process. Similarly, their citation to *Austin v. United States*, 509 U.S. 602 (1993), where the Supreme Court held that Eighth Amendment's Excessive Fines Clause applies to in rem civil forfeiture proceedings, fails to alter the analysis. That holding is irrelevant here because Spurlock and Guibert do not allege violations of the Excessive Fines Clause. Because the Eighth Amendment's protections against cruel and unusual punishment do not apply to security badge revocations, this cause of action must be dismissed.

### C. Count 4 – TSA Modernization Act

Spurlock's and Guibert's fourth cause of action purports to enforce the TSA Modernization Act. Defendants move to dismiss this claim because the Act does not include an express or implied private right of action.

13

"[P]rivate rights of action to enforce federal law must be created by Congress" and must be announced "through statutory text." *Alexander v. Sandoval*, 532 U.S. 275, 286, 291 (2001). To determine whether a statute creates a private cause of action, courts consider: (1) if the plaintiff is a member of the class for whose benefit the statute was enacted; (2) if there is any indication of legislative intent to create or deny such a remedy; (3) if application of such a remedy for the plaintiff is consistent with the underlying purposes of the legislative scheme; and (4) if the cause of action is one traditionally relegated to state law. *Cort v. Ash*, 422 U.S. 66, 78 (1975). However, while the first, third, and fourth *Cort* factors "remain relevant," the focus must be, as it was in *Alexander*, on the second factor: whether Congress intended to create a private remedy. *McGreevey v. PHH Mortgage Corp.*, 897 F.3d 1037, 1043-44 (9th Cir. 2018). Following *McGreevey* and *Alexander*, courts in this circuit must begin by examining the text and structure of the statute. *Alexander*, 532 U.S. at 288; *McGreevey*, 897 F.3d at 1044.

Here, the relevant TSA regulations governing airport security, 49 C.F.R. part 1542 et seq., do not contain any explicit private rights of action. *See* 49 C.F.R. §§ 1542.1-1542.307.[5] And the TSA Guidance itself does not contain any explicit private rights of action. *See* SAC, Ex. G; *see also Saliba v. Spokane Int'l Airport Bd.*, No. 2:23-CV-00218-MKD, 2023 WL 8358548, at *4 (E.D. Wash. Dec. 1, 2023) (dismissing claim for purported violation of a TSA Security Directive because the Directive did not provide a private cause of action).

Spurlock and Guibert aver that the TSA Modernization Act of 2018 gives rise to an implied private right of action for individuals subject to SIDA badge revocation. In particular, the FAA Reauthorization Act of 2018, PL 115-254, § 1934(i), which included the TSA Modernization Act, directs TSA – not airports – to create the CRD and "establish a process to allow an individual [mistakenly listed on the CRD] to correct the record," but does not create any private rights of action to sue. *Id.* § 1934(i)(1)(C). In circumstances like this, where the "language of the statute is directed toward the entity being regulated, rather than the party seeking relief, we have not

---

[5] As Defendants note, there are some regulations under Title 49 that specify causes of action (e.g., 49 C.F.R. § 190.235), which indicates that TSA was cognizant of and declined to authorize private rights of action here.

14

recognized a private right of action." *Rodriguez v. Sony Comput. Ent. Am., LLC*, 801 F.3d 1045, 1051 (9th Cir. 2015). The other two aspects of the TSA Guidance that Spurlock and Guibert attempt to enforce – regarding a hearing to challenge their revocations and notice of their CRD placement (*see* FAC ¶ 53) – are not discussed at all in the statute, further emphasizing the lack of Congressional intent to create a private right of action.

Because *Alexander* indicates that Congress's intent is "determinative" and weighs against Plaintiffs, the Court does not proceed to analyze the remaining *Cort* factors. *Alexander*, 532 U.S. at 286. The fourth cause of action must also be dismissed because nothing in the text and structure of the TSA Guidance reveals a congressional intent to create a private right of action.

### D. Leave to Amend

Typically, a complaint dismissed under Rule 12(b)(6) is subject to leave to amend, unless further amendment would be futile. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (no abuse of discretion in denying leave to amend where the amendment would be futile); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

It is apparent from the discussion above that no set of additional facts could give rise to Spurlock's and Guibert's Due Process claims because they lack a protectable right to SIDA badges. *See Magassa*, 52 F.4th at 1168-69. Similarly, no set of additional facts could give rise to Spurlock's and Guibert's cruel and unusual punishment claims because the revocation of their security badges did not implicate any criminal process. *See Ingraham*, 430 U.S. at 664. Finally, no set of additional facts could give rise to Spurlock's and Guibert's claims under the TSA Modernization Act because the statute and its implementing guidance do not provide an express or implied private right of action. *See* 49 C.F.R. §§ 1542.1-1542.307; *Saliba*, 2023 WL 8358548, at *4. Therefore, the Court dismisses the claims against Defendants without leave to amend.

//
//
//
//
//

15

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss the SAC. The Court **DISMISSES** the case **WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: August 5, 2024

_____
**A**RACELI **M**ARTÍNEZ-**O**LGUÍN
**United States District Judge**

16